## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KASIM KURD, *et al.*,<br>        Plaintiffs<br><br>    v.<br><br>REPUBLIC OF TURKEY, *et al.*,<br>        Defendants. | Civil Action No. 18-1117 (CKK) |

### Memorandum Opinion
(March 18, 2019)

This case deals with events that took place at a May 2017 protest over Turkish President Recep Erdogan's visit to the District of Columbia. Plaintiffs were protesting President Erdogan's policies when they allege that they were attacked by Defendants who include the Republic of Turkey, Turkish security forces, and civilian Defendants. As is relevant to this Memorandum Opinion, Plaintiffs have filed five claims against civilian Defendants Eyup Yildirim, Sinan Narin, and Alpkenan Dereci: assault, battery, intentional infliction of emotional distress, hate crimes under D.C. Code § 22-3704, and civil rights violations pursuant to 42 U.S.C. § 1985. Defendants have moved to dismiss each claim, either in part of in full, for failure to state a claim for which relief may be granted.

Now before the Court are Defendants E. Yildirim and Narin's [21] Partial Motion to Dismiss Plaintiffs' Complaint and Defendant A. Dereci's [32] Partial Motion to Dismiss Plaintiffs' Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and

---

[1] The Court's consideration has focused on the following documents:
- Defs. Eyup Yildirim and Sinan Narin's Mem. in Support of their Partial Mot. to Dismiss Pls.' Compl., ECF No. [21] ("Defs. Yildirim and Narin's Mot.");
- Def. Alpkenan Dereci's Mem. in Support of his Partial Mot. to Dismiss Pls.' Compl., ECF No. [32] ("Def. Dereci's Mot.");

the record as a whole, the Court GRANTS IN PART and DENIES IN PART DENIES Defendants

E. Yildirim and Narin's Partial Motion to Dismiss and Defendant A. Dereci's Partial Motion to

Dismiss. The Court concludes that Plaintiffs have failed to state a claim for (1) conspiracy to

commit battery, (2) intentional infliction of emotion distress as to Plaintiff Jalal Kheirabadi, and

(3) violation of civil rights under 42 U.S.C. § 1985. Accordingly, these claims are DISMISSED

WITHOUT PREJUDICE. However, the Court concludes that Plaintiffs have otherwise stated

claims for which relief may be granted.

## I.    BACKGROUND

For the purposes of the motions before the Court, the Court accepts as true the well-pled

allegations in Plaintiffs' Complaint.  The Court does "not accept as true, however, the plaintiff's

legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm.

on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

There are fifteen Plaintiffs bringing claims in this case against the Republic of Turkey,

Turkish security forces, and five civilian Defendants. *See generally* Compl., ECF No. 1.

Plaintiffs' claims arise out of a May 2017 visit by Turkish President Erdogan and Turkish

Foreign Minister Mevlut Cavusoglu to the District of Columbia. *Id.* at ¶ 51. Their trip included a

planned visit to the White House. *Id.* Upon learning that President Erdogan would be visiting the

---

- Pls.' Mem. of Law in Opp'n to Defs. Eyup Yildirim and Sinan Narin's Partial Mot. to Dismiss Pls.' Compl., ECF No. [33] ("Pls.' Opp'n to Defs. Yildirim and Narin");
- Pls.' Mem. of Law in Opp'n to Def. Alpkenan Dereci's Partial Mot. to Dismiss Pls.' Compl., ECF No. [35] ("Pls.' Opp'n to Def. Dereci");
- Defs. Eyup Yildirim and Sinan Narin's Reply in Further Support of their Partial Mot. to Dismiss Pls.' Compl., ECF No. [38] ("Defs. Yildirim and Narin's Reply");
- Def. Alpkenan Dereci's Reply in Further Support of his Partial Mot. to Dismiss Pls.' Compl., ECF No. [39] ("Def. Dereci's Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

White House, leaders of the local Kurdish community planned a protest and applied for and were granted a permit to protest. *Id.* at ¶ 53. The Kurdish leaders intended to protest President Erdogan's treatment of the Kurdish ethnic minority in Turkey and other allegedly repressive practices. *Id.* at ¶¶ 45-50.

During President Erdogan's White House visit, Plaintiffs and other individuals gathered in front of the White House "to express their opposition to the repression and abuses of the Erdogan regime." *Id.* at ¶ 55. Also at the White House was a group that supported President Erdogan. But, the two groups remained separated. *Id.* at ¶ 56.

Following his White House visit, President Erdogan planned to go to the Turkish Ambassador's Residence. *Id.* at ¶ 57. A group of anti-Erdogan protesters, including Plaintiffs, also went to the Ambassador's Residence in order to continue the protest. *Id.* at ¶ 58. When they arrived, a group of pro-Erdogan civilians, Turkish security officials, and individuals who appeared to be staff members from the Turkish delegation were already at the Residence. *Id.* at ¶ 59. Plaintiffs allege that this group included people who had accepted the Turkish Ambassador's invitation to come to the District of Columbia to show support for President Erdogan. *Id.* Defendants E. Yildirim, Narin, and A. Dereci were civilian members of the pro-Erdogan group. *Id.*

Members of the pro-Erdogan group carried Turkish flags, while the protesters carried signs pertaining to Kurdish rights. *Id.* at ¶¶ 60, 62, 63. The protesters were outnumbered by the pro-Erdogan group and gathered on the sidewalk across from the Residence. *Id.* at ¶ 62. Plaintiffs allege that the pro-Erdogan group yelled threats and anti-Kurdish slurs at the protesters. *Id.* at ¶ 65. However, the pro-Erdogan group and the protesters were separated by Metropolitan Police

Department officers and United States Secret Service officers who stood between the two groups, facing the pro-Erdogan group. *Id.* at ¶ 66.

Despite the presence of the law enforcement officers, Plaintiffs allege that members of the pro-Erdogan group pushed past the officers and physically attacked the protesters. The attackers allegedly repeatedly hit, punched, and kicked the protesters, including Plaintiffs. Plaintiffs allege that Defendants E. Yildirim, Narin, and A. Dereci each participated in the attack. *Id.* at ¶¶ 67, 68. Plaintiffs specifically allege that during the first attack Defendant A. Dereci repeatedly punched Plaintiff Kheirabadi. *Id.* at ¶ 167. Plaintiffs also allege that Defendant E. Yildirim threatened and physically beat Plaintiff Kheirabadi during this first attack. *Id.* at ¶ 166.

According to Plaintiffs, the first attack ended relatively quickly. *Id.* at ¶ 69. Following the first attack, law enforcement allegedly created a cordon to keep the pro-Erdogan group on the sidewalk and away from the protesters. *Id.* at ¶ 70. Despite this cordon, Plaintiffs allege that the pro-Erdogan supporters continued to attempt to bypass the officers. *Id.* at ¶ 71. During this time, Plaintiffs also allege that the pro-Erdogan group continued to yell ethnic slurs and make threats. *Id.* at ¶ 72. Additionally, Plaintiffs claim that the pro-Erdogan group played a Turkish nationalist song over a loud speaker. *Id.* at ¶ 78.

After the first attack, one of the Defendants allegedly told a law enforcement officer, "we are waiting [for] you to take them out, because President [Erdogan] is coming. If you don't take … I will take." *Id.* at ¶ 74. Plaintiffs further claim that the Turkish Ambassador to the United States told a law enforcement officer, "I am the ambassador. You cannot let this … you cannot touch us." *Id.* at ¶ 75. And, Defendant E. Yildirim allegedly yelled at a law enforcement officer warning of potential violence if the protesters continued. *Id.* at ¶ 76. Defendant E. Yildirim also allegedly called the protesters "dirty bastards" and yelled "shut the fuck up, bitch!" to a protester.

*Id.* Plaintiffs further claim that Defendant Narin called on the pro-Erdogan group to line up in the street, ignoring the commands of law enforcement. *Id.* at ¶ 77. Defendant Narin explained that he was ignoring law enforcement's orders because "[m]y President is coming, I don't want them to be over there." *Id.*

At some point during or shortly after the first attack, Plaintiffs allege that President Erdogan arrived at the Residence. President Erdogan remained in his car in the driveway of the Residence. *Id.* at ¶ 79. Plaintiffs allege that President Erdogan's head of security, Mushin Kose, leaned into President Erdogan's car to confer with the President. *Id.* Plaintiffs claim that President Erdogan ordered a second attack on the protesters. *Id.* at ¶ 80. According to Plaintiffs, after speaking with President Erdogan, Mr. Kose communicated with other Turkish security officials both in person and through an electronic communication device. Those Turkish security officials then hurried toward the protesters. *Id.* Moments later, Plaintiffs allege that Turkish security officials and civilian Defendants broke through the law enforcement cordon in a "coordinated" fashion. *Id.* at ¶ 81.

Plaintiffs claim that the second attack was longer and more violent than the first. *Id.* Plaintiffs allege that Turkish security officials and civilian Defendants bypassed the law enforcement cordon and chased, kicked, punched, and grabbed protesters. Plaintiffs allege that the violence was unrelenting and that the attackers surrounded and kicked protesters who had fallen onto the ground. *Id.* During the attack, Plaintiffs claim that the attackers yelled anti-Kurdish slurs and threats. *Id.* at ¶ 82. Plaintiffs further claim that United States law enforcement officers attempted to stop the attack, but the attackers would not listen. *Id.* at ¶ 86.

Specifically, Plaintiffs allege that during the second attack Defendants E. Yildirim and Narin attacked Plaintiff Elif Genc by repeatedly kicking her and threatening her. *Id.* at ¶ 160.

Plaintiffs further assert that Defendant E. Yildirim kicked Plaintiff Murat Yasa in his body and threatened Plaintiff Yasa by telling him that he would make life miserable for the Kurds. *Id.* at ¶¶ 188, 191.

Eventually, law enforcement officers were able to stop the attack. Following the attack Plaintiffs claim that Defendants tore up and threw the protesters' signs. *Id.* at ¶ 89. Plaintiffs contend that Defendant E. Yildirim stomped on one of the protester's flags. *Id.*

In the days after the attack, multiple members of the United States government condemned the attacks. *Id.* at ¶¶ 196-207. In June 2017, the United States Attorney's Office charged Defendant Narin with aggravated assault and assault and Defendant E. Yildirim with aggravated assault and assault with significant bodily injury, all committed based on the actual or perceived race or ethnicity of the victims. *Id.* at ¶ 208. Defendants E. Yildirim and Narin later pled guilty to assault with significant bodily injury, and Defendant E. Yildirim pled guilty to assaulting Plaintiff Yasa. *Id.* at ¶ 212. In August 2017, a District of Columbia grand jury indicted 19 individuals for their role in the attacks. These individuals included fifteen Turkish security officials and four civilians. *Id.* at ¶ 209. It is not clear from the Complaint whether or not Defendants E. Yildirim, Narin, and A. Dereci were included among those civilians indicted. However, if they were ever indicted, the charges against them were later dropped. *Id.* at ¶ 211.

On May 11, 2018, Plaintiffs filed this lawsuit, bringing seven claims in total, but only five of which are against the civilian Defendants. *See generally Id.* On July 16, 2018, Defendants E. Yildirim and Narin filed a joint partial motion to dismiss. And, on August 24, 2018, Defendant A. Dereci also filed a partial motion to dismiss. The majority of the arguments in Defendants' motions to dismiss are the same. Accordingly, the Court will address both motions in this Memorandum Opinion. The discussion in this Memorandum Opinion pertains to only

Defendants E. Yildirim, Narin, and A. Dereci as they are the only Defendants who have filed motions to dismiss.

## II. LEGAL STANDARD

Defendants E. Yildirim, Narin, and A. Dereci move to dismiss at least partially each of Plaintiffs' claims against them under Federal Rule of Civil Procedure 12(b)(6). Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

## III. DISCUSSION

Plaintiffs bring five claims against Defendants E. Yildirim, Narin, and A. Dereci. In Count one, each Plaintiff alleges assault against each Defendant. Compl., ECF No. 1, ¶¶ 228-34.

In Count 2, thirteen Plaintiffs allege battery against each Defendant. *Id.* at ¶¶ 235-40. In Count 4, twelve Plaintiffs bring intentional infliction of emotional distress claims against each Defendant. *Id.* at ¶¶ 245-50. In Count 5, each Plaintiff brings a hate crime claim against each Defendant under D.C. Code § 22-3704. *Id.* at ¶¶ 251-57. Finally, in Count 7, each Plaintiff brings a civil rights violation claim against all civilian Defendants under 42 U.S.C. § 1985. *Id.* at ¶¶ 272-76. Defendants move to dismiss, at least in part, each of the claims against them.

The Court concludes that Plaintiffs have sufficiently stated a claim against Defendants for all claims except: (1) each Plaintiff failed to state a claim for conspiracy to commit battery against Defendants, (2) Plaintiff Kheirabadi failed to state a claim for intentional infliction of emotional distress against Defendants, and (3) each Plaintiff failed to state a claim for a civil rights violation against Defendants. Accordingly, the Court DISMISSES WITHOUT PREJUDICE these claims against Defendants E. Yildirim, Narin, and A. Dereci. The Court again notes that this Memorandum Opinion applies only to Defendants E. Yildirim, Narin, and A. Dereci as those are the only Defendants who have filed Motions to Dismiss.

### A. Count 1- Assault

In Count 1 of their Complaint, all Plaintiffs allege assault against each Defendant. Compl., ECF No. 1, ¶¶ 228-34. Defendant E. Yildirim concedes that Plaintiffs Genc and Yasa have stated assault claims against him. Defs. Yildirim and Narin's Mot., ECF No. 21, 20 n.9. Defendant Narin concedes that Plaintiff Genc has stated an assault claim against him. *Id.* And, Defendant A. Dereci concedes that Plaintiff Kheirabadi has stated an assault claim against him. Def. Dereci's Mot., ECF No. 32, 17 n.9. But, Defendants request that the Court dismiss all other assault allegations for failure to state a claim.

An assault is "'an intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the victim.'" *Hall v. District of Columbia*, 867 F.3d 138, 158 (D.C. Cir. 2017) (quoting *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007)). In order to state a claim for assault, "a plaintiff must show that he suffered apprehension of harmful or offensive contact and that a reasonable person in his position would have experienced such apprehension." *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 14 (D.D.C. 2014).

Defendants argue that all claims of assault, other than those mentioned above, should be dismissed because Plaintiffs have failed to specifically allege that Defendants threatened to make or made physical contact with Plaintiffs. Accordingly, Defendants contend that they did not put Plaintiffs in apprehension of harmful or offensive contact. Defendants explain that Plaintiffs are unlawfully attempting to hold them liable for assault based on their mere presence at the crime scene. The Court disagrees.

In their Complaint, Plaintiffs allege that, during the first attack, "members of the pro-Erdogan group pushed past the police and physically attacked the Protesters. Turkish security officials and civilians repeatedly hit, punched, and kicked protesters, including Plaintiffs." Compl., ECF No. 1, ¶ 67. Plaintiffs further allege that "all five individual Defendants in this action participated in the first attack." *Id.* at ¶ 68. During the second attack, Plaintiffs explain that "[m]ultiple Turkish security officials and civilian Defendants beat and attacked protesters, who were outnumbered by the attackers. … [T]he attackers surrounded and kicked the protesters, including older men and young women, who had fallen and were defenseless on the ground." *Id.* at ¶ 81.

In addition to the two separate attacks in which Plaintiffs allege that each of the three Defendants participated, Plaintiffs also make specific allegations against each Defendant. For

example, Plaintiffs allege that Defendant E. Yildirim yelled at an officer, warning him of violence if Plaintiffs continued their protest and that Defendant E. Yildirim physically attacked at least three Plaintiffs during the first and second attacks. *Id.* at ¶¶ 76, 160, 166, 171, 188, 191. Plaintiffs further allege that Defendant Narin attempted to organize the Pro-Erdogan group to line up in the street because he did not want the protesters present when President Erdogan arrived and that Defendant Narin physically attacked at least one Plaintiff during the second attack. *Id.* at ¶¶ 77, 160. And, Plaintiffs allege that Defendant A. Dereci repeatedly punched at least one Plaintiff during the first attack. *Id.* at ¶ 167.

The Court concludes that Plaintiffs have alleged that each Defendant threatened to make or made physical contact with each of the Plaintiffs. According to Plaintiffs' Complaint, the three Defendants attacked Plaintiffs at least twice, placing each Plaintiff in reasonable apprehension of harmful or offensive contact. An assault does not require actual physical contact, so it is irrelevant that each Defendant did not actually touch each Plaintiff. What matters is that Plaintiffs have sufficiently alleged that each Defendant took an intentional action which placed each Plaintiff in reasonable apprehension of harmful or offensive contact by Defendants.

Defendants point out that the majority of Plaintiffs' allegations on assault relate to all five civilian Defendants, referring to them as "civilian Defendants," or to all Defendants generally. Despite this group naming, the Court concludes that Plaintiffs sufficiently alleged that Defendants E. Yildirim, Narin, and A. Dereci intentionally participated in the attacks. Accordingly, referring, at times, to Defendants as a group does not prevent Plaintiffs from making a claim of assault.

Defendants cite no case establishing that Plaintiffs' allegations are insufficient to state a claim for assault at the motion to dismiss stage. Defendants cite *Hunter v. District of Columbia*,

824 F. Supp. 2d 125 (D.D.C. 2011), *Chen v. District of Columbia*, 808 F. Supp. 2d 252 (D.D.C. 2011), and *Garabis v. Unknown Officers of the Metropolitan Police*, 961 F. Supp. 2d 91, (D.D.C. 2013). But, each of these cases involved a motion for summary judgment which was granted because the plaintiffs failed to present evidence demonstrating that the defendants touched or threatened to touch them. *Hunter*, 824 F. Supp. 2d at 138-39; *Chen*, 808 F. Supp. 2d at 258-59; *Garabis*, 961 F. Supp. 2d at 100-103. Those cases are not persuasive to the Court's analysis as this case is only at the motion to dismiss stage. It is possible that each Plaintiff will not be able to produce evidence showing that they were assaulted by each Defendant. But, the absence or presence of such evidence is not the issue currently before the Court. What matters at this stage is whether or not Plaintiffs have alleged that they were assaulted by Defendants. And, the Court concludes that they have done so.

Defendants also cite cases requiring Plaintiffs to establish that the Defendants' actions were intentional. In considering these cases, the Court concludes that Plaintiffs have alleged intentional conduct.

In *Collier*, the court dismissed the plaintiff's assault claim because the plaintiff had not alleged that the defendant "intentionally threatened him or attempted to cause him harm." 46 F. Supp. 3d at 14. Instead, the plaintiff alleged only that the defendant was the proximate cause of his battery by another individual. *Id.* The court explained that, even if the defendant had proximately caused the plaintiff's harm through his negligence, negligence was insufficient to sustain a claim of assault, which requires an intentional action. *Id.* at 15-16.

Here, Plaintiffs have alleged that Defendants' acts of assault, such as pushing past a police cordon, threatening protesters, and attacking protesters were intentional. Compl., ECF No.

1, ¶¶ 230, 232. And, Defendants do not argue that these acts were merely negligent. Accordingly, *Collier* is not relevant to the Court's resolution of this case.

Similarly, in *Acosta Orellana v. CropLife International*, 711 F. Supp. 2d 91 (D.D.C. 2010), the court dismissed the plaintiff's assault claim because "[e]ven accepting all the allegations in the complaint as true, the plaintiffs simply never allege that the CropLife Defendants either intended to cause a harmful or offensive contact with the plaintiffs, or intentionally caused the plaintiffs to be placed in apprehension of such conduct." 711 F. Supp. 2d 92. Unlike in *Acosta*, here, Plaintiffs have alleged that Defendants intentionally caused Plaintiffs to be in apprehension of harmful or offensive conduct. Compl., ECF No. 1, ¶¶ 230, 232. Accordingly, *Acosta* is not persuasive.

The lack of *Acosta's* relevance to this case is highlighted by *Acosta*'s facts. In *Acosta*, the plaintiffs alleged that the defendants had assaulted them based on the plaintiffs' exposure to a fungicide which was allegedly produced, used or sold by the defendants. 711 F. Supp. 2d 92-93. Because the fungicide was being used to treat produce, the question of whether or not the defendants intended to harm the plaintiffs was much more contestable. Here, Plaintiffs allege that each Defendant twice pushed past a police cordon and attacked one or more Plaintiffs, causing all Plaintiffs to be in reasonable apprehension of harmful bodily contact. Accordingly, the intent behind Defendants' actions is more evident than in *Acosta*. *See Collier*, 46 F. Supp. 3d at 16 (denying motion to dismiss assault claim because "it is unlikely that [plaintiff] would receive multiple blows without 'apprehending' that physical contact was going to occur"); *Contrast with Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973) (finding that the plaintiff had not pled intent for alleged assault committed when plaintiff was "assaulted" by fumes from a bus while standing in an intersection).

The Court finds that all Plaintiffs have sufficiently alleged assault claims against the three Defendants. Plaintiffs have alleged that each Defendant twice pushed past the police to beat and attack Plaintiffs. Plaintiffs have also alleged that Defendants' actions were intentional, and that Plaintiffs were placed in reasonable apprehension of harmful or offensive contact due to Defendants' actions. Contrary to Defendants' arguments, the Court concludes that Plaintiffs do not allege that Defendants are liable for assault based on their mere presence at the scene. Instead, Plaintiffs allege that each Defendant actively participated in intentionally making each Plaintiff apprehensive of harmful contact. Accordingly, Plaintiffs have sufficiently pled their assault claims, and the Court DENIES Defendants' motions to dismiss this count. The Court expresses no opinion as to whether or not Plaintiffs will ultimately be able to produce evidence to substantiate each of their assault claims.

### B.  Count 2- Battery

In Count 2 of their Complaint, thirteen Plaintiffs allege battery against each Defendant. Compl., ECF No. 1, ¶¶ 235-40. Defendant E. Yildirim concedes that Plaintiffs Genc and Yasa have stated battery claims against him. Defs. Yildirim and Narin's Mot., ECF No. 21, 20 n.9. Defendant Narin concedes that Plaintiff Genc has stated a battery claim against him. *Id.* And Defendant A. Dereci concedes that Plaintiff Kheirabadi has stated a battery claim against him. Def. Dereci's Mot., ECF No. 32, 17 n.9. But, Defendants request that the Court dismiss all other battery claims for failure to state a claim.

Under District of Columbia law, a battery is "'an intentional act that causes harmful or offensive bodily contact.'" *Magliore v. Brooks*, 844 F. Supp. 2d 38, 44 (D.D.C. 2012) (quoting *Evans-Reid*, 930 A.2d at 937). With the exception of the battery claims for which Defendants concede that Plaintiffs have stated a claim, Plaintiffs do not seek to hold Defendants liable for

battery directly. Instead, Plaintiffs seek to hold Defendants liable for battery based on theories of aiding and abetting and conspiracy. Defendants contend that neither theory has merit.

Defendants contend that they are not liable for battery on an aiding and abetting theory for two reasons. First, Defendants argue that District of Columbia law does not recognize aiding and abetting battery. Second, Defendants argue that, even if District of Columbia law recognizes aiding and abetting battery, Plaintiffs have failed to establish a claim for aiding and abetting battery. The Court will consider each argument.

First, Defendants contend that District of Columbia law does not recognize aiding and abetting battery. As evidence that District of Columbia law does not recognize aiding and abetting battery, Defendants point to *Flax v. Schertler*, 935 A.2d 1091 (D.C. 2007). In *Flax*, the plaintiff attempted to bring a legal malpractice claim against her counsel for failing to raise an aiding and abetting common law tort claim. 935 A.2d at 1107. The court explained that the plaintiff's attorney was not liable for failing to bring such a claim because the District of Columbia Court of Appeals had never recognized aiding and abetting for common law tort claims. *Id.* at 1108; *see also Acosta*, 711 F. Supp. 2d at 107 ("There does not appear to be case law in the District of Columbia that explicitly recognizes aiding and abetting as an actionable theory of liability."). Defendants argue that this Court should rely on the District of Columbia Court of Appeals in *Flax* and deny Plaintiffs' aiding and abetting battery claims.

The Court disagrees and concludes that it is bound by the law of this Circuit to recognize aiding and abetting liability for common law torts under District of Columbia law. In *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") explained that "[t]he separate tort of aiding-abetting has not yet, to our knowledge, been recognized explicitly in the District," but predicted that "the

existence of the civil conspiracy action [in the District of Columbia] suggests a high probability that the legal rationale underlying aiding-abetting would also be accepted." 705 F.2d at 479. Following *Halberstam*, courts in this Circuit have regularly considered themselves bound to recognize aiding and abetting for common law torts under District of Columbia law. *See, e.g., EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 87-88 (D.D.C. 2017); *Baker v. Gurfein*, 744 F. Supp. 2d 311, 317 n.3 (D.D.C. 2010); *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 140 (D.D.C. 2011). In fact, one of the cases which Defendants rely upon for the proposition that the District of Columbia does not recognize aiding and abetting for common law torts, *Acosta*, was later called into question when the court concluded "[u]pon further reflection" that it was bound by *Halberstam*. *Baker*, 744 F. Supp. 2d at 317 n.3.

Despite these cases, Defendants argue that, following *Flax*, the D.C. Circuit's decision in *Halberstam* that the District of Columbia recognizes aiding and abetting liability should no longer be followed. But, *Flax* involved a malpractice claim against an attorney who failed to raise an aiding and abetting cause of action. In resolving this issue, the District of Columbia Court of Appeals concluded only that the law concerning aiding and abetting liability was not so settled as to make the plaintiff's attorney negligent for failing to raise such a claim. *Flax*, 935 A.2d at 1107-08. The court did not directly contradict *Halberstam*. Accordingly, this Court remains bound by *Halberstam's* conclusion that aiding and abetting liability is actionable in the District of Columbia. *See Gersman v. Grp. Health Ass'n, Inc.*, 975 F.2d 886, 897 (D.C. Cir. 1992) (explaining that a decision by the D.C. Circuit is binding on district courts "unless and until overturned by the [D.C. Circuit] en banc" or directly contradicted by the District of Columbia Court of Appeals).

Defendants cite two district court cases from this Circuit concluding that District of Columbia law does not recognize aiding and abetting liability. First, in *Council on American-Islamic Relations Action Network, Inc. v. Gaubatz*, 82 F. Supp. 3d 344 (D.D.C. 2015), this Court "swiftly" dismissed plaintiff's claim for aiding and abetting trespass "because the D.C. Court of Appeals has not recognized a claim for aiding and abetting a tort." 82 F. Supp. 3d at 356. But, this Court's entire analysis of the issue was two sentences long. And, this Court did not cite or consider *Halberstam*. Accordingly, based on the arguments made by the parties in this case, the Court departs from its prior reasoning in *Council on American-Islamic Relations Action Network* and concludes that, under *Halberstam*, aiding and abetting for common law torts is actionable in the District of Columbia.

Defendants also cite *Accord3M Co. v. Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), in which a district court in this Circuit rejected *Halberstam* because "it is the District of Columbia Court of Appeals' holding–and not this Circuit's prediction–that must control in this case." 842 F. Supp. 2d at 119. But, this Court is not bound by *Accord3M* and disagrees with its conclusion for reasons already explained.

In *Halberstam*, the D.C. Circuit concluded that it seemed likely that District of Columbia courts would recognize aiding and abetting liability for common law torts. 705 F.2d at 479. The D.C. Circuit went on to affirm the "district court's factual findings and inferences" because they "fit into existing concepts of civil liability for ... aiding [and] abetting." *Id.* at 489. Accordingly, the D.C. Circuit's analysis of District of Columbia law on aiding and abetting was necessary to the decision reached in *Halberstam*. Absent a District of Columbia Court of Appeals decision directly contradicting *Halberstam*, which this Court concludes *Flax* does not, this Court remains

bound by the analysis in *Halberstam. See Gersman*, 975 F.2d at 897; *see also Baker*, 744 F. Supp. 2d 317 n.3 (providing reasons for following *Halberstam* despite *Flax*).

The Court next considers Defendants' second argument–Plaintiffs failed to allege sufficiently that Defendants aided and abetted the battery of Plaintiffs. In order to be liable for aiding and abetting, Plaintiffs must have alleged that (1) the party or parties Defendants aided committed battery, (2) Defendants were generally aware of their role in the tortious activity, and (3) Defendants knowingly and substantially assisted in the battery. *See Halberstam*, 705 F.2d at 477. Defendants contend that Plaintiffs failed to allege that Defendants provided any assistance or that such assistance was knowing and substantial.

The Court disagrees and concludes that Plaintiffs have sufficiently pled a claim for aiding and abetting battery. Plaintiffs allege that all Defendants participated in the first attack on Plaintiffs in which Defendants "pushed past the police and physically attacked the Protesters. Turkish security officials and civilians repeatedly hit, punched, and kicked protesters." Compl., ECF No. 1, ¶ 67. Similarly, during the second attack, Plaintiffs allege that the three Defendants "beat and attacked the protesters. … The violence was unrelenting: the attackers surrounded and kicked the protesters … who had fallen and were defenseless on the ground." *Id.* at ¶ 81. The Court concludes that these allegations are sufficient to sustain a claim for aiding and abetting battery as they demonstrate that Defendants intentionally helped to create a dangerous and injurious atmosphere which assisted other Defendants in committing battery on Plaintiffs.

In *Halberstam*, the Circuit Court noted that students' group action could be sufficient to make even a minimally-involved participant liable because of the group's "creation of a free-for-all[] was both dangerous and ultimately injurious." 705 F.2d at 484. Similarly, in *Bassi v. Patten*, No. 07-1277, 2008 WL 4876326 (D.D.C. Nov. 12, 2008), the court concluded that the defendant

could be liable for aiding and abetting assault even though he had not directly interacted with the plaintiff. 2008 WL 4876326 at *2. The defendant had initiated an assault on another individual which had cleared the way for a second defendant to attack the plaintiff. *Id.* The court explained that "a reasonable jury could infer that [the defendant] was generally aware of his involvement in creating a violent atmosphere in which others might be physically injured and that [the defendant] knowingly and substantially assisted [the second defendant's] attack on [the plaintiff] by doing so." *Id.*

The Court concludes that Defendants' actions as alleged by Plaintiffs are closer to the "dangerous and injurious" free-for-all recognized in *Halberstam* and *Bassi* than the "mere presence" role asserted by Defendants. Regardless of whether or not Defendants initiated the attack, they each played a role in breaking through the law enforcement line to attack Plaintiffs and in creating an environment in which all Plaintiffs were vulnerable to injury. Moreover, Plaintiffs have alleged that the second attack was "coordinated," which at a minimum creates the inference that Defendants were knowingly and intentionally providing this assistance.

Based on the above analysis, the Court concludes that Plaintiffs' allegations are sufficient to state a claim for aiding and abetting battery against Defendant A. Dereci. But, the Court notes that the case is even stronger as to Defendants E. Yildirim and Narin. In addition to the allegations already explained, Plaintiffs allege that Defendant E. Yildirim further contributed to the "free-for-all" atmosphere by yelling at law enforcement, warning them of potential violence, as well as by yelling at Plaintiffs. Compl., ECF No. 1, ¶ 76. Similarly, Defendant Narin yelled at law enforcement not to touch the Turkish security forces. Defendant Narin also allegedly called on the pro-Erdogan group to line up in the street, ignoring commands from law enforcement. *Id.* at ¶ 77.

Taking the allegations in Plaintiffs' complaint as true, the Court concludes that Plaintiffs have sufficiently pled a claim of aiding and abetting battery against Defendants. As an initial matter, based on *Halberstam*, the Court concludes that aiding and abetting is a source of liability under District of Columbia law. The Court further concludes that Plaintiffs have sufficiently alleged that Defendants knowingly and intentionally provided substantial assistance to others in committing battery on Plaintiffs.

Plaintiffs also allege that Defendants are liable for battery under a conspiracy theory. In order to prove a civil conspiracy, a plaintiff must show "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 14 (D.D.C. 2015) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)). Defendants argue that Plaintiffs have failed to allege that Defendants agreed with anyone to do anything. According to Defendants, there are no allegations of a prior relationship, communications, or contact other than merely being in the same place at the same time, which is insufficient to establish the existence of an agreement. The Court concurs with Defendants.

The existence of an agreement between two or more people is the "essential element of a conspiracy claim." *Graves v. U.S.*, 961 F. Supp. 314, 320 (D.D.C. 1997). To establish the existence of an agreement, the "plaintiff must set forth more than just conclusory allegations of [the] agreement." *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004). While Plaintiffs generally allege the existence of an agreement, they provide no facts to support its existence.

As support for the existence of an agreement, Plaintiffs point to the facts that the Defendants broke through the police cordon in a "coordinated" fashion, that Defendants stood

together shouting similar slurs, that Defendant Narin called on the pro-Erdogan group to line up in the street, and that Defendants had the same goal in attacking the protesters. The Court concludes that these factual allegations fail to establish the existence of an agreement. Instead, Plaintiffs merely pled "parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

While Courts can infer a conspiracy from indirect evidence, Plaintiffs have not pled facts that would reasonably allow the Court to make such an inference. Plaintiffs' claims that the Defendants broke through the police cordon in a "coordinated fashion" and that Defendants had a common goal are conclusory allegations, insufficient to withstand a motion to dismiss. The closest that Plaintiffs come to providing any factual allegation that would allow the Court to infer the existence of an agreement, implicit or explicit, is that Defendant Narin asked other Defendants to join him in the street, violating the orders of law enforcement. Compl., ECF No. 1, ¶ 77. But, Plaintiffs present no evidence that any of the other Defendants actually joined Defendant Narin in the street. Accordingly, this allegation fails to establish any sort of agreement among Defendants.

Moreover, based on the facts alleged, it is not clear to the Court when Defendants would have had the opportunity to form an agreement. Plaintiffs do not allege that Defendants knew each other before the event. Plaintiffs also do not allege that Defendants in any way communicated with each other prior to or during the event in question, possibly providing the opportunity to form an agreement. Without any allegations of communication, explicit or implicit, among the Defendants, Plaintiffs' allegations of parallel conduct are not "placed in a context that raises a suggestion of a preceding agreement." *Twombly*, 550 U.S. at 557.

Based on Plaintiffs' Complaint, the Court does not foreclose the possibility that a conspiracy to attack the protesters was formed; however, Plaintiffs fail to allege that the three Defendants at issue in this Memorandum Opinion were part of that conspiracy. Plaintiffs allege, on information and belief, that President Erdogan ordered the second attack. Compl., ECF No. 1, ¶ 80. Following President Erdogan's order, Plaintiffs allege that Turkish security officials conferred amongst themselves and soon thereafter attacked the protesters. *Id.* However, Plaintiffs do not allege that any of the civilian Defendants were involved in these conversations or agreed to any "plan" prior to the attack.

Taking the allegations in Plaintiffs' Complaint to be true, the Court concludes that Plaintiffs have not pled a conspiracy to commit battery. Plaintiffs fail to allege facts which allow the Court to infer the existence of an agreement to commit battery on Plaintiffs. Accordingly, the Court GRANTS IN PART Defendants' motions and DISMISSES WITHOUT PREJUDICE Plaintiffs' battery claims insofar as they rely on conspiracy allegations. But, for the reasons explained above, the Court also DENIES IN PART Defendants' motions and concludes that Plaintiffs may proceed with their battery claims on an aiding and abetting theory.

### C. Count 4- Intentional Infliction of Emotional Distress

In Count 4 of the Complaint, twelve Plaintiffs bring intentional infliction of emotional distress claims against each Defendant. Compl., ECF No. 1, ¶¶ 245-50. Defendants argue that these claims should be dismissed for failure to state a claim. Defendants have two grounds for dismissal. First, Defendants argue that Plaintiffs have failed to state a claim for intentional infliction of emotional distress because they fail to meet the high standards for extreme and outrageous conduct. Second, Defendants contend that Plaintiffs have failed to allege that

Defendants took intentional actions directed at inflicting emotional distress on each individual Plaintiff. The Court will address each argument in turn.

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (internal quotation marks omitted). Extreme and outrageous conduct is defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted). Conduct will be sufficient to sustain a claim for intentional infliction of emotional distress if "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (internal quotation marks omitted). In order to survive a motion to dismiss, "the allegations of the complaint must afford a basis for concluding that [the plaintiff] may be able to prove conduct of the required enormity." *Morton v. District of Columbia Hous. Auth.*, 720 F. Supp. 2d 1, 9 (D.D.C. 2010) (internal quotation marks omitted).

Defendants argue that, based on the high standards for extreme and outrageous conduct, Plaintiffs have failed to establish a claim for intentional infliction of emotional distress. The Court disagrees. Defendants attempt to downplay the seriousness of their actions, arguing that, at most, Plaintiffs have alleged that some yelling occurred, some threats were made, and some people were injured. Defendants contend that these actions, taken together, fail to rise to the level of extreme and outrageous conduct.

But, Defendants err in failing to consider "the specific context in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993); *see also Estate of Underwood v. Nat'l*

22

*Credit Union Admin.*, 665 A.2d 621, 641 (D.C. 1995) (explaining that the court should consider

"not only ... the nature of the activity at issue but also ... the relationship between the parties, and

the particular environment in which the conduct took place" (internal quotation marks omitted)).

Plaintiffs do not allege that these actions occurred during a bar brawl or during a street fight.

Instead, these actions occurred during an attack which included "Turkish government agents, in

America's capital, to stifle the First Amendment rights of people protesting the treatment of a

minority group in Turkey." Pls.' Opp'n to Defs. Yildirim and Narin, ECF No. 33, 24-25; *see also*

Pls.' Opp'n to Def. Dereci, ECF No. 35, 22. Highlighting the extreme and outrageous nature of

Defendants' alleged actions, following the attack, 40 members of the United States Congress

sent a letter to then-Attorney General Jeff Sessions and then-Secretary of State Rex Tillerson

expressing their "outrage over the remorseless acts of violence inflicted upon individuals

exercising their Constitutionally-protected First Amendment right to free speech." Compl., ECF

No. 1, ¶ 201. In addition, 20 members of the United States Senate sent a similar letter to then-

Secretary of State Tillerson. *Id.* at ¶ 202.

    The Court finds that this case is not like that cited by Plaintiffs, *Ortberg v. Goldman*

*Sachs Group*. In that case, the Court concluded that the plaintiff had not established a substantial

likelihood of proving that the defendant's conduct was extreme and outrageous. *Ortberg*, 64

A.3d at 163-64. The plaintiff had alleged only that the defendant, with whom he had no prior

relationship, conducted a protest on public streets consisting of chanting slogans and making

vague threats. *Id.*

    In contrast to *Ortberg*, here, Defendants are accused of much more. Plaintiffs allege that

they were engaging in a peaceful protest over Turkey's treatment of its Kurdish minority and

President Erdogan's other repressive policies. Compl., ECF No. 1, ¶¶ 63, 64. Plaintiffs claim

that, during this protest, Defendants yelled threats and ethnic slurs at them. *Id.* at ¶¶ 65, 72, 82. Plaintiffs further allege that Defendants twice pushed past law enforcement in order to repeatedly physically attack the protesters. *Id.* at ¶¶ 67, 68,71, 80, 81. Based on the severity of Defendants' conduct and the context in which that conduct took place, *Ortberg* is not persuasive.

Even if Defendants, as a group, committed conduct sufficient to meet the extreme and outrageous standard, Defendants argue that Plaintiffs' claims for intentional infliction of emotional distress should still be dismissed. Defendants contend that Plaintiffs have not alleged that the three Defendants engaged in any specific conduct directed at each of the Plaintiffs sufficient to show that Defendants acted with the intent to cause each Plaintiff emotional distress.

Defendants rely on *Morton v. District of Columbia Housing Authority* for the proposition that Plaintiffs have failed to allege facts sufficient to show that each Defendant acted intentionally. In *Morton*, the court dismissed the plaintiffs' intentional infliction of emotional distress claim against one defendant "because [the plaintiffs] ha[d] not alleged any facts sufficient to satisfy the tort's requirement of intentional or reckless conduct." 720 F. Supp. 2d at 9. In considering whether the defendant had committed intentional acts, the court refused to simply "substitute each defendant's name in place of the more generalized 'defendants.'" *Id.* The court explained that the plaintiffs failed to allege specific information to show that the defendant "engaged in conduct of sufficient enormity to imply recklessness or intent." *Id.*

Unlike in *Morton*, here, Plaintiffs have alleged specific facts against each Defendant sufficient to satisfy the requirement of intentional conduct. Plaintiffs allege that each of the three Defendants "pushed past the police and physically attacked the Protesters" during the first attack. Compl., ECF No. 1, ¶¶ 67, 68. Plaintiffs further allege that during this first attack Defendant A. Dereci "repeatedly punched Mr. Kheirabadi" and that Defendant E. Yildirim physically attacked

Plaintiff Kheirabadi. *Id.* at ¶¶ 166, 167. Plaintiffs next claim that, during a second attack, all Defendants "bypassed the police cordon and chased, kicked, punched, and grabbed protesters." *Id.* at ¶ 81. Plaintiffs claim that during this second attack Defendants E. Yildirim and Narin physically attacked Plaintiff Genc. *Id.* at ¶ 160. During this second attack, Plaintiffs also allege that Defendant E. Yildirim kicked Plaintiff Yasa and told him that he would make life miserable for the Kurds. *Id.* at ¶ 188, 191.

Based on these allegations, the Court concludes that Defendant E. Yildirim engaged in sufficiently intentional extreme and outrageous conduct towards Plaintiffs Kheirabadi, Genc, and Yasa, that Defendant Narin engaged in intentional extreme and outrageous conduct towards Plaintiff Genc, and that Defendant A. Dereci engaged in intentional extreme and outrageous conduct towards Plaintiff Kheirabadi. The question of intentional conduct is more difficult as to the remaining Plaintiffs. However, the Court concludes that Plaintiffs have sufficiently alleged "an intent on the part of the alleged tortfeasor to cause a disturbance in [each Plaintiff's] emotional tranquility" severe enough that physical consequences may result. *Sterling Mirror of Md., Inc. v. Gordon*, 619 A.2d 64, 76 (D.C. 1993). Unlike in *Morton*, Plaintiffs do not ask the Court to establish the individual Defendant's intent by "substitut[ing] each defendant's name in place of the more generalized 'defendants.'" 720 F. Supp. 2d at 9. Instead, Plaintiffs allege that Defendant E. Yildirim, Defendant Narin, and Defendant A. Dereci each broke through law enforcement lines two separate times to attack Plaintiffs. In addition to facing attack personally, Plaintiffs also allege that they witnessed Defendants threatening and attacking their fellow protesters and friends. *See, e.g.*, Compl., ECF No. 1, ¶¶ 96, 111, 118. This conduct was committed by each Defendant and was directed at Plaintiffs. Accordingly, the Court concludes

that the remaining Plaintiffs asserting intentional infliction of emotional distress claims have alleged intentional extreme and outrageous conduct directed towards them by each Defendant.

The final element that Plaintiffs must allege is that Defendants' conduct actually caused them severe emotional distress. *Ortberg*, 64 A.3d at 163. In order to meet this standard, a plaintiff must allege "emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result." *Klayman v. Judicial Watch, Inc.*, 296 F. Supp. 3d 208, 217 (D.D.C. 2018) (internal quotation marks omitted). The Court concludes that all twelve Plaintiffs alleging intentional infliction of emotional distress, with the exception of one, have alleged severe emotional distress. Compl., ECF No. 1, ¶¶ 97, 114, 119, 125, 133, 151, 156, 162, 165, 185, 194.

The only Plaintiff whom Defendants argue did not allege severe emotional distress is Plaintiff Kheirabadi. The Court agrees. Plaintiff Kheirabadi made only the conclusory allegation that he "has also experienced emotional distress." *Id.* at ¶ 172. This conclusory allegation is insufficient to survive a motion to dismiss.

In their Oppositions, Plaintiffs contend that Plaintiff Kheirabadi in fact suffers from severe emotional distress. Plaintiffs provide examples of this severe emotional distress such as sleeplessness and anxiety around unknown people. Pls.' Opp'n to Defs. Yildirim and Narin, ECF No. 33, 28-29; *see also* Pls.' Opp'n to Def. Dereci, ECF No. 35, 23-24. However, on a motion to dismiss, the Court cannot consider allegations made for the first time in an Opposition brief. *See Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (explaining that on a motion to dismiss, the court cannot look outside the complaint for factual matters). But, given the statements made in Plaintiffs' Oppositions, the Court finds it likely that Plaintiff Kheirabadi may be able to allege facts supporting the requirement for severe emotional distress.

Accordingly, the Court will dismiss without prejudice Plaintiff Kheirabadi's claim for intentional infliction of emotional distress and allow Plaintiffs to attempt to amend the Complaint to satisfy the requirements of the claim. *See Simpson v. Sociality People's Libyan Arab Jamahiriya*, 326 F. 3d 230, 235 (D.C. Cir. 2003) (allowing the plaintiff to amend a complaint when it appeared she could allege facts sufficient to sustain her claim).

The Court concludes that the twelve Plaintiffs, other than Plaintiff Kheirabadi, successfully alleged a claim for intentional infliction of emotional distress against Defendants. Plaintiffs alleged intentional extreme and outrageous conduct on the part of Defendants directed against Plaintiffs. Plaintiffs further alleged that they have experienced severe emotional distress with lasting consequences as a result of Defendants' conduct. Accordingly, the Court DENIES Defendants' motions as to these claims. But, the Court GRANTS Defendants' motions and DISMISSES WITHOUT PREJUDICE Plaintiff Kheirabadi's claim for intentional infliction of emotional distress due to his failure to plead severe emotional distress as a consequence of Defendants' actions. The Court grants Plaintiff Kheirabadi leave to amend the Complaint if he is able to allege facts to substantiate his conclusory allegation.

### D.  Count 5- Hate Crimes under D.C. Code § 22-3704

In Count 5 of the Complaint, each Plaintiff brings a hate crime claim against each Defendant. Compl., ECF No. 1, ¶¶ 251-57. Under D.C. Code § 22-3704, there is a private cause of action for "any person who incurs injury to his or her person or property as a result of an intentional act that demonstrates an accused's prejudice based on the actual or perceived race, color, religion, national origin … or political affiliation of a victim of the subject designated act." D.C. Code § 22-3704(a). A "designated act" is defined as "a criminal act" and has been interpreted to include any criminal act under District of Columbia law. D.C. Code § 22-3701(2);

*Aboye v. U.S.*, 121 A.3d 1245, 1248-50 (D.C. 2015) (explaining that "designated act" encompasses any criminal act). Defendants argue that Plaintiffs' hate crime claims should be dismissed because Plaintiffs failed to allege that Defendants committed any "designated act" and because Plaintiffs did not plead intent with specificity. The Court disagrees.

First, the Court concludes that Plaintiffs have adequately pled the existence of a "designated act" under the District of Columbia hate crime statute. Under the hate crime statute, Plaintiffs must be the victim of a "designated act" perpetrated by Defendants. D.C. Code § 22-3704(a). The D.C. Code defines "designated act" as "a criminal act, including arson, assault, burglary, injury to property, kidnapping, manslaughter, murder, rape, robbery, theft, or unlawful entry, and attempting, aiding, abetting, advising, inciting, conniving, or conspiring to commit arson, assault, burglary, injury to property, kidnapping, manslaughter, murder, rape, robbery, theft, or unlawful entry." D.C. Code § 22-3701(2). Courts have interpreted the "designated act" provision to apply broadly to all acts which are criminal offenses under District of Columbia law, including misdemeanors, attempts, and completed offenses. *See Aboye*, 121 A.3d at 1248-50 (explaining that "designated act" has a broad definition because "including" means "includes, but not limited to"). However, liability under D.C. Code § 22-3704 is not dependent on the existence of criminal prosecution for the designated act. *See* D.C. Code § 22-3704(a) (providing liability "[i]rrespective of any criminal prosecution or the result of a criminal prosecution"). This expansive interpretation of "designated act" is supported by the lawmakers' stated intent to craft a law of broad coverage "specifically including not only assaultive behavior, but also non-assaultive intimidating 'activities like burning a cross in front of a black family's home [and] painting a swastika on a synagogue.'" *Id.* at 1250 (quoting Comm. On the Judiciary, Rep. on Bill 8-168 at 2 (Oct. 18, 1989)). Given this broad definition of "designated act," the Court concludes

that each Plaintiff has adequately pled that he or she was the victim of a "designated act" by each Defendant.

Assault is included in the illustrative list of designated acts. D.C. Code § 22-3701(2). Under District of Columbia law, assault is not defined. *See* D.C. Code § 22-404 (criminalizing, but not defining, assault). But, courts have construed the offense to be defined the same as at common law. *See Mungo v. U.S.*, 772 A.2d 240, 245 (D.C. 2001) ("We have, however, construed the offense to be common law assault."). For reasons previously explained, the Court has already concluded that each Plaintiff has sufficiently stated a claim for assault against each Defendant. *See Supra* Sec. III.A. Specifically, each "[D]efendant made an attempt or effort, with force or violence, to do injury to the person of another … [with] the apparent present ability to effect such an injury … [and with the intention] to do the acts which constituted the assault." *Robinson v. U.S.*, 506 A.2d 572, 574 (D.C. 2986). Accordingly, the Court concludes that each Plaintiff has adequately pled that he or she was the victim of a "designated act," specifically an assault, by each Defendant.

The Court has also already concluded that thirteen Plaintiffs have sufficiently stated a claim for aiding and abetting battery against the three Defendants. *See Supra* Sec. III.B. While battery is not included in the illustrative list of designated acts, battery is a criminal act under District of Columbia law; as such, it constitutes a designated act. *Smith v. District of Columbia*, 882 A.2d 778, 787 (D.C. 2005) (internal quotation marks omitted) (defining "battery" under District of Columbia law as "an intentional act that causes harmful or offensive bodily contact"). Additionally, aiding and abetting is specifically included in the D.C. Code as a "designated act." D.C. Code § 22-3701(2). Accordingly, by express statutory language the thirteen Plaintiffs'

claims against Defendants for aiding and abetting battery also constitute "designated acts" under the District of Columbia hate crimes statute.

Defendants argue that liability for aiding and abetting is unavailable under the District of Columbia hate crimes statute. But, the Court is not persuaded by Defendants' argument. Defendants concede that D.C. Code § 22-3701(2) "enumerates the predicate *criminal* offenses under D.C.'s criminal code that can form the basis of a bias-related crime, including, criminal aiding and abetting." Def. Dereci's Reply, ECF No. 39, 22; *see also* Defs. Yildirim and Narin's Reply, ECF No. 38, 24-25. But, Defendants contend that the statute "does not provide that … *civil* remedies may be based on civil aiding and abetting theories." *Id.*

The Court concludes that Plaintiffs do not need to rely on a civil aiding and abetting theory to establish a violation of D.C. Code § 22-3704. Instead, Plaintiffs allege a direct violation of D.C. Code § 22-3704 with aiding and abetting as the "designated act." This use of aiding and abetting is expressly allowed under the statute. Under D.C. Code § 22-3704, "a victim of the subject designated act shall have a civil cause of action." D.C. Code § 22-3704(a). For purposes of this section, a "designated act" is defined to include aiding and abetting. D.C. Code § 22-3701(2). Based on the clear statutory language, Plaintiffs have a civil cause of action under § 22-3704 because they are the victims of a designated act, aiding and abetting battery.

The Court concludes that all Plaintiffs have sufficiently alleged that they were the victims of assault, which is a designated act, by each Defendant. The Court further concludes that thirteen Plaintiffs have adequately alleged that they were the victims of aiding and abetting battery, which is also a designated act, by each Defendant. Accordingly, all Plaintiffs have pled at least one predicate criminal act upon which liability under § 22-3704 may be based.

Second, Defendants argue that Plaintiffs did not adequately allege that Defendants had the intent to commit a bias-related act. Under the statute, "whether an intentional act has occurred that demonstrates an accused's prejudice based on the actual or perceived color, religion, national origin … or political affiliation of a victim of the subject designated act shall be determined by reliable, probative, and substantial evidence." D.C. Code § 22-3704(b). Defendants contend that Plaintiffs failed to provide more than general allegations that Defendants had the required mental state. The Court disagrees.

As an initial matter, the Court notes that D.C. Code § 22-3704 does not impose a heightened pleading requirement. *See* Fed. R. Civ. P. 9(b) (explaining that intent may be generally alleged). Neither mistake nor fraud are alleged, and Defendants cite no case which would require a heightened pleading standard in these circumstances. Moreover, the evidentiary requirement for proving intent discussed in D.C. Code § 22-3704(b) says nothing about the pleading standards for asserting a claim. Accordingly, the Court determines that a heightened pleading standard is not required.

Considering the pleading requirements, the Court concludes that Plaintiffs have sufficiently alleged that Defendants committed an "intentional act that demonstrates an accused's prejudice based on the actual or perceived race, color, religion, national origin … or political affiliation of the victim." D.C. Code § 22-3704(a). Plaintiffs allege that the Kurdish community organized a protest, which began at the White House and continued to the Ambassador's Residence, to bring attention to the treatment of the Kurdish minority in Turkey and the oppressive practices of President Erdogan. Compl., ECF No. 1, ¶¶ 45-50, 53, 58. During the protest that ensued, Plaintiffs held up signs clearly indicating their purpose for protesting–calling attention to the treatment of the Kurdish minority in Turkey. *Id.* at ¶ 63. Plaintiffs further allege

that another group of people, the pro-Erdogan group, which included Defendants, had already gathered at the Ambassador's Residence before Plaintiffs arrived. Plaintiffs contend that "this group included persons who accepted the Turkish Ambassador's invitation to come to Washington, D.C. to show support for President Erdogan." *Id.* at ¶ 59. This background information plays an important role in evidencing intent for the attacks that later ensued.

During the first attack, Defendants allegedly pushed through law enforcement in order to attack Plaintiffs while some Defendants yelled anti-Kurdish slurs. *Id.* at ¶¶ 65, 67, 68. Following the first attack, Plaintiffs allege that Defendants continued yelling anti-Kurdish slurs and that one of the Defendants told a Secret Service officer that "we are waiting [for] you to take them out, because President [Erdogan] is coming. If you don't take … I will take." *Id.* at ¶ 74. Defendant Narin allegedly told police that he was not cooperating because "[m]y President is coming, I don't want them to be over there." *Id.* at ¶ 77. The pro-Erdogan supporters also played a Turkish nationalist song over a loudspeaker. *Id.* at ¶ 78. Following President Erdogan's arrival, a second attack ensured. During the second attack, some Defendants shouted ethnic slurs. *Id.* at ¶¶ 81, 82. Following the attack, some of the Defendants tore up the protester's signs, and Defendant E. Yildirim allegedly stomped on one of the protester's flags. *Id.* at ¶ 89.

Considering these allegations in the context of Plaintiffs' purpose for initiating the protest, the Court concludes that Plaintiffs have sufficiently alleged that Defendants committed their intentional actions of assault and aiding and abetting battery in a way that "demonstrate[d] [the Defendants'] prejudice based on" the protester's Kurdish identity and anti-Erdogan political affiliation. D.C. Code § 22-3704(a).

Defendants argue that Plaintiffs have failed to establish that they had the intent to commit an intentional act against each Plaintiff based on prejudice. Defendants contend that Plaintiffs

rely on impermissible group pleading to establish intent. And, Defendant A. Dereci specifically contends that Plaintiffs' hate crime claims against him should be dismissed because there are no allegations that he yelled any ethnic slurs or made any political comments. Accordingly, Defendants argue that Plaintiffs failed to sufficiently allege intent as to each Defendant individually.

While the Court agrees that some of the allegations demonstrating prejudice are generally pled, the Court concludes that Plaintiffs' allegations are sufficient to survive a motion to dismiss. Plaintiffs have alleged that each Defendant was present at the scene of a counter-protest in order to show support for President Erdogan. Plaintiffs further allege that Defendants twice attacked protesters while at least some Defendants yelled anti-Kurdish slurs. The fact that Plaintiffs do not allege that Defendant A. Dereci personally made ethnic slurs or political comments is not dispositive. The biased intent of all Defendants can be inferred from circumstantial evidence, including the factual background of the protest and each Defendants' actions at the protest. The allegations in Plaintiffs' Complaint sustain an inference that the attacks on Plaintiffs occurred on account of their Kurdish identity and their anti-Erdogan political affiliation. These allegations are sufficient to withstand a motion to dismiss. *See Mori v. Dep't of Navy*, 917 F. Supp. 2d 60, 65 (D.D.C. 2013) (explaining that "circumstantial evidence is particularly important in bias" cases); *see also Holder v. Ivanjack*, 39 F. Supp. 2d 965, 971 (N.D. Ill. 1999) (refusing to dismiss the plaintiff's hate crime claim against multiple officers even though only one officer made a racial slur).

The Court concludes that all Plaintiffs have alleged a hate crime claim against the three Defendants pursuant to D.C. Code § 22-3704. All Plaintiffs have sufficiently alleged that they incurred an injury as a result of an intentional assault that demonstrated Defendants' prejudice.

And, thirteen Plaintiffs have sufficiently alleged that they incurred an injury as a result of intentional aiding and abetting of battery that demonstrated Defendants' prejudice. Accordingly, the Court DENIES Defendants' motions as to these claims.

### E.  Count 7- Civil Rights Violation under 42 U.S.C. § 1985

Finally, in Count 7 of the Complaint, each Plaintiff brings a civil rights violation claim against all civilian Defendants pursuant to 42 U.S.C. § 1985. Compl., ECF No. 1, ¶¶ 272-76. Plaintiffs allege that Defendants violated their civil rights under § 1985 in two ways. First, Plaintiffs allege that civilian Defendants conspired to "deprive" them of their First Amendment right to free speech. *Id.* at ¶ 273. Second, Plaintiffs allege that civilian Defendants conspired to "prevent" law enforcement from protecting Plaintiffs' First Amendment right to free speech. *Id.* at ¶ 274. Defendants argue that Plaintiffs have failed to state a claim under either the "deprivation" or "prevention" clauses of § 1985 for two reasons. First, Defendants contend that § 1985 does not apply to purely private conspiracies to interfere with First Amendment rights. Second, Defendants argue that Plaintiffs have failed to allege any facts showing the existence of a conspiracy to violate Plaintiffs' right to free speech.

Under 42 U.S.C. § 1985, "[i]f two or more persons in any State or Territory conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws … the party so injured or deprived may have an action for the recovery of damages occasioned but such injury or deprivation." 42 U.S.C. § 1985(3). The first clause of this statute is referred to

as the "deprivation" clause, and the second clause is referred to as the "prevention" or "hinderance" clause.

In their Complaint, Plaintiffs seek to bring claims under both the deprivation and prevention clauses of § 1985(3). But, Plaintiffs cannot bring a claim under the deprivation clause as they do not allege any state action. Section 1985(3) is remedial and provides no substantive rights on its own. *See United Brothers of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 847 n.10 (1983). And, the First Amendment right to free speech protects against only state action, not private action. *Id.* at 833. Accordingly, a private conspiracy to deprive Plaintiffs of their First Amendment rights is not a violation of § 1985(3) unless there is some state action alleged. *Id.* at 831-33 (requiring state action for an alleged conspiracy to violate the plaintiffs' First Amendment rights). Plaintiffs do not allege that any state actors were involved in the conspiracy to violate Plaintiffs' First Amendment rights. Accordingly, Plaintiffs do not state a claim under § 1985(3)'s deprivation clause. *See Hobson v. Wilson*, 737 F.2d 1, 15 (D.C. Cir. 1984) ("When no state action is involved, only those constitutional rights that exist against private actors may be challenged under [§ 1985(3)]."), *overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

However, Plaintiffs argue that even if state action is required under the deprivation clause, state action is not required under the prevention clause. In *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), the United States Supreme Court addressed, but did not decide, whether or not § 1985(3)'s prevention clause requires state action. 506 U.S. at 279-85. In *Bray*, four dissenters concluded that the prevention clause did not require state action. However, the majority refused the address the issue, concluding that the issue was not properly before the

Court. *Id.* at 279-81. Additionally, the majority expressed skepticism that the requirements of the deprivation clause and the prevention clause would be interpreted differently given that "the operative language of the two clauses … is identical." *Id.* at 282.

Following *Bray*, a spilt emerged in how circuit courts treat § 1985(3)'s prevention clause. At least two circuit courts have concluded that state action is not required under the prevention clause. In *Libertad v. Welch*, 53 F. 3d 428 (1st Cir. 1995), the First Circuit concluded that state action was not required for the plaintiffs' § 1985(3) prevention clause claim that the defendants had prevented law enforcement officials from securing to women their constitutionally-protected right to abortion. 53 F. 3d at 449-50. Similarly, in *National Abortion Federation v. Operation Rescue*, 8 F.3d 680 (9th Cir. 1993), the Ninth Circuit concluded that state action was not required for the plaintiffs' prevention clause claim that the defendants had conspired to hinder state law enforcement from securing to women their right to obtain an abortion. 8 F.3d at 687. However, in *Tilton v. Richardson*, 6 F.3d 683 (10th Cir. 1993), the Tenth Circuit affirmed the district court's dismissal of the plaintiff's § 1985(3) claim, rejecting the plaintiff's argument that, even if state actors were not involved in the conspiracy, the conspiracy was aimed at influencing state conduct. 6 F.3d at 686-87. The Tenth Circuit concluded that both clauses of § 1985(3) require state involvement. *Id.*

The D.C. Circuit does not appear to have made a decision on this issue. Moreover, the parties do not cite, and the Court could not find, any decisions from district courts in this Circuit interpreting the state action requirement under § 1985(3)'s prevention clause.

Rather than wading into this legal quagmire and answering a question of first impression for this Circuit, the Court will assume arguendo that § 1985(3)'s prevention clause can apply to wholly private conspiracies aimed at rights protected against only state encroachment. But, even

with this assumption, the Court finds that Plaintiffs have failed to state a claim for which relief can be granted because Plaintiffs failed to sufficiently allege the existence of a conspiracy to violate Plaintiffs' First Amendment rights.

In order to bring a claim under 42 U.S.C. § 1985(3)'s deprivation or prevention clause, Plaintiffs must allege that Defendants conspired for the purpose of depriving Plaintiffs of their First Amendment rights or of preventing law enforcement from securing Plaintiffs' First Amendment rights. For many of the same reasons that the Court concluded that Plaintiffs did not state a claim for conspiracy to commit battery, the Court concludes that Plaintiffs have not sufficiently pled the existence of a conspiracy to deprive Plaintiffs of their First Amendment rights or to prevent law enforcement from protecting those rights. *See Supra* Sec. III.B.

The "principal" element in alleging a civil conspiracy is an "agreement between the parties to inflict a wrong against or injury upon another." *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 (D.D.C. 2007) (internal quotation marks omitted). In the context of § 1985(3), it is not sufficient that Plaintiffs allege an agreement between Defendants to harm Plaintiffs. Instead, Defendants must have formed an agreement with the purpose of violating the civil rights of Plaintiffs. *Mazloum v. District of Columbia*, 442 F. Supp. 2d 1, 10 (D.D.C. 2006). To survive a motion to dismiss for failure to state a claim, a plaintiff must set forth more than just conclusory allegations of an agreement. *See Twombly*, 550 U.S. at 556-57 (explaining that "stating a [conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and noting that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Here, Plaintiffs generally allege that Defendants entered into an agreement to violate Plaintiffs' First Amendment rights. As evidence of this agreement, Plaintiffs point to the facts

that Defendants broke through the law enforcement cordon in the second attack in a "coordinated" fashion, that Defendants yelled similar slurs at Plaintiffs, and that Defendants ignored the presence of police. Compl., ECF No. 1, ¶¶ 65, 67, 71, 81, 82.

These facts, however, fail to raise Plaintiffs' allegation of an agreement beyond the speculative and into the level of plausible. *Twombly*, 550 U.S. at 555-56. Plaintiffs fail to allege "the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the [D]efendants" to violate Plaintiffs' First Amendment rights. *McCreary v. Heath*, No. Civ. A. 04-0623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005). Moreover, in reading Plaintiffs' Complaint, it is not evident when the civilian Defendants would have had the opportunity to form such an agreement. Plaintiffs do not allege that the civilian Defendants knew each other prior to the protest or that they communicated with each other during the protest. Plaintiffs do allege that the Turkish security officials communicated with each other directly prior to the second attack. Compl., ECF No. 1, ¶ 80. But, Plaintiffs do not allege that any civilian Defendants were included in these communications. Accordingly, Plaintiffs present no facts supporting that an agreement was made between civilian Defendants, and Plaintiffs present no facts which would allow the Court to infer that civilian Defendants had the opportunity to form an agreement. *See Livingood*, 360 F. Supp. 2d at 104 (dismissing conspiracy claim where the plaintiff "put[] forth no facts suggesting that the defendants were acting in concert in furtherance of a shared goal of discriminating against him"). In the absence of such facts supporting the existence of an agreement, Plaintiffs' Complaint "boils down to a conclusory and purely speculative assertion that Defendants entered into a conspiracy," which is insufficient to survive a motion to dismiss. *See McManus*, 530 F. Supp. 2d at 75.

Plaintiffs also generally argue that "Defendants had the common goal of beating protesters to end the protest and curtail Plaintiffs' First Amendment rights, which they ultimately did." Pls.' Opp'n to Def. Dereci, ECF No. 35, 34; *see also* Pls.' Opp'n to Defs. Yildirim and Narin, ECF No. 33, 41-42. This conclusory argument is speculative and provides no additional support for the existence of an agreement. A common goal, never discussed explicitly or implicitly among the Defendants, does not constitute an agreement. *See Twombly*, 550 U.S. at 557 (explaining that an agreement is not sufficiently alleged by "parallel conduct that could just as well be independent action"). Moreover, Plaintiffs provide no support for the conclusory allegation that the aim of the conspiracy was to curtail Plaintiffs' First Amendment rights, as opposed to the aim being simply to attack Plaintiffs out of prejudice, anger, or retribution. It is not sufficient that the alleged conspiracy had the effect of curtailing Plaintiffs' First Amendment rights. Instead, the conspiracy must have been consciously aimed at impairing those rights. *See Bray*, 506 U.S. at 275 ("A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right."). Plaintiffs fail to provide more than conclusory allegations that the aim of Defendants' alleged conspiracy to was curtail Plaintiffs' First Amendment rights. And, these conclusory allegations are insufficient to survive a motion to dismiss. *Id.* at 276 (explaining that the defendant "must do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it").

The Court concludes that Plaintiffs have not alleged a claim under 42 U.S.C. § 1985(3) against the three civilian Defendants. State action is required for claims under the deprivation clause, and Plaintiffs do not allege any state action. Even if the Court assumes for purposes of this Memorandum Opinion that state action is not required for claims under the prevention

clause, Plaintiffs have failed to adequately allege the existence of a conspiracy between civilian Defendants to curtail Plaintiffs' First Amendment free speech rights. Accordingly, the Court GRANTS Defendants' motions as to these claims and DISMISSES WITHOUT PREJUDICE the claims as to Defendants E. Yildirim, Narin, and A. Dereci.

## IV. CONCLUSION

Based on the above analysis, the Court GRANTS IN PART and DENIES IN PART Defendants E. Yildirim and Narin's [21] Partial Motion to Dismiss and Defendant A. Dereci's [32] Partial Motion to Dismiss. The Court GRANTS IN PART the three Defendants' motions and DISMISSES WITHOUT PREJUDICE Plaintiffs' claims for conspiracy to commit battery and for civil rights violations under 42 U.S.C. § 1985, as Plaintiffs have failed to state a claim for which relief may be granted.[2] The Court also DISMISSES WITHOUT PREJUDICE Plaintiff Jalal Kheirabadi's claim for intentional infliction of emotional distress for failure to state a claim. However, the Court gives Plaintiffs leave to file an Amended Complaint setting out facts supporting Plaintiff Kheirabadi's claim for intentional infliction of emotional distress if they are so able. The Court otherwise DENIES Defendants' motions, concluding that Plaintiffs have sufficiently stated claims for which relief may be granted.

---

[2] In their Opposition, Plaintiffs make a cursory request for leave to amend "[i]n the event the Court finds any of Plaintiffs' allegations insufficient." Pls.' Opp'n to Defs. Yildirim and Narin, ECF No. 33, 43. Pursuant to Federal Rule of Civil Procedure 15(a)(2), a plaintiff may amend the complaint with the court's leave. Here, Plaintiffs have not attached a proposed Amended Complaint. And, Plaintiffs do not propose additional allegations that could be added to the Complaint to sustain their claims. Accordingly, the Court cannot evaluate the merits of Plaintiffs' request for leave to amend. The Court denies without prejudice Plaintiffs' request for leave to amend as to Plaintiffs' claims for conspiracy to commit battery and for civil rights violations under 42 U.S.C. § 1985. If Plaintiffs make another request for leave to amend, in compliance with the local rules and the Federal Rules of Civil Procedure, the Court will consider the request anew.

An appropriate Order accompanies this Memorandum Opinion.

                                    /s/
                            **COLLEEN KOLLAR-KOTELLY**
                            United States District Judge