IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KASIM KURD, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 1:18-cv-01117-CKK |
| THE REPUBLIC OF TURKEY, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**JOINT MOTION TO STAY
BY DEFENDANTS AHMET DERECI AND MAHMUT ELLIALTI**

Defendants Ahmet Cengizhan Dereci ("Mr. Dereci") and Mahmut Sami Ellialti ("Mr. Ellialti"), through counsel and pursuant to Local Civil Rule 7, respectfully move for a stay of this litigation as to them until at least February 9, 2023, two weeks after the next status conference in their parallel criminal proceedings against them. The potential for irreparable harm to Mr. Ellialti, Mr. Dereci and their co-defendants, the non-existent potential for any harm to Plaintiffs, and the important public interests at stake all weigh in favor of a stay until then. The parties have conferred regarding this motion as required by Local Civil Rule 7(m), and Eyup Yildirim ("Mr. Yildirim"), Alpkenan Dereci ("Mr. Alpkenan Dereci"), and Sinan Narin ("Mr. Narin") consent to the relief requested. Plaintiffs oppose the relief requested.

**STATEMENT OF FACTS**

**A. The Current Criminal Prosecution of Messrs. Dereci and Ellialti.**

Mr. Dereci and Mr. Ellialti are Turkish-born Canadian citizens, who live and work in Toronto, Ontario. They were indicted in connection with a public altercation among dozens of individuals that occurred on May 16, 2017, outside the residence of Türkiye's Ambassador to

1

the United States (the "Residence"). At the time, Mr. Dereci and Mr. Ellialti were visiting the United States on vacation and went to the Residence, along with other supporters of Türkiye, as part of a peaceful, celebratory public assembly to welcome Türkiye's President, who was visiting D.C. to meet with then-President Trump. Other than pride in their Turkish heritage, Mr. Dereci and Mr. Ellialti had no agenda, were not part of any group or organization and were not aware in advance that there would be an anti-Türkiye, pro-terrorist protest in the street adjacent to the Residence.

As the Turkish President arrived, protesters showing support for the Syrian arm of the Kurdistan Worker's Party ("PKK"), which is designated by the U.S. State Department and other countries as a Foreign Terrorist Organization, attacked the pro-Türkiye group.[1] The PKK supporters violently assaulted Mr. Dereci, Mr. Ellialti, and others. They also endangered the Turkish President and some of Türkiye's senior ministers and diplomats who were standing outside of the Residence.

Mr. Dereci was unwittingly drawn into the fracas when a member of the anti- Türkiye group violently (and unprovoked) assaulted his cousin with a megaphone, causing a severe head wound, which bled profusely and required sixteen stiches to close.[2] Following the incident,

---

[1] The PKK is one of only twenty-one groups and entities that the European Union has classified as a terrorist organization. *See* Official Journal of the E.U., Vol. 64, L 43/4 (Aug. 2, 2021), https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=OJ:L:2021:043:FULL&from=en (last visited Nov. 14, 2022). Just last weekend, terrorist with ties to the PKK and its Syrian arm, the Kurdish People's Protection Units ("YPG"), detonated bombs in Istanbul, killing at least six people and injuring dozens of others. *See* B. Hubbard and S. Timur, NEW YORK TIMES *Blast in Central Istanbul Kills at Least 6 and Wounds Dozens*, Nov. 13, 2022, www.nytimes.com/live/2022/11/13/world/explosion-istanbul-turkey (last visited Nov. 14, 2022).

[2] Remarkably, this assailant was not only not charged with Assault with a Dangerous Weapon, but has been falsely characterized by the government as a "victim."

Mr. Dereci and Mr. Ellialti and all of the other participants in the incident departed the United States, as per their respective prior travel plans.³ At no point during or immediately following the incident were they arrested, detained or even questioned.⁴

Months later, on July 17, 2017, the Government indicted Mr. Dereci, Mr. Ellialti, two other civilians, and fifteen Turkish security officers in connection with the May 16, 2017 incident. *See* Ex. A, Indictment. The indictment alleges that Mr. Dereci and Mr. Ellialti conspired with the other named individuals to assault and kick the protesters showing support for the PKK and/or its Syrian arm. *Id*. The indictment charges Mr. Dereci with five crimes: Conspiracy to Commit a Bias-Related Crime (Count); Assault with a Dangerous Weapon of a Senior Citizen, Bias-Related Crime (Sixth Count); Assault with Significant Bodily Injury, Bias-Related Crime (Seventh Count); Assault with a Dangerous Weapon, Bias-Related Crime (Tenth Count); Assault, Bias-Related Crime (Eleventh Count). *Id*. The indictment also charges Mr. Ellialti with five crimes: Conspiracy to Commit a Bias-Related Crime (First Count); Assault with a Dangerous Weapon (Second Count); Aggravated Assault (Third Count); Assault with a Dangerous Weapon of a Senior Citizen, Bias-Related Crime (Fourth Count); Assault with Significant Bodily Injury (Fifth Count). If convicted of these crimes, Mr. Dereci and Mr. Ellialti could be sentenced to terms of more than thirty (30) years' imprisonment. *See* D.C. Code §§ 23-112 (consecutive and concurrent sentences); 22-402 (assault with a dangerous

---

³ Messrs. Dereci and Ellialti had separately travelled to Washington, D.C., and did not know each other until after the indictment.

⁴ The government never prosecuted any members of the anti-Türkiye group, who indisputably attacked and injured civilians (including Mr. Dereci's cousin) and law enforcement officers, including one individual, a plaintiff in this case, who was arrested on the scene (but not prosecuted) for Assault on a Police Officer.

weapon); 22-404.01 (aggravated assault); 22-3601 (enhanced penalty for crimes against senior citizen victims); 22-3703 (bias-related crime).

In April and May 2020, Messrs. Dereci and Ellialti briefed a motion to quash their bench warrants so that they could return from Canada to the District of Columbia for in-person arraignment and a pretrial detention hearing. On May 29, 2020, then-Chief Judge Robert Morin provisionally denied the motion to quash because he found that Mr. Dereci and Mr. Ellialti had not provided sufficient information about their current location, when they learned of the arrest warrants, and what efforts they have made to surrender themselves. *See United States v. Dereci*, No. 2017 CF3 014903, Order Denying Mot. to Quash (D.C. Super. Ct. May 29, 2020).

On October 1, 2021, Messrs. Dereci and Ellialti renewed their request to quash their arrest warrants, this time including the additional information that Judge Morin had sought. *See id.*, Mot. to Quash the Warrant for Arrest or in the Alternative to Hold the Bond Hearing and Arraignment (D.C. Super. Ct. Oct. 1, 2021). The court, Judge Williams presiding, held a hearing on October 7, 2021, granted the motions, and quashed the bench warrants so that Messrs. Dereci and Ellialti could attempt to travel back to the District of Columbia. Despite the court's efforts, Messrs. Dereci and Ellialti nonetheless were turned away at the border when they attempted to enter the United States. The court held several additional hearings while Messrs. Dereci and Ellialti worked to resolve this issue with the Department of Justice, the Marshals Service, and several other federal agencies responsible for border security. The court held hearings on November 30, 2021; January 25, 2022; February 18, 2022; April 21, 2022; and October 20, 2022. Meanwhile the parties worked to obtain safe passage/parole paperwork from the U.S. Marshals Service and U.S. Customs and Border Protection ("CBP") agency.

Approval from CBP and the Marshals Service is required before Messrs. Dereci and Ellialti can return to the United States and stand trial.

Since October 2022, the United States has dismissed all charges against fifteen members of the Turkish security detail who had been indicted for conduct substantially identical to that of Messrs. Dereci and Ellialti. The case is set for a status conference January 26, 2023, which likely will be held before a new judge, following the Superior Court's annual calendar reassignments. After that hearing, the parties will have a significantly clearer picture of how the criminal proceedings will continue. Messrs. Dereci and Ellialti anticipate being able to make an informed opinion about whether they will have to assert their Fifth Amendment rights or whether they will be able to participate in the civil litigation fully and fairly.

### B. The Parallel Civil Litigation.

In addition to the pending criminal charges, Messrs. Dereci and Ellialti also are named as defendants in this civil litigation, which stems from identical events. The Amended Complaint Plaintiffs seeks damages for (a) assault by Messrs. Dereci and Ellialti against each plaintiff (Count I), *see* Am. Compl. ¶¶ 228-34, ECF No. 63; (b) battery by Mr. Ellialti against Plaintiffs Heewa Arya, Abbas Azizi, Jane Doe II, and Elif Genc, and battery by Mr. Dereci against Plaintiff Murat Yasa (Count II), *see id.* ¶ 239; intentional infliction of emotional distress by Messrs. Dereci and Ellialti against each plaintiff (Count IV), and hate crimes by Messrs. Dereci and Ellialti against each plaintiff (Count V) *see id.* ¶¶ 245-50; hate crimes *see id.* ¶¶ 251-57.

On April 22, 2022, Plaintiffs filed affidavits purporting to show that Messrs. Dereci and Ellialti were served with process on April 18, 2022.[5] *See* ECF Nos. 145-56.

---

[5] Mr. Dereci and Mr. Ellialti do not concede that they were properly served with process, and

5

**LEGAL STANDARD**

"Cases may be stayed for any number of reasons. Parallel criminal prosecutions may be ongoing; [or] dispositive appellate decisions may be pending." *Am. Hosp. Ass'n v. Burwell*, 209 F. Supp. 3d 221, 224 (D.D.C. 2016) (quoting *Liff v. Office of the Inspector General for the U.S. Dep't of Labor*, No. 14-cv-1662, 2016 WL 4506970, at *2 (D.D.C. Aug. 26, 2016)). "To accommodate these ups and downs of litigation, the Court possesses a power to stay proceedings that is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* (cleaned up).

"[T]he factors that are commonly weighed when a party moves to stay civil proceedings in light of parallel criminal proceedings" are "1) the relationship between the civil and criminal actions; 2) the burden on the court; 3) the hardships or inequalities the parties would face if a stay was granted; and 4) the duration of the requested stay." *Doe v. Sipper*, 869 F. Supp. 2d 113, 116 (D.D.C. 2012). "The factors serve only as a 'rough guide' for a court as it exercises its discretion." *Id.* However, "[a] close relationship between the two actions . . . is often viewed as the most significant factor in the balancing test." *Id.*

**ARGUMENT**

The same compelling justification for staying a case identified in *Burwell* and *Sipper* is present here. Parallel criminal prosecutions are being litigated in the D.C. Superior Court. Messrs. Dereci, Ellialti, Yildirim, and Narin thus respectfully request that this case be stayed until at least February 9, 2023, two weeks after the next hearing date in the parallel criminal matters. Messrs. Dereci and Ellialti can file supplemental briefing at that time, if necessary, to

---

they reserve the right to raise all defense permitted by Fed. R. Civ. P. 12(b).

advise the Court of the criminal cases' status. All of the *Sipper* factors discussed below weigh in favor of granting a stay.

### A. The Close Relationship Between The Civil And Criminal Actions Weighs Heavily In Favor Of A Stay.

The D.C. Circuit has recognized that "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where," as here, "a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). "If both cases proceeded at the same time, this could implicate Defendant's Fifth Amendment rights." *Sipper*, 869 F. Supp. 2d at 116 (granting motion to stay). The civil and criminal actions here indisputably stem from identical events. Plaintiffs have sued Mr. Dereci and Mr. Ellialti for their actions in connection with the physical altercation that happened in front of the Turkish Ambassador's Resident on May 16, 2017, and the criminal cases charge them with assault and battery based on the exact same events. If this case is not stayed, Messrs. Dereci and Ellialti "would be forced to choose between waiving [their] Fifth Amendment right to defend [ ] in the civil suit or 'asserting the privilege and probably losing the civil case.'" *Id.* (quoting *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998)). This factor, which is "often viewed as the most significant factor in the balancing test," weighs heavily in favor of a stay. *Sipper*, 869 F. Supp. 2d at 116.

### B. Reducing The Court's Administrative Burden Also Favors A Stay.

Granting a stay likely will limit unnecessary litigation and reduce the overall burden on the Court. As courts in this Circuit have recognized, "litigation in [the] civil case might prove duplicative prior to conclusion of [a] parallel criminal case." *Sipper*, 869 F. Supp. 2d at 117; *see also, e.g.*, *Estate of Gaither ex rel. Gaither v. Dist. of Columbia*, 2005 WL 3272130, at *6

7

(D.D.C. Dec. 2, 2005) (Kollar-Kotelly, J.) (denying motion to lift stay in light of parallel criminal action). In this case, "a stay of discovery in a civil case until the resolution of a criminal case may well later streamline discovery in the civil case, rebounding to a plaintiff's benefit." *Gaither*, 2005 WL 3272130, at *4 (collecting cases). Thus, this factor also weighs strongly in favor of a stay.

### C. The Balancing Of Interests Favors A Stay.

The public has a strong interest in not forcing a defendant to choose between waiving his Fifth Amendment right to defend himself in the civil suit or asserting the privilege and probably losing the civil case. *E.g.*, *Sipper*, 869 F. Supp. 2d at 117 (citing *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088-89 (5th Cir. 1979)) ("not fair to force a party to choose between Fifth Amendment privilege and the civil action"). Courts recognize that this "Fifth Amendment dilemma is significant," *id.*, and denying a stay would exacerbate it. On the other hand, Plaintiffs' desire to advance this civil litigation is no more compelling here "than in many civil cases in which plaintiffs seek closure." *Id.*

### D. The Duration Of The Stay Is Reasonable And Appropriate.

Messrs. Dereci and Ellialti request a stay until February 9, 2023, which is two weeks after the next scheduled hearing in their criminal cases. The proposed stay would likely need to be revisited then to determine if it is still appropriate based on further developments in the criminal cases. This duration of stay (about three months) is both reasonable and appropriate given that both individual defendants are facing multiple felony charges. In *Sipper*, for example, the court granted a three-month stay for civil defendant based on the *potential* that he might be indicted. 869 F. Supp. 2d at 118. Further, a short stay will give the parallel criminal cases time to develop so that the government will articulate how it intends to proceed and assess

whether they will have to assert their Fifth Amendment rights, or whether they will be able to participate in this case fully and fairly. Finally, setting the stay's expiration for two weeks after the next status conference is reasonable and appropriate because Messrs. Dereci and Ellialti will need time before filing their supplemental brief to confer with the government, the plaintiffs, their co-defendants, and likely with multiple federal agencies involved in U.S. border security.

## CONCLUSION

The potential for irreparable harm to Mr. Ellialti, Mr. Dereci and their co-defendants, the minimal potential for any harm to Plaintiffs, and the important public interests at stake all counsel in favor of a stay until at least February 9, 2023, two weeks after the next hearing date in the parallel criminal matters. Messrs. Dereci and Ellialti can file supplemental briefing at that time, if necessary, to advise the Court of the criminal cases' status.

Dated: November 14, 2022

Respectfully submitted,

*/s/ David Benowitz*
David Benowitz
DC Bar # 451557
PRICE BENOWITZ LLP
409 Seventh Street, NW, Suite 200
Washington, DC 20004
Tel: (202) 417-6000
Fax: (202) 664-1331
david@pricebenowitz.com

*Counsel for Mr. Ellialti*

*/s/ Mark E. Schamel*
Mark E. Schamel
Christopher M. Schafbuch
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue NW, Suite 500E
Washington, DC 20037
Tel: (202) 753-3805
Fax: (202) 753-3838
mschamel@lowenstein.com
cschafbuch@lowenstein.com

*Counsel for Mr. Dereci*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2022, I caused a copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Mark E. Schamel*
Mark E. Schamel