**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Kasim Kurd, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 1:18-cv-1117-CKK |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| The Republic of Turkey, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**INDIVIDUAL DEFENDANTS' JOINT MOTION TO**
**DEFER DEFAULT JUDGMENT**

Defendants Ahmet Cengizhan Dereci, Alpkenan Dereci, Mahmut Sami Ellialti, Sinan Narin, and Eyup Yildirim (together, the "Individual Defendants"), by undersigned counsel, hereby move collectively, due to the commonality of their arguments, to ask that this Court defer entry of default judgment as to the Republic of Turkiye's liability until the Individual Defendants' liability is decided on the merits. Point and authorities in support are set forth in the accompanying memorandum.

Dated: Washington, D.C.
      December 1, 2023

**VENABLE LLP**

*/s/ Mark E. Schamel*
Mark E. Schamel
600 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 344-4631
Fax: (202)344-8300
Email: MESchamel@Venable.com

*/s/ Xochitl S. Strohbehn*
Xochitl S. Strohbehn (admitted *pro hac vice*)
Anna G. Dimon (admitted *pro hac*

*vice*)
Email: XSStrohbehn@Venable.com
Email: AGDimon@Venable.com
151 West 42nd Street, 49th Floor
New York, NY 10036
Tel: (212) 307-5500
Fax: (212) 307-5598

*Counsel for Defendants Ahmet Cengizhan Dereci, Alpkenan Dereci, and Eyup Yildirim*

/s/ David Benowitz
David Benowitz
**Price Benowitz LLP**
Email: david@pricebenowitz.com
409 Seventh Street NW, Suite 200
Washington, DC 20004
Tel: (202) 417-6000
Fax: (202) 664-1331

*Counsel for Defendants Mahmut Sami Ellialti and Sinan Narin*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Kasim Kurd, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 1:18-cv-1117-CKK |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| The Republic of Turkey, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INDIVIDUAL**
**DEFENDANTS' JOINT MOTION TO DEFER DEFAULT JUDGMENT**

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 4

A.   Factual Allegations ...................................................................................................... 4

B.   Procedural History ....................................................................................................... 8

LEGAL STANDARD ............................................................................................................ 10

ARGUMENT ...................................................................................................................... 11

A.   A Decision on Plaintiffs' Default Judgment Motion Should Be Deferred Under *Frow* and Rule 54(b). ........................................................................................................................... 11

  1.   The *Frow* Doctrine Applies to Plaintiffs' Allegations of Joint Liability and Weighs in Favor of Deferring Granting Plaintiffs' Default Judgment Motion. ......................................... 11

  2.   There Is Just Reason to Defer Granting Plaintiffs' Default Judgment Motion Under Rule 54(b). ...................................................................................................................................... 13

B.   There Will Be No Prejudice to Plaintiffs if the Default Judgment Is Deferred. ................... 15

C.   The Court Should Not Grant Plaintiffs' Procedurally Defective Request for Leave to Amend Their Already Amended Complaint ............................................................................................ 15

  1.   Plaintiffs' Request for Leave Should Be Denied Because It Is Procedurally Defective ... 17

  2.   Plaintiffs' Procedurally Defective Request for Leave to Amend Also Should Be Denied Because It Does Not Satisfy the Rule 15(a)(2) Standard. ....................................................... 17

CONCLUSION ................................................................................................................... 21

# **Table of Authorities**

## **Cases**

*Carmichael v. Blinken*, No. 19-2316 (RC), 2023 U.S. Dist. LEXIS 46645 (D.D.C. Mar. 20, 2023) ................................................................................................ 16, 17

*Deutsche Bank Nat'l Trust Co. v. Ahluwalia*, No. 3:12-cv-00237-FDW-DCK, 2013 U.S. Dist. LEXIS 26251 (W.D.N.C. Feb. 22, 2013) ...................................... 10

*Frow v. De La Vega,* 82 U.S. 552 (1872) ........................................................... *passim*

*Garnier-Theibaut, Inc. v. Castello 1935 Inc.*, No. 17-cv-03632-PWG, 2019 WL 3767509 (D. Md. Aug. 7, 2019) ........................................................................... 13

*Gva Grp., Inc v. UPS Gen. Servs. Co.*, No. 23-cv-20061-WILLIAMS/REID, 2023 U.S. Dist. LEXIS 76731 (S.D. Fla. Mar. 14, 2023) ................................................ 16

*Hits Before Fame, LLC v. Hernandez*, No. 1:20-cv-01845-RCL, 2023 U.S. Dist. LEXIS 57256 (D.D.C. Jan. 27, 2023) ........................................................ 10, 14, 15

*Hudson v. AFGE*, No. 17-1867 (JEB), 2021 U.S. Dist. LEXIS 191525 (D.D.C. Oct. 5, 2021) ...................................................................................................... 16, 20

*IMAPizza, LLC v. At Pizza, Ltd.*, 965 F.3d 871 (D.C. Cir. 2020) ............................ 17

*Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430 (E.D.Va. 2006) ............................... 13

*Joe Hand Promotions, Inc. v. Sheedy*, No. 4:08-cv-1797-TLW-TER, 2010 U.S. Dist. LEXIS 97285 (D.S.C. May 13, 2010) ...................................................... 14, 15

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37 (D.D.C. 2019) ................................ 9

*Leighton v. Homesite Ins. Co.*, 580 F. Supp. 3d 330 (E.D. Va. 2022) ....................... 14

*Mintz v. F.D.I.C.*, 729 F. Supp. 2d 276, 278 n.2 (D.D.C. 2010) ................................ 5

*Republic of Turkey v. Usoyan*, 143 S. Ct. 395 (2022) ............................................... 9

*Sai v. Transp. Sec. Admin.*, 326 F.R.D. 31 (D.D.C. 2018) .................................. 16, 17

*SEC v. Yin*, No. 17-CV-972 (JPO), 2023 U.S. Dist. LEXIS 57036 (S.D.N.Y. Mar. 31, 2023) ............................................................................................................... 12

*Sherrod v. McHugh*, 249 F. Supp. 3d 85 (D.D.C. 2017) .......................................... 20

*Usoyan v. Republic of Turkey*, 6 F.4th 31 (D.C. Cir. 2021) ...................................... 9

*Vogel v. Boddie-Noell Enters.*, No. WMN-11-515, 2013 U.S. Dist. LEXIS 35548 (D. Md. Mar. 13, 2013) ......................................................................................... 21

*Zapata v. B. Coleman Flooring Installation, LLC*, No. 18-1134 (TJK), 2019 WL 13399854 (D.D.C. Dec. 5, 2019) ................................................................... 10, 13

**<u>Other Authorities</u>**

*Conflict Between Turkey and Armed Kurdish Groups*, COUNCIL ON FOREIGN
    RELATIONS (January 6, 2023) ................................................................ 5

D.C. Code § 12-301(a)(4) ........................................................................ 9

D.C. Code § 12-301(a)(8) ...................................................................... 20

D.C. Code § 22-3704 ............................................................................... 9

Fed. R. Civ. P 54(b) ....................................................................... *passim*

Fed. R. Civ. P. 15(a)(2) ............................................................... 16, 17, 21

LCvR 15(b)(1) ...................................................................................... 17

LCvR 15.1 .............................................................................................. 16

LCvR 7(a) .............................................................................................. 16

LCvR 7(i) ...................................................................................... 16, 17

Defendants Ahmet Cengizhan Dereci, Alpkenan Dereci, Mahmut Sami Ellialti, Sinan Narin, and Eyup Yildirim (together, the "Individual Defendants") submit this motion respectfully asking that this Court defer entry of default judgment as to the Republic of Turkiye's liability[1] (the "Motion") until the Individual Defendants' liability is decided on the merits.

## PRELIMINARY STATEMENT

Plaintiffs have filed a motion (the "Default Judgment Motion") asking this Court to enter a default judgment concluding that Turkiye is liable on all of the claims Plaintiffs asserted against it, a decision which will have significant and improper impact on the defenses of the Individual Defendants. Notwithstanding Plaintiffs' lengthy delay in seeking default against Turkiye, Plaintiffs' Default Judgment Motion is still premature. The Individual Defendants therefore respectfully request that the Court defer ruling on Plaintiffs' Default Judgment Motion until the Individual Defendants' liability has been fully litigated and determined. Handling these claims on the merits first against the Individual Defendants and then separately against Turkiye on the default does not prejudice anyone, whereas reversing the order accomplishes nothing for Plaintiffs while simultaneously prejudicing the Individual Defendants.

Multiple legal bases support granting the Individual Defendants' Motion. ***First***, the long-recognized doctrine articulated by the Supreme Court in the seminal case of *Frow v. De La Vega* favors the Individual Defendants. *See* 82 U.S. 552 (1872). *Frow* instructed courts to defer entry of default judgments in cases involving multiple defendants that are alleged to be jointly liable where there is a risk of inconsistent judgments. That is precisely the situation here.

Indeed, the Amended Complaint is replete with allegations of purported joint conduct by

---

[1] This Motion seeks deferral of default judgment only as to the four claims (Counts I, II, IV, and V) that Plaintiffs have alleged as to Turkiye *and* the Individual Defendants.

Turkish agents and the Individual Defendants and alleged joint liability for purported injuries resulting from that alleged joint conduct. If a default judgment is entered as to Turkiye before the Individual Defendants' liability (or lack thereof) is fully litigated on the merits, there is a risk of potential inconsistent judgments. There is also a risk that, to avoid an absurd outcome, this Court may later have to vacate the default judgment if the Individual Defendants prevail in litigation. This is the very type of result *Frow* warned courts to avoid and that the Individual Defendants respectfully submit should be avoided here.

**Second**, Rule 54(b) of the Federal Rules of Civil Procedure weighs in favor of granting the Motion. Rule 54(b) expressly provides that a judgment should only be entered as to "one or more, but fewer than all, claims or parties'" if there is "no just reason for delay" in entering the judgment. Similar to *Frow*, courts applying Rule 54(b) will find reason for delay where there is a risk of inconsistent judgments—just as there is in this case.

Ultimately, delaying a default judgment here—just until the Individual Defendants' liability is determined to avoid the potential for inconsistent outcomes—will not cause any prejudice to Plaintiffs. It will, however, prevent potential inefficient and absurd outcomes that will cost this Court and the parties needless time and expense.

In addition to asking this Court to enter default judgment as to Turkiye, Plaintiffs request leave to amend their Amended Complaint. They make this request—not in a motion or attaching a copy of the proposed amendment, as required by the local rules—almost six years after filing this case and nearly five years after previously amending their complaint. The reason for Plaintiffs' request is not that new facts have been uncovered, but that Plaintiffs, who have had the same counsel throughout this litigation, simply forgot to include these allegations when they initially filed the case and then again when they amended their complaint.

2

Plaintiffs' request for leave should be denied. Discovery is half over, and depositions are about to begin. Plaintiffs' late request would prejudice the Individual Defendants by requiring them to propound discovery that, had Plaintiffs timely included the allegations, the Individual Defendants would not need to serve. Instead, if Plaintiffs' late request to amend is granted, the Individual Defendants will have to serve additional discovery requests. The Individual Defendants have a relatively limited number of available discovery requests. If the Individual Defendants must serve additional requests, that will further reduce the number of discovery requests available to them and could ultimately prevent them from obtaining discovery on other topics in the future.

Further, allowing Plaintiffs to amend at this late stage and requiring the parties to conduct additional written discovery may delay depositions and could result in the parties needing to request a modification of the current schedule. The Individual Defendants respectfully submit that these prejudicial outcomes outweigh any justification Plaintiffs now offer in support of their request to remedy their "oversight" of omitting the allegations they now wish to add to the Amended Complaint.

Plaintiffs contend that they should be allowed to include these allegations of gender and sex bias because they purportedly do not change Plaintiffs' theory of their case. Not so. The "sexist slurs" and "threatened gender-based violence" that Plaintiffs allege were made were allegedly directed in numerous instances against men or a group of protestors as a whole—or made about non-parties. None of these allegations put the Individual Defendants on notice of a theory that they engaged in gender and sex bias. Further, and just as critically, these allegations—and Plaintiffs' new theory—are time-barred by the applicable statute of limitations. Plaintiffs' request for leave alters their theory of the case (with a highly inflammatory and

prejudicial set of allegations) and seeks to circumvent the now-exhausted statute of limitations, and should be denied.

Plaintiffs also cannot explain why they failed to cure this deficiency in their previous complaints. This is not a case where these allegations were uncovered in discovery. Indeed, as Plaintiffs themselves admit, the allegations they wish to include were excluded because Plaintiffs simply forgot to include them. That is no reason to permit them leave to amend, particularly years and years after they could have addressed their oversight in an amended complaint and where the proposed amendment will be prejudicial.

For the reasons set forth herein, this Court should defer granting Plaintiffs' Default Judgment Motion until the Individual Defendants fully litigate the claims and should deny their procedurally defective request for leave to amend.

## **BACKGROUND**

### A.    **Factual Allegations**[2]

1.    On May 16, 2017, Plaintiffs assembled at Lafayette Square as part of a protest against Turkish President Recep Tayyip Erdogan ("Erdogan") who was in Washington, D.C. for a bilateral meeting with then-President Trump at the White House. Dkt. No. 63 ¶¶ 54-55.[3] Plaintiffs were only permitted to protest outside of the White House. *Id.* ¶ 53.

2.    Thereafter, Plaintiffs walked to the Turkish Ambassador's Residence at Sheridan Circle (the "Residence") "where they believed President Erdogan was going." *Id.* ¶¶ 57-58. Once at the Residence, Plaintiffs (illegally) assembled on Sheridan Circle (in the middle of

---

[2] Solely for purposes of this Motion, Defendants incorporate the allegations as set forth in the Amended Complaint. Defendants dispute each and every one of these allegations and their incorporation of these allegations herein should not be interpreted as an admission or concession that the allegations are accurate or that Defendants agree with them in any respect. Further, for purposes of brevity, Defendants include only those allegations from Plaintiffs' Amended Complaint that are relevant to this Motion.

[3] *See Visits by Foreign Leaders in 2017,* U.S. DEPT. OF STATE, https://history.state.gov/departmenthistory/visits/2017.

Massachusetts Avenue, NW) with other protestors (the "Anti-Turkiye Group") who displayed flags and signs supporting the internationally recognized terrorist group, the Kurdistan Workers' Party ("PKK") and the YPG, the PKK's Syrian arm. *Id.* ¶ 57, 59. PKK, which has been designated by the United States as a Foreign Terrorist Organization, is responsible for the deaths of more than 40,000 people since the 1980s.[4]

3.      The Individual Defendants were also outside the Residence—across the street from Plaintiffs and the Anti-Turkiye Group. *See Id.* ¶¶ 57, 62. Plaintiffs allege that the Individual Defendants were among a group of other "private civilians" and Turkish security officials that Plaintiffs group together as the "Pro-Erdogan Group" (but who were in fact merely individuals originally from Turkey). Dkt. No. 63 ¶ 59.

4.      Plaintiffs allege throughout the Amended Complaint that members of the Pro-Erdogan Group acted jointly. Indeed, Plaintiffs allege that:

> Each Defendant is liable as a joint venturer. Each Defendant aided and performed a wrongful act that caused an injury to at least one of the Plaintiffs. Each Defendant was generally aware of its/his/her role as part of an unlawful and tortious activity (assaulting peaceful protestors) at the time it/he/she provided assistance to the other Defendants. Finally, each Defendant knowingly and substantially assisted in the attacks on the Plaintiffs, whether by directing the attacks, carrying them out, or encouraging other pro-Erdogan supporters to attack the Plaintiffs.
>
> Defendants acted in concert by aiding and abetting each other by encouraging attacks on the Plaintiffs, and substantially assisted one another during the attacks on the Plaintiffs

*See id.* ¶¶ 226, 227, 234, 240.

5.      Plaintiffs further allege that, during an initial altercation, the Pro-Erdogan Group purportedly "pushed past" assembled law enforcement and "repeatedly hit, punched, and kicked protestors." *See id.* ¶¶ 66-69.

6.      Plaintiffs also allege that, purportedly on Erdogan's order, Turkish security officials

---

[4] *Conflict Between Turkey and Armed Kurdish Groups*, COUNCIL ON FOREIGN RELATIONS (January 6, 2023). This Court may take judicial notice of historical or political facts. *See*, *e.g.*, *Mintz v. F.D.I.C.*, 729 F. Supp. 2d 276, 278 n.2 (D.D.C. 2010) (citation omitted).

and unnamed "private civilians" jointly pushed past law enforcement to attack the Anti-Turkiye Group. *Id.* ¶¶ 79-80. Plaintiffs allege that during a second altercation, "attackers" and pro-Erdogan supporters—terms inclusive of the Individual Defendants and others, including the Turkish security officials—jointly attacked them and caused them injury. *Id.* ¶ 81. Plaintiffs contend that in response to Erdogan's purported order, Turkish security officials and unnamed "private civilian[s]" jointly pushed past law enforcement to attack the Anti-Turkiye Group. Dkt. No. 63 ¶ 80.

7.    Each of the Plaintiffs alleges that the defendants acted jointly:

a.    <u>Kasim Kurd</u>: "several pro-Erdogan supporters, including Turkish security officials, chased and attempted to grab Mr. Kurd, but he was able to escape" and "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 95, 96.

b.    <u>Stephen Arthur</u>: "At the start of the second attack, Mr. Arthur saw the pro-Erdogan group, including Turkish security officials, charge at him and his fellow protesters. Mr. Arthur ran from the attackers, but he was chased and then beaten by multiple [unnamed] pro-Erdogan supporters. . . ." He also "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 98, 100.

c.    <u>Heewa Arya</u>: "When Defendants overran the police during the second attack, Mr. Arya was violently attacked by Turkish security officials and pro-Erdogan civilians. At least one Turkish security official hit him in in the face and another Turkish security official kicked him in the chest, knocking him to the ground. After he fell, multiple Turkish security officials and civilians . . . continued to kick and punch Mr. Arya all over." He also "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 106, 111.

d.    <u>Abbas Azizi</u>: "Several Turkish security officials and pro-Erdogan civilians . . .

kicked him all over his body, including his head, neck, and chest. . . . A Turkish security official then jump-kicked him, knocking him to the ground. . . . He also "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 122, 124

e.  Ceren Borazan: She "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." Dkt. No. 63 ¶ 132.

f.  Jane Doe I: She was attacked by "[Unnamed] [p]ro-Erdogan supporters" and "[Unnamed] [p]ro-Erdogan supporters, including Turkish security officials, punched and kicked Jane Doe I in the neck, head, and leg." *Id.* ¶ 136. She "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack her friends and fellow protesters." *Id.* ¶ 139.

g.  Jane Doe II: "Pro-Erdogan supporters physically attacked Jane Doe II." *Id.* ¶ 143. Doe II also "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack her friends and fellow protesters." *Id.* ¶ 148.

h.  Jane Doe III: "Pro-Erdogan supporters, including Turkish security officials, threatened and physically attacked Jane Doe III . . . . [and she] "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." Dkt. No. 63 ¶¶ 153, 155.

i.  Elif Genc: "Defendants' [sic] threatened and physically attacked Ms. Genc . . . . [and she] "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack her friends and fellow protesters." *Id.* ¶¶ 157, 161.

j.  Jalal Kheirabadi: He "was threatened and physically beaten by pro-Erdogan civilians, . . . and Turkish security officials" and "witnessed the pro-Erdogan

supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 166, 170.

k.  <u>Mehmet Ozgen</u>: "Defendants physically assaulted" him and he "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 173, 176.

l.  <u>Mehmet Tankan</u>: He "was threatened and physically attacked by pro-Erdogan supporters . . . ," "pro-Erdogan supporters kicked" him, "[s]everal men [] surrounded [him] and repeatedly kicked and punched him . . . ," and "witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, threaten and violently attack his friends and fellow protesters." *Id.* ¶¶ 177, 178, 179, 183.

m.  <u>Murat Yasa</u>: He was "threatened and violently attacked by pro-Erdogan supporters . . ." and "also witnessed the pro-Erdogan supporters, including Turkish security officials and civilians, attack his friends and fellow protesters." Dkt. No. 63 ¶¶ 186, 193.

8.  The Plaintiffs repeatedly allege that the defendants jointly caused their injuries. *See, e.g.*, *id.* ¶ 97 (alleging that Mr. Kurd's injuries occurred "because of Defendants' conduct"); ¶ 101 ("Because of Defendants' conduct, Mr. Arthur suffered injuries . . . ."); ¶ 113 ("Because of Defendants' conduct, Mr. Arya" was injured); ¶ 124 (alleging Mr. Azizi was injured because he was allegedly attacked by the pro-Erdogan group); ¶ 133 ("Because of Defendants' conduct, Ms. Borazan suffered" injuries); ¶ 140 ("Because of Defendants' conduct," Jane Doe I was injured); ¶ 150 ("Because of Defendants' conduct," Jane Doe II was injured); ¶ 156 (Jane Doe III was injured "because of Defendants' attack"); ¶ 162 ("Because of Defendants' conduct," Ms. Genc was injured); ¶ 172 ("Because of Defendants' conduct," Mr. Kheirabadi was injured); ¶ 185 ("Because of Defendants' conduct," Mr. Tankan was injured); ¶ 194 ("Because of Defendants' conduct," Mr. Yasa was injured).

**B.    <u>Procedural History</u>**

9.  Plaintiffs filed their first complaint (the "Complaint") on May 11, 2018, alleging

seven causes of action against the Republic of Turkiye and five causes of action against the Individual Defendants (and Moe defendants 1-20). Dkt. No. 1. In relevant part, the statute of limitations is 1 year for Plaintiffs' assault and battery claims, D.C. Code § 12-301(a)(4), and 3 years for Plaintiffs' intentional infliction of emotional distress and D.C. Code § 22-3704 claims.

10.    Plaintiffs alleged in the Complaint that "[e]ach Defendant is liable as a joint venturer," *see* Dkt. No. 1 ¶ 226, and that each defendant aided and abetted and conspired with the rest. *See id.* ¶¶ 226, 227, 234, 240.

11.    Certain defendants filed partial motions to dismiss the Complaint on July 16, 2018, Dkt. Nos. 21, 32, which the Court granted in part and denied in part. *See Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 63 (D.D.C. 2019); *see also* Dkt. No. 52. Of most relevance to this Motion, the Court held that, for purposes of the moving defendants' motions to dismiss, Plaintiffs adequately pled that the defendants acted in concert and aided and abetted each other in battering Plaintiffs. *See Kurd*, 374 F. Supp. 3d at 50.

12.    On April 19, 2019, Plaintiffs filed the First Amended Complaint (the "Amended Complaint") in which they assert six causes of action against the Republic of Turkiye and four causes of action against the Individual Defendants (and Moe defendants 1-20). Dkt. No. 63. The relevant statutes of limitations stated above remained the same. *See* ¶ 9 *supra*. On May 10, 2019, those moving defendants (Messrs. Narin, Yildirim, and Alpkenan Dereci) filed answers in which they denied all of Plaintiffs' allegations. Dkt. Nos. 66, 68, 69.

13.    On June 4, 2019, the Republic of Turkiye filed a motion to dismiss on sovereign immunity grounds, Dkt. No. 90, which the Court denied on February 6, 2020, Dkt. No. 115. The Republic of Turkiye appealed and the United States Court of Appeals for the D.C. Circuit affirmed. *Usoyan v. Republic of Turkey*, 6 F.4th 31, 49 (D.C. Cir. 2021). On January 13, 2022, the Republic of Turkiye filed a petition for a writ of certiorari in the United States Supreme Court, *Republic of Turkey v. Usoyan*, No. 21-1013, which was denied. *See Republic of Turkey v. Usoyan*, 143 S. Ct. 395 (2022).

14.    On November 9, 2022, counsel for Plaintiffs requested that the Clerk of the Court

enter default against the Republic of Turkiye. Dkt. No. 170. On November 22, 2022, the Clerk did so. Dkt. No. 173. On April 12, 2023, the Court entered a minute order directing Plaintiffs to file "a dispositive motion, proposed order, and model opinion on Defendant Republic of Turkiye's liability" by September 29, 2023. On September 29, 2023, Plaintiffs filed this Default Judgment Motion, a proposed order, and a model opinion. *See, e.g.*, Dkt. No. 241.

## LEGAL STANDARD

The determination of whether it is appropriate to enter default judgment is generally committed to the discretion of the trial court. *See Zapata v. B. Coleman Flooring Installation, LLC*, No. 18-1134 (TJK), 2019 WL 13399854, at *1 (D.D.C. Dec. 5, 2019) (citation omitted). However, trial courts' discretion is not unlimited.

"'As a general rule [], when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.'" *Hits Before Fame, LLC v. Hernandez*, No. 1:20-cv-01845-RCL, 2023 U.S. Dist. LEXIS 57256, *2 (D.D.C. Jan. 27, 2023) (alteration in original) (citing 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2690 (4th ed. Aug. 2022 update) and *Frow*, 82 U.S. at 554). To that end, "under Federal Rule of Civil Procedure 54(b), 'entry of a final judgment as to one or more, but fewer than all, claims or parties' is appropriate '*only if the court expressly determines that there is no just reason for delay*' in entering that judgment."[5] *Id.* (emphasis added) (finding in part "just reason for delay" and deferring entry of default judgment where the parties were joint and severally liable).

---

[5] While Rule 55 governs entry of default judgments, Rule 54 applies where, as here, plaintiffs seek a default judgment as to less than all of the parties. *See Deutsche Bank Nat'l Trust Co. v. Ahluwalia*, No. 3:12-cv-00237-FDW-DCK, 2013 U.S. Dist. LEXIS 26251, *3 (W.D.N.C. Feb. 22, 2013) (denying entry of default judgment where there was a risk that plaintiffs could obtain a double recovery).

In addition, trial courts' discretion to enter default judgment is limited by *Frow v. De La Vega*, in which the Supreme Court held that trial courts must wait to render a default judgment of liability against one co-defendant until the liability of the other co-defendants is determined where the co-defendants are alleged to be jointly liable and there is the risk of inconsistent judgments. 82 U.S. at 554.

## ARGUMENT

The Individual Defendants respectfully submit that under the *Frow* doctrine and Rule 54(b), there is just reason to defer granting Plaintiffs' motion for default judgment as to Turkiye's liability until the Individual Defendants' liability has been decided on the merits. Plaintiffs' allegations—that defendants allegedly acted as "joint venturers," acted as a group, and are purportedly jointly liable—justify deferral. As set forth below, deferring entry of default judgment on Turkiye's liability will avoid inconsistent judgments as to the defendants' joint liability (if any) while not prejudicing Plaintiffs.

### A. A Decision on Plaintiffs' Default Judgment Motion Should Be Deferred Under *Frow* and Rule 54(b).

1. The *Frow* Doctrine Applies to Plaintiffs' Allegations of Joint Liability and Weighs in Favor of Deferring Granting Plaintiffs' Default Judgment Motion.

The Individual Defendants respectfully submit that, under *Frow*, this Court should defer ruling on the Plaintiffs' Default Judgment Motion. In *Frow*, the Supreme Court reversed the trial court's decision entering default judgment against one defendant while the case was proceeding against the other defendants where all defendants were subject to joint liability. The fundamental principle underlying the Court's decision was the importance of avoiding inconsistent judgments. *See* 82 U.S. at 554.

The principle articulated in *Frow* applies to this case. Plaintiffs have alleged that, as to four

of the six claims they have asserted, all defendants, including the Individual Defendants and Turkiye, are "joint venturers," Dkt. No. 63 ¶¶ 226, 227, 234, 240, who are jointly liable for Plaintiffs' injuries. *See, e.g.*, *SEC v. Yin*, No. 17-CV-972 (JPO), 2023 U.S. Dist. LEXIS 57036, at *23 (S.D.N.Y. Mar. 31, 2023) (recognizing that "[j]oint liability 'arises when a tortious act is committed by several persons acting in concert . . . [and] is entirely responsible for the damage resulting from that concerted conduct'"). *See* Dkt. No. 63 ¶¶ 228-271.

As to these four claims, Plaintiffs rely heavily on group pleading allegations that lump the defendants into a group of "'pro-Erdogan supporters' or 'Erdogan supporters'" that allegedly undertook certain conduct or held certain views. *See id.* ¶¶ 59, 65-67, 72, 81, 98, 100, 103, 117, 136, 139, 154-55, 161, 176. Even where Plaintiffs *do* identify the Individual Defendants separately from Turkish agents, Plaintiffs almost always allege that the defendants acted in tandem and are therefore jointly liable for Plaintiffs' purported injuries. *See, e.g.*, *id.* ¶¶ 80, 83, 86, 89, 97, 99, 101, 113, 124, 133, 140, 150, 156. 162, 172, 177, 178, 179, 183, 185, 194. In other words, in each instance, Plaintiffs allege that the Individual Defendants and Turkish agents acted in an intertwined manner.

Plaintiffs repeat many of these same allegations of joint conduct and liability in the Statement of Material Facts filed in support of their Default Judgment Motion. *See* Dkt. No. 241-2 ¶¶ 17, 18, 21-22, 25, 39, 49, 54, 61, 64-66, 75, 82, 91, 103, 111, 119-120, 128, 135-36, 146, 156-57. As just a few examples, Plaintiffs contend that "*Turkish security officials and civilians* repeatedly hit, punched, and kicked protestors . . . ," *id.* ¶ 39 (emphasis added), [plaintiff] "saw *Turkish agents and pro-Erdogan civilians* punch and kick other protestors during the altercation," *id.* ¶ 61 (emphasis added), that "*several agents and a civilian* continued to kick [plaintiff] . . . ," *id.* ¶ 103 (emphasis added), and that "[plaintiff] was attacked by *a group* of Turkish security agents

and civilians . . . ," *id.* ¶ 157 (emphasis added). There are numerous other examples throughout the Statement of Material Facts.

Plaintiffs' allegations that Turkiye and the Individual Defendants are jointly liable for Plaintiffs' purported damages raises the risk of inconsistent judgments. If Turkiye is now deemed liable and the Individual Defendants later establish that they are not liable for some or all of Plaintiffs' purported injuries, the judgments as to identical (or, at least, closely similar) allegations will be inconsistent. Such an inconsistent outcome could result in the Court having to vacate the default judgment entered as to Turkiye to avoid the "absurd" outcome of two diametrically opposed outcomes on the same allegations. This is precisely the result that the Supreme Court sought to prevent in *Frow* and that the Individual Defendants respectfully submit should be prevented here. *See Zapata*, 2019 WL 13399854, at *1-2 (staying entry of a motion for default judgment where entering a default judgment had the potential to impact the liability of the co-defendants who were "actively contesting liability"); *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 436 (E.D.Va. 2006) (deferring default judgment where the defendants were jointly and/or severally liable and had closely interrelated defenses); *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 163 (N.D.N.Y. 2020) (deferring entry of default judgment where the parties were jointly liable and deferral would prevent the "'unseemly and absurd'" outcome that *Frow* "warned against"); *Garnier-Theibaut, Inc. v. Castello 1935 Inc.*, No. 17-cv-03632-PWG, 2019 WL 3767509, at *1 (D. Md. Aug. 7, 2019) (denying plaintiff's motion for default judgment against a defaulting co-defendant "because Plaintiff retains the prospect of holding the defendants jointly and severally liable on the [] claim").

2.    <u>There Is Just Reason to Defer Granting Plaintiffs' Default Judgment Motion Under Rule 54(b).</u>

The Individual Defendants respectfully submit that Plaintiffs' Default Judgment Motion

should also be deferred under Rule 54(b). Rule 54(b) provides that

> When an action presents more than one claim for relief— whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, *the court may direct entry of a final judgment* as to one or more, but fewer than all, claims or parties *only if the court expressly determines that there is no just reason for delay*. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphases added).

Courts routinely conclude that there is "just reason" to delay entry and defer entry of a default judgment where, as here, there is a risk of inconsistent judgments. *Hits Before Fame*, 2023 U.S. Dist. LEXIS 57256, *2; *see also Joe Hand Promotions, Inc. v. Sheedy*, No. 4:08-cv-1797-TLW-TER, 2010 U.S. Dist. LEXIS 97285, at *3-7 (D.S.C. May 13, 2010) (finding there was just reason to delay entry of default judgment under *Frow* and Rule 54(b) where the plaintiff did not distinguish between the defaulting and non-defaulting defendants "with regards to liability as to any of the cause of action"); *Leighton v. Homesite Ins. Co.*, 580 F. Supp. 3d 330, 333 (E.D. Va. 2022) (finding just reason to delay entering default judgment where there was a risk of logically inconsistent judgments as to the party proceeding to judgment on the merits and as to the defaulting party).

The Individual Defendants respectfully submit that there is just reason to delay in granting Plaintiffs' Default Judgment Motion. As explained above, Plaintiffs have repeatedly alleged that the Individual Defendants and Turkiye acted jointly and are jointly liable. *See* Section A.1 *supra*. The intertwined nature of Plaintiffs' allegations raises the risk of inconsistent judgments as to Turkiye's and the Individual Defendants' respective liability. Under Rule 54(b), avoiding this risk justifies deferring entry of judgment until trial on the Individual Defendants' liability is completed.

*See, e.g.*, *Hits Before Fame*, 2023 U.S. Dist. LEXIS 57256, *2; *see also Joe Hand*, 2010 U.S. Dist. LEXIS 97285, at *3-7.

**B.    There Will Be No Prejudice to Plaintiffs if the Default Judgment Is Deferred.**

Deferring decision on the Default Judgment Motion will limit the risk of inconsistent judgments and will not prejudice the Plaintiffs. As the Supreme Court observed in *Frow*, when a court defers entry of default judgment, the practical effects are minimal. 82 U.S. at 554. That is just the case here.

First, deferring entry of default judgment as to Turkiye's liability will only be for the limited period of time until the Individual Defendants can fully litigate their liability. Based on the parties' current schedule, Dkt. No. 190, and their respective activities, it is reasonable to believe that the delay between today and the end of any trial-related process will be relatively short. Given Plaintiffs' own delay in bringing the Default Judgment Motion, they can hardly claim prejudice from a relatively brief period of further delay. Second, deferring judgment now does not prevent Plaintiffs from obtaining a judgment later on. Indeed, Plaintiffs can still obtain a default judgment—assuming the Court deems it appropriate—once the Individual Defendants' liability has been fully litigated.

Next, deferring on Plaintiffs' Default Judgment Motion will affect neither case scheduling nor discovery. There will be no impact on the schedule or case management procedures the Court has established. There will also be no effect on the appearing parties' ability to expeditiously litigate this case to a conclusion.

**C.    The Court Should Not Grant Plaintiffs' Procedurally Defective Request for Leave to Amend Their Already Amended Complaint.**

Within a subsection of their Default Judgment Motion, Plaintiffs also ask this Court for leave to amend their Amended Complaint. Plaintiffs seek to amend the Amended Complaint so that, almost six years after filing this litigation, Plaintiffs can add "sex- and gender-based bias"

allegations that are time-barred under the statute of limitations. Plaintiffs do not seek leave to add these allegations because they just learned of them, changed counsel, or suffer from infirmities that prevented them pleading these allegations before. The entire basis for Plaintiffs' request is that they forgot to include these allegations in their initial and amended complaints. *See* Dkt. No. 241-1 at 37-40. Plaintiffs' request should be denied.

Local Rule 7(i) requires plaintiffs to file a motion to seek leave to amend their complaint while Local Rule 15.1 requires movants seeking leave to amend their complaint to attach a copy of their proposed amendment. LCvR 7(a), (i); LCvR 15.1.

In addition, Rule 15(a)(2) of the Federal Rules of Civil Procedure requires Plaintiffs to seek leave from the court or consent from the defendants to file an amended complaint. Fed. R. Civ. P. 15(a)(2). "In deciding whether to grant leave to file an amended complaint, the court may consider 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Hudson v. AFGE*, No. 17-1867 (JEB), 2021 U.S. Dist. LEXIS 191525, at *3 (D.D.C. Oct. 5, 2021) (denying plaintiff's motion for leave to amend its complaint because, among other things, plaintiff's motion for leave to amend was filed about three and a half years after the plaintiff filed his amended complaint); *Carmichael v. Blinken*, No. 19-2316 (RC), 2023 U.S. Dist. LEXIS 46645, at *10 n.2 (D.D.C. Mar. 20, 2023) (denying motion to amend where, among other things, the "would-be third amended complaint" was to be filed four years into the litigation); *Sai v. Transp. Sec. Admin.*, 326 F.R.D. 31, 34 (D.D.C. 2018) (denying oral leave to amend or, in the alternative, clarify claims where plaintiff waited more than four years to make his request). These standards do not change where plaintiffs seek to amend by interlineation. *See, e.g.*, *Sai*, 326 F.R.D. at 34; *Gva Grp., Inc v. UPS Gen. Servs. Co*., No. 23-cv-20061-WILLIAMS/REID, 2023 U.S. Dist. LEXIS 76731, at *2-3 (S.D. Fla. Mar. 14, 2023) (denying motion for leave to amend by interlineation where plaintiff did not comply with local procedural rules and where amendment would be futile). Plaintiffs have satisfied neither standard.

1.    <u>Plaintiffs' Request for Leave Should Be Denied Because It Is Procedurally Defective.</u>

Plaintiffs have indisputably not complied with the applicable rules. Not only did they fail to file a motion for leave to amend as Local Rule 7(i) requires, but they also did not attach a copy of their proposed amended complaint to their Default Judgment Motion as required by Local Rule 15.1. *See generally* Dkt. Nos. 241, 241-1. These rules apply whether Plaintiffs seek to "interlineate," "clarify," or make more wholesale changes. *See Sai*, 326 F.R.D. at 33, 34. Plaintiffs' request for leave to amend should, accordingly, be denied on this basis alone. *See, e.g.*, *Blinken*, 2023 U.S. Dist. LEXIS 46645 at *10 n.2 (denying motion for leave to amend on separate grounds that plaintiff failed to comply with Local Rule 15.1); *IMAPizza, LLC v. At Pizza, Ltd.*, 965 F.3d 871, 875 (D.C. Cir. 2020) (affirming trial court's denial of motion for leave to amend on grounds that plaintiff failed to comply with Local Rules 7 and 15.1); *see also Sai*, 326 F.R.D. at 33 (recognizing that plaintiff cannot seek to amend or clarify his claims through an opposition brief).

In a seeming effort to explain why they flouted the Local Rules, Plaintiffs contend that they are seeking to amend in a manner analogous to that allowed under Rule 15(b)(1), "which allows parties to amend during trial if 'doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.'" Dkt. No. 241-1 at 38-39. There are two chief flaws with this argument. For one, there is no ongoing trial. Most critically, though, the Individual Defendants *will* be prejudiced by Plaintiffs' late effort to remedy their admitted "oversight." *Id.* at 38. Plaintiffs argue that their procedurally improper amendment should be permitted because "there is no undue prejudice to [Turkiye]." *Id.* But Turkiye is not the only defendant affected by the allegations that Plaintiffs wish to add. As explained below, Defendants *are* prejudiced by Plaintiffs unduly delayed request to add allegations they simply forgot to include in any of the complaints they filed years ago.

2.    <u>Plaintiffs' Procedurally Defective Request for Leave to Amend Also Should Be Denied Because It Does Not Satisfy the Rule 15(a)(2) Standard.</u>

Plaintiffs' request for leave does not satisfy Rule 15(a)(2) for two overarching reasons.

*First*, Plaintiffs concede in their Default Judgment Motion that courts "deny Rule 15 motions on the basis of undue delay when the plaintiffs waited *many* years before seeking amendments . . . ," Dkt. No. 241-1 at 38 (emphasis in original), which is just what Plaintiffs have done here. This litigation, which arose out of events that occurred almost *seven years ago*, has been pending for almost *six* years. Plaintiff filed their amended complaint on April 19, 2019—almost *five* years ago. After waiting almost six years, Plaintiffs' request to amend is unduly delayed and should be denied.

Plaintiffs argue that this lengthy delay does not prejudice Turkiye because it is not defending this litigation. *See id.* They also contend that there is no prejudice to Turkiye because they have not substantially changed the theory of their case. *See id.* Plaintiffs' arguments miss the mark.

As an initial matter, while there may be no prejudice to *Turkiye*, Turkiye is not the only defendant affected by Plaintiffs' long-delayed request to amend their complaint. Indeed, Plaintiffs have also asserted Count V and the related bias allegations against the Individual Defendants who *would be* prejudiced if this late-stage and long-delayed amendment is permitted. *See* Dkt. No. 63 ¶¶ 251-257.

The parties are more than halfway through discovery, which closes on May 31, 2024, and third-party depositions are expected to begin soon, with party depositions to follow soon thereafter. The Individual Defendants have already propounded numerous discovery requests. To the extent Plaintiffs are permitted to amend and the Individual Defendants must seek discovery as to these allegations, the Individual Defendants will have to propound additional discovery requests, and wait to receive responsive information and documents that they would have by now if the proposed allegations been incorporated years ago.

The delays caused by having to seek new discovery may, and almost certainly will, affect other areas of discovery. If not for a sudden scheduling-related issue, third-party depositions would have already begun, and they are expected to begin relatively soon. In addition, the Individual Defendants expect to notice some or all of Plaintiffs for depositions soon. Allowing Plaintiffs to

18

amend their already-Amended Complaint may delay the parties' ability to begin depositions in a timely manner so that the Individual Defendants can obtain complete written discovery on these "clarified" allegations.[6] If depositions are delayed, the parties may not be able to proceed on the schedule as now set. Plaintiffs' delay therefore raises the risk that the parties may need to ask the Court to modify the current schedule. The Individual Defendants, who have every desire to clear their names, should not be prejudiced because of Plaintiffs' years-long delay in requesting leave to amend their "oversight" in clarifying these allegations. *Id.* at 38.

Plaintiffs allege that there is no prejudice because they have already alleged that Turkish agents engaged in gender and sex biased conduct and therefore, Plaintiffs' proposed amendments do not change the theory of their case. *See id.* at 37-38. Not so. Plaintiffs contend that they had already alleged that Turkish agents or other defendants "shouted sexist slurs and threatened gender-based violence." *Id.* at 37 (citing Dkt. No. 63 ¶¶ 65, 76, 92, 127, 129-30, 135, 142, 154, 160, 163, 168, 181). It may be true that Plaintiffs alleged that some defendants "shouted sexist slurs and threatened gender-based violence" in the midst of the fracas, *id.* but these allegations do not plead a theory of "gender and sex-based" bias. Indeed, in almost half of the paragraphs Plaintiffs cite, the alleged "sexist slurs" and threats of "gender-based violence" were not directed to a protected class or even to individual Plaintiffs at all. They were instead allegedly directed to the protestors as a whole or were made to a man, or they were statements allegedly made about non-parties to this action. *See* Dkt. No. 63 ¶ 65 (alleging that defendants yelled things like "Fuck you, Kurds," "Kurdish bitches," and "traitors"); ¶ 76 (alleging that a defendant yelling "bitch" at a protestor of unidentified gender); ¶ 92 (alleging that certain defendants stated they were "already fucking" Mr. Kurd's mother); ¶ 154 (alleging the "pro-Erdogan supporters yell[ed] curses at the protesters, including Armenian bitch"); ¶ 168 (alleging that certain Turkish agents told Mr.

---

[6] Alternatively, to the extent the Court is inclined to grant Plaintiffs' request to amend, the Individual Defendants respectfully request that to avoid any delays the Court order Plaintiffs to produce, within 30 days of the entry of the Court's order, the non-privileged documents and communications that demonstrate the basis for their allegations that the Individual Defendants engaged in conduct motivated by gender or sex bias.

Kheirabadi "Motherfucker, we did your mom and sister in Turk[iye]"); ¶ 181 (alleging that a defendant called Mr. Tankam a "son of a bitch" and referring to his mother as a bitch).

Plaintiffs cannot credibly argue that the Individual Defendants are not prejudiced if they are permitted to add these new allegations almost six years into this litigation. Plaintiffs also cannot credibly argue that these new allegations are timely—after all, the applicable statute of limitations makes clear that Plaintiffs had to plead this theory within 3 years of the cause accruing. *See* D.C. Code § 12-301(a)(8). That time has come and gone. Given the generalized nature of the allegations, the Individual Defendants were not on notice that Plaintiffs were alleging gender and sex-based bias. In other words, Plaintiffs *are* seeking to alter their theory of their case and circumvent the statute of limitations through their requested amendment. This late and prejudicial request should be denied.

**Second**, it is well-recognized that repeated failure to cure deficiencies—as here—is a basis to deny a motion for leave to amend. *See, e.g.*, *Hudson*, 2021 U.S. Dist. LEXIS 191525, at *3. Plaintiffs have repeatedly failed to cure their failure to allege that defendants acted because of purported "gender, sex" bias in either their original complaint or their Amended Complaint although they had every opportunity to do so.

Plaintiffs have had the same counsel since the case was filed. Plaintiffs do not allege they suffer from infirmities that prevented them from ensuring that their pleadings were complete. It is thus not surprising that Plaintiffs' only explanation for their failure to add the omitted allegations years ago is that it was an "oversight." *See generally* Dkt. No. 241-1 at 38. Plaintiffs assert that they are entitled to amend to clarify the allegations in their Amended Complaint because their request to amend is nothing more than a "technical change to fix an oversight" that is not brought in bad faith. *Id*. But that does not pass muster even under the case law Plaintiffs cite, which makes clear that "parties *may* move to amend to 'clarify and amplify' the allegations in their complaint in light of facts *learned in discovery and arguments made by the opposition*." *Sherrod v. McHugh*, 249 F. Supp. 3d 85, 87 (D.D.C. 2017) (emphases added). Plaintiffs do not contend that they seek to "clarify" facts that they learned during discovery or through arguments any defendant has made.

Instead, Plaintiffs admit that they seek to amend so that they can add facts that they forgot to add in the first or second instance. This alone is a basis to deny their request. *See, e.g.*, *Vogel v. Boddie-Noell Enters.*, No. WMN-11-515, 2013 U.S. Dist. LEXIS 35548, at *13-14 (D. Md. Mar. 13, 2013) (denying motion for leave to amend partly because plaintiffs' need to amend by interlineation was "the result of their own inexcusable neglect").

For the foregoing reasons, this Court should deny Plaintiffs' request to amend their Amended Complaint.

## <u>CONCLUSION</u>

WHEREFORE, the Individual Defendants respectfully request that (1) pursuant to the *Frow* doctrine and Rule 54(b), the Court defer entry of default judgment against Turkiye until the Individual Defendants' liability has been fully litigated on the merits, and (2) deny Plaintiffs' improper request to amend the Amended Complaint because Plaintiffs failed to comply with Local Rules 7.1(a), (i) and 15.1 and otherwise failed to satisfy the standard under Rule 15(a)(2).

Dated: Washington, D.C.
       December 1, 2023

**VENABLE LLP**

*/s/ Mark E. Schamel*_____
Mark E. Schamel
600 Massachusetts Ave, NW
Washington, DC 20001
Tel: (202) 344-4631
Fax: (202)344-8300
Email: MESchamel@Venable.com

*/s/ Xochitl S. Strohbehn*_____
Xochitl S. Strohbehn (admitted *pro hac vice*)
Anna G. Dimon (admitted *pro hac vice*)
Email: XSStrohbehn@Venable.com
Email: AGDimon@Venable.com
151 West 42nd Street, 49th Floor
New York, NY 10036
Tel: (212) 307-5500

Fax: (212) 307-5598

*Counsel for Defendants Ahmet Cengizhan Dereci, Alpkenan Dereci, and Eyup Yildirim*

/s/ David Benowitz
David Benowitz
**Price Benowitz LLP**
Email: david@pricebenowitz.com
409 Seventh Street NW, Suite 200
Washington, DC 20004
Tel: (202) 417-6000
Fax: (202) 664-1331

*Counsel for Defendants Mahmut Sami Ellialti and Sinan Narin*

22

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2023, I caused a copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Xochitl S. Strohbehn*
Xochitl S. Strohbehn