# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KURD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-01117-CKK |
| | ) | |
| THE REPUBLIC OF TURKEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS' JOINT MOTION TO DEFER DEFAULT JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND .................................................................................................. 2

II.   STANDARD OF LAW ....................................................................................... 4

III.  ARGUMENT ..................................................................................................... 6

    A. The Individual Defendants' "Motion" Violates the Local Rules ..................................... 7

        1.   The Individual Defendants have conceded the issues raised in Plaintiffs' motion for default judgment by failing to timely oppose it. ........................................................................... 7

            a.   The Individual Defendants' "motion" is an untimely memorandum in opposition. ........................................... 7

            b.   The Court should consider the Individual Defendants' failure to oppose Plaintiffs' motion for default judgment as a concession of the arguments raised therein.................................. 8

        2.   If Defendants' "motion" is really a "motion," then the Individual Defendants violated Rule 7(m). ................................................................. 11

    B. The Individual Defendants' "Motion" is Wrong on the Merits ................................... 12

        1.   Plaintiffs' motion for default judgment against Turkey is ripe for the Court's determination. ......................................................... 12

            a.   Under binding authority, the Court may grant default judgment at any time because there is no risk of a logically inconsistent verdict. ........................................................ 12

            b.   Plaintiffs need not satisfy Rule 54(b), but they do regardless. ....................................................... 18

        2.   Plaintiffs' alternative request for a technical amendment to their claims against Turkey is appropriate .......................................... 21

            a.   Plaintiffs do not seek to amend their claims against the Individual Defendants. ................................................ 21

            b.   Amendment against Turkey, if necessary, is appropriate .............. 22

IV.   CONCLUSION.................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Forest Res. Council v. Ashe*,
    301 F.R.D. 14 (D.D.C. 2014) ................................................................................5

*Carmichael v. Blinken*,
    2023 WL 2571721 (D.D.C. 2023) .......................................................................24

*\*Carter v. District of Columbia*,
    795 F.2d 116 (D.C. Cir. 1986) ..............................................................5, 13, 14, 15

*Cohen v. Bd. of Trustees of the Univ. of the D.C.*,
    819 F.3d 476 (D.C. Cir. 2016) ...........................................................................10

*Congressional Hunger Center v. Gurey*,
    308 F. Supp. 223 (D.D.C. 2018) ..........................................................................5

*Desertrain v. City of Los Angeles*,
    754 F.3d 1147 (9th Cir. 2014) .............................................................................23

*Deutsche Bank Nat'l Tr. Co. v. Ahluwalia*,
    2013 U.S. Dist. LEXIS 26251 (W.D.N.C. 2013) ...................................................7

*Dixon v. County of Alameda*,
    1997 WL 220311 (N.D. Cal. 1997) .....................................................................22

*Djourabchi v. Self*,
    240 F.R.D. 5 (D.D.C. 2006) ................................................................................22

*Fox v. Am. Airlines, Inc.*,
    389 F.3d 1291 (D.D.C. 2004) ............................................................................4, 8

*Frow v. De La Vega*,
    82 U.S. 552 (1872) .................................................................................. *passim*

*Garnier-Theibaut, Inc. v. Castello 1935 Inc.*,
    2019 WL 3767509 (D. Md. 2019) .......................................................................17

*Ghawanmeh v. Islamic Saudi Acad.*,
    268 F.R.D. 108 (D.D.C. 2010) ...........................................................................23

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ........................................................................22

*GVA Grp., Inc. v. United Parcel Serv. Gen. Servs. Co.*,
2023 WL 3172007 (S.D. Fla. 2023) .................................................24

*Haynes v. Navy Fed. Credit Union*,
282 F.R.D. 17 (D.D.C. 2012).........................................................11

*Hits Before Fame, LLC v. Hernandez*,
2023 WL 2681765 (D.D.C. 2023) ..................................................16

*Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*,
505 F. Supp. 3d 137 (N.D.N.Y. 2020)...........................................17

*IMAPizza, LLC v. At Pizza Ltd.*,
965 F.3d 871 (D.C. Cir. 2020).......................................................24

*Jefferson v. Briner, Inc.*,
461 F. Supp. 2d 430 (E.D. Va. 2006) .......................................17, 18

*Jiggetts v. Cipullo*,
285 F. Supp. 3d 156 (D.D.C. 2018).................................................22

*Joe Hand Promotions, Inc. v. Sheedy*,
2010 WL 3724754 (D.S.C. 2010) ...................................................18

*Makell v. FedChoice Fed. Credit Union*,
2019 WL 13255496 (D.D.C. 2019) ...................................................8

*NAACP Legal Def. & Educ. Fund, Inc. v. Wilkinson*,
2021 WL 723993 (D.D.C. 2021) ................................................5, 23

*Richardson v. United States*,
193 F.3d 545 (D.C. Cir. 1999)..........................................................5

*Sai v. TSA*,
236 F.R.D. 31 (D.D.C. 2018)..........................................................24

*SEC v. Yin*,
2023 WL 2753094 (S.D.N.Y. Sept. 15, 2022)..........................7, 16, 17

*Sherrod v. McHugh*,
249 F. Supp. 3d 85 (D.D.C. 2017)...................................................22

*Steele v. United States*,
2023 WL 6215790 (D.D.C 2023) ...............................................4, 11

*Texas v. United States*,
798 F.3d 1108 (D.C. Cir. 2015).........................................................8

*Top Sure Invs., Inc. v. Clearview Settlement Sols., LLC*,
   2015 WL 4396786 (D.D.C. 2015) ..................................................................13, 17

*United States. v. All Assets Held in Acct. No. XXXXXXXX, in Name of Doraville*
   *Props. Corp., at Deutsche Bank Int'l in Jersey, Channel Islands*,
   330 F. Supp. 3d 150 (D.D.C. 2018) ....................................................13, 14, 18, 19

*In re Uranium Antitrust Litigation*,
   617 F.2d 1248 (7th Cir. 1980) .......................................................................14, 16

*Usoyan v. Republic of Turkey*,
   143 S. Ct. 395 (2022) .............................................................................................2

*Voacolo v. Fed. Nat'l Mortg. Ass'n*,
   224 F. Supp. 3d 39 (D.D.C. 2016) ........................................................................8

*\*Whelan v. Abell*,
   953 F.2d 663 (D.C. Cir. 1992) ........................................................5, 12, 13, 14

*Wilson v. San Diego Cnty. Sheriff's Dep't.*,
   2017 WL 3953151 (S.D. Cal. 2017) ......................................................................8

*Zapata v. B. Coleman Flooring Installation, LLC*,
   2019 WL 13399854 (D.D.C. 2019) .............................................................7, 15, 16

**Statutes**

28 U.S.C. § 1608 ......................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 1 .........................................................................................................1

Fed. R. Civ. P. 6 .......................................................................................................10

Fed. R. Civ. P. 15 .......................................................................................5, 8, 22, 23

Fed. R. Civ. P. 54 ...............................................................................................5, 18

Fed. R. Civ. P. 55 .....................................................................................................18

LCvR 7.............................................................................................................. *passim*

Restatement (Third) of Torts: Apportionment of Liability § 12 (Am. L. Inst. 2000)....................14

Since 2017, Plaintiffs' counsel have expended hundreds of hours of lawyer effort. This Court, the court of appeals, and the Supreme Court have expended substantial judicial resources. The goal of these efforts has been and remains a judgment that will allow Plaintiffs to seek the remedy to which the law entitles them. Meanwhile, the Individual Defendants have used a congeries of procedural devices that have avoided confronting the well-pleaded allegations and substantial evidence against them. Their "motion" has no merit, and serves no purpose other than delaying the Republic of Turkey's day of reckoning, in a just manner that is as "speedy" and "inexpensive" as is reasonably possible. *See* Fed. R. Civ. P. 1.

The Individual Defendants' "Motion to Defer Default Judgment" is in effect an out-of-time opposition to Plaintiffs' motion for default judgment. The Court should deny it for this reason alone. Even if it were construed as a motion, the Court should deny it because the Individual Defendants failed to meet and confer with Plaintiffs about their requested relief, in violation of Local Rule 7(m).

Regardless of the "motion's" procedural defects, it is wrong on the merits. It is settled in the D.C. Circuit that a default judgment need only be deferred if trial against the non-defaulting defendants could result in an "irreconcilable conflict" between judgments. That is not the case here. Nor can the Individual Defendants point to any prejudice they would suffer if the Court grants default judgment against Turkey prior to determining the Individual Defendants' liability. To the contrary, the Court has previously recognized the prejudice Plaintiffs and the public at large would suffer from further delay in this case. Accordingly, the Court should deny the Individual Defendants' "motion" and rule in due course on Plaintiffs' motion for entry of default judgment against Turkey.

In what is even more plainly an out-of-time opposition, the Individual Defendants also challenge Plaintiffs' request to make a minor, technical amendment as to their hate-crime claims against Turkey. Amendment is appropriate for the reasons stated in Plaintiffs' motion for default judgment, but, in any event, Plaintiffs did not seek to amend their claims against the Individual Defendants. To the extent this is not clear from Plaintiffs' motion, the Individual Defendants would have learned this if they had attempted to meet and confer with Plaintiffs regarding their present motion.

## I.     BACKGROUND

Plaintiffs filed this case on May 11, 2018, asserting claims against the Republic of Turkey and five civilians ("the Individual Defendants") for brutally attacking Plaintiffs outside of the Turkish Chief of Mission Residence while Plaintiffs were peacefully protesting policies towards Turkey's Kurdish minority. Dkt. 1. On June 4, 2019, Turkey moved to dismiss on sovereign immunity grounds. Dkt. 90. The Court denied Turkey's motion on February 6, 2020. Dkt. 115. Turkey filed an interlocutory appeal, and the D.C. Circuit affirmed this Court on July 27, 2021. Dkt. 138. After Turkey unsuccessfully petitioned for rehearing, the D.C. Circuit issued its mandate on October 25, 2021. *Id.* Turkey then petitioned for a writ of certiorari, and litigation over Turkey's immunity finally came to a conclusion on October 31, 2022, when the Supreme Court denied Turkey's petition for certiorari. *See Usoyan v. Republic of Turkey*, 143 S. Ct. 395 (2022). Meanwhile, the Court effectively stayed proceedings against the Individual Defendants while the parties litigated Turkey's immunity. *See* Dkt. 98, Order at 2 ("[T]he Court does not intend to treat Plaintiffs' case in a piecemeal fashion. As such, in order for this case to proceed to discovery, the Court must first resolve Defendant Turkey's Motion to Dismiss."); Minute Order

2

of Mar. 1, 2021 ("As the Court noted in its 98 Order, 'this case cannot proceed further' until

Turkeys Motion to Dismiss has been resolved").

Turkey thereafter failed to file an answer and informed the Court that it would not

participate in discovery, Dkt. 165, so Plaintiffs filed an affidavit of default, Dkt. 170, and the

clerk entered a default against Turkey on November 22, 2022, Dkt. 173. The Court held a status

conference on February 17, 2023, to discuss scheduling matters. Counsel for each of the

Individual Defendants appeared at and participated in the status conference. Counsel for

Plaintiffs discussed with the Court procedures for pursuing a default against Turkey and setting a

schedule for such proceedings. At the conference, Counsel for the Individual Defendants did not

voice any concern with Plaintiffs pursuing a default judgment against Turkey before the

Individual Defendants' liability was determined. The Court ordered Plaintiffs to file a status

report suggesting a deadline for their motion for default judgment. Counsel for the Individual

Defendants again provided no input on the schedule for default proceedings despite multiple

opportunities to do so, including at the conference, during subsequent the subsequent meet-and-

confer process with the Plaintiffs over the parties' subsequent Local Rule 16.3 Statement (Dkt.

181) and Joint Discovery Plan (Dkt. 184), or in response to Plaintiffs' proposed schedule (Dkt.

183) or the Court's order setting the schedule for Plaintiffs to file their motion for default

judgment, (Minute Order of Apr. 12, 2023).

On April 12, 2023, the Court ordered the Plaintiffs to submit their motion for default

judgment by September 29, 2023 – approximately eight months prior to the close of fact

discovery on Plaintiffs' claims against the Individual Defendants. Plaintiffs filed their motion for

default judgment on September 29, 2023, making any opposition due on or before October 13,

2023. *See* LCvR 7(b). The Individual Defendants neither filed an opposition nor moved for an

extension of time to file an opposition within the deadline to do so, nor did they inform Plaintiffs that they intended to do so. The Individual Defendants then filed the present motion on December 1, 2023, seven weeks after the deadline to file an opposition to Plaintiffs' motion for default judgment. The Individual Defendants did not once attempt to meet and confer with Plaintiffs before filing the present motion, as required by Local Rule 7(m), even though counsel have been in frequent contact over the last several months on discovery matters. The Individual Defendants' motion was the first time Plaintiffs learned that the Individual Defendants considered themselves prejudiced by any part of Plaintiffs' motion for default judgment or took any issue with the schedule the Court set for the default proceedings.

## II.    STANDARD OF LAW

Local Rule 7 governs the filing of motions and oppositions thereto. Under Rule 7(b), an opposition to a motion must be filed within 14 days of the date on which the motion is served, unless the Court orders otherwise. If a party does not oppose the motion within the prescribed time, "the Court may treat the motion as conceded." LCvR 7(b); *see also, e.g.*, *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.D.C. 2004) (confirming district court's discretion to treat motion as conceded under Local Rule 7(b)).

Under Local Rule 7(m), before filing "any nondispositive motion in a civil action," counsel must meet and confer with opposing counsel regarding the relief sought in the anticipated motion and "shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." When a party fails to comply with Rule 7(m) before filing a motion, the Court has discretion to deny the motion. *See, e.g.*, *Steele v. United States*, 2023 WL 6215790, at *3 (D.D.C 2023).

Whether to grant default judgment is a matter of the district court's discretion. *See, e.g.*, *Congressional Hunger Center v. Gurey*, 308 F. Supp. 223, 227 (D.D.C. 2018). In the D.C. Circuit, the district court's discretion to grant default judgment includes discretion to grant default judgment while claims remain pending against non-defaulting defendants. *See Whelan v. Abell*, 953 F.2d 663, 674-75 (D.C. Cir. 1992); *Carter v. District of Columbia*, 795 F.2d 116, 137-38 (D.C. Cir. 1986). A district court abuses its discretion by granting default judgment prior to resolving non-defaulting defendants' liability ***only*** "(1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant." *Carter*, 795 F.2d at 137 (quoting 6 J. Moore, *Moore's Federal Practice* ¶ 55.06, at 55–38 to 55–39 (2d ed. 1985)).

Under Federal Rule of Civil Procedure 54(b), the district court may direct entry of a final judgment as one party while claims remain pending against another party or parties "if the court expressly determines that there is no just reason for delay." Whether to grant a partial final judgment under Rule 54(b) is a matter of discretion for the district court. *See Am. Forest Res. Council v. Ashe*, 301 F.R.D. 14, 17 (D.D.C. 2014).

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend "should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Under Rule 15(b)(1), amendment to encompass an issue raised at trial or in briefing on a dispositive motion should be granted if "doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." *See also NAACP*

*Legal Def. & Educ. Fund, Inc. v. Wilkinson*, 2021 WL 723993, at *12 & n.8 (D.D.C. 2021) (permitting constructive amendment of pleadings during briefing of dispositive motions).

### III.   ARGUMENT

The Court should deny Defendants' "motion" for at least three independent reasons.

First, although styled as a "motion," the motion is, in reality, an untimely opposition to Plaintiffs' motion for default judgment against Turkey. Responses to that motion were due no later than October 13, 2023. Moreover, the Individual Defendants had more than seven months after the Court set the default motion deadlines (*see* Minute Order of Apr. 12, 2023) to raise concerns with the timing of the default proceedings against Turkey, but failed to do so. As a result, the Court should exercise its discretion to deem the Individual Defendants to have conceded that default is ripe and to have waived any opposition to Plaintiffs' proposed amendment.

Second, the Individual Defendants' purported "motion" violates the local rules because counsel for the Individual Defendants failed to meet and confer with counsel for the Plaintiffs before filing it.

Third, and most importantly, even absent its procedural deficiencies, the Individual Defendants are wrong on the law. Under binding D.C. Circuit precedent, default judgment is appropriate here because the Court could find Turkey liable even if the Individual Defendants are not, and because Plaintiffs could collect on a judgment against Turkey even if one is not granted against the Individual Defendants.

A. **The Individual Defendants' "Motion" Violates the Local Rules**

    1. <u>The Individual Defendants have conceded the issues raised in Plaintiffs' motion for default judgment by failing to timely oppose it.</u>

        a. The Individual Defendants' "motion" is an untimely memorandum in opposition.

The Individual Defendants' "motion" is in effect an untimely opposition to Plaintiffs' motion for default judgment against Turkey. The Individual Defendants raise two purported issues with Plaintiffs' motion for default judgment. They first argue that Plaintiffs' motion is unripe because the Individual Defendants' liability has not yet been decided. Tellingly, in most of the cases Defendants cite, this issue was raised in an opposition to the Plaintiffs' motion for default judgment and, as far as Plaintiffs' counsel can tell from the dockets, none were raised in a separate "motion" filed by the non-defaulting defendant after the time for an opposition had expired.[1]

The Individual Defendants next argue that the alternative request to amend Plaintiffs raised in their motion for default judgment "should be denied." Defendants make no attempt to explain why this issue – to which they dedicate more than half of the argument section in their

---

[1] *See* Defs.' Opp'n to Pls. SEC's Mot. for Judgment, *SEC v. Yin*, No. 1:17-cv-972, 2023 WL 2753094 (S.D.N.Y. Sept. 15, 2022), Dkt. 328; Def. Home Depot USA, Inc, the Home Depot, Inc., & HD Dev. Of Md., Inc's Mem. of Law in Partial Opp' to Pl.'s Mot. for Default Judgment, *Hunter v. Shanghai Huangzhou Electrical Appliance Mfg.* No. 5:17-cv-52, 2020 WL 8618142 (N.D.N.Y. Oct. 16, 2020); Defendant Clark Constr. Grp.'s Opp'n to Pls.' Mot for Default Judgment as to Counts II and III, *Zapata v. B. Coleman Flooring Installation, LLC*, No. 1:18-cv-1134, 2019 WL 11608344 (D.D.C. Oct. 9, 2019); *Deutsche Bank Nat'l Tr. Co. v. Ahluwalia*, 2013 U.S. Dist. LEXIS 26251, at *2 (W.D.N.C. 2013) ("Co-Defendant Jose Leonardo Jimenez responded in opposition to the motion at bar . . . ."). In *Jefferson v. Briner, Inc.*, the docket shows that the defendant filed a response in opposition to the motion for default judgment, but it is not readily available on PACER or Westlaw, so Plaintiffs cannot say for sure whether the defendant's opposition encompassed the ripeness issue, though, at the least, the docket does not reflect any separate "motion to defer default judgment." *See* Docket, *Jefferson v. Briner, Inc.*, 3:05-cv-652, (E.D. Va. Jan. 20, 2006), (docket entry 29 listing "Response in Opposition re 25 Motion for Default Judgment").

memorandum – is properly brought as part of a "motion to defer default judgment" and not as an opposition to Plaintiffs' request to amend.

The Individual Defendants should not be permitted to cure their failure to timely oppose Plaintiffs' motion for default judgment by repackaging their untimely memorandum in opposition as a "motion." *See, e.g.*, *Wilson v. San Diego Cnty. Sheriff's Dep't.*, 2017 WL 3953151, at *1 (S.D. Cal. 2017) ("Based on its contents, the Court summarily DENIES this 'motion,' and, instead, construes it as an untimely opposition to Plaintiff's motion for summary judgment." (footnote omitted)).

      b. The Court should consider the Individual Defendants' failure to oppose Plaintiffs' motion for default judgment as a concession of the arguments raised therein

The Court should exercise its discretion under Local Rule 7(b) to disregard the Individual Defendants' untimely opposition to Plaintiffs' motion for default judgment and deem the Individual Defendants to have conceded the arguments Plaintiffs made therein – including that "default judgment on liability is ripe and appropriate," Dkt. 241-1 at 18, and that Plaintiffs' requested amendment, if necessary, would be appropriate under either Federal Rule 15(a)(2) or 15(b)(1).

Courts in the D.C. Circuit will consider even case-dispositive motions conceded for failure to file a timely opposition. *See, e.g.*, *Fox*, 389 F.3d at 1294-95; *Makell v. FedChoice Fed. Credit Union*, 2019 WL 13255496, at *1 (D.D.C. 2019); *Voacolo v. Fed. Nat'l Mortg. Ass'n*, 224 F. Supp. 3d 39, 43 (D.D.C. 2016); *see also, e.g.*, *Texas v. United States*, 798 F.3d 1108, 1113-16 (D.C. Cir. 2015) (upholding application of application of Rule 7(b) to find motions for attorney fees conceded).

Here, a finding that the Individual Defendants have conceded the arguments raised in Plaintiffs' motion for default judgment would be particularly appropriate. Not only did the Individual Defendants file their "motion" seven weeks after the deadline for them to oppose Plaintiffs' motion, they had – at the very minimum – *seven months* before Plaintiffs filed their motion for default judgment to raise any objection they may have had about the procedures for entering judgment against Turkey or the timeline for doing so. That Plaintiffs would seek default judgment has been apparent since at least the February 17, 2023, status conference, when Plaintiffs told the court they planned to propose a schedule for briefing on default judgment, if not since November 9, 2022, when Plaintiffs filed their affidavit of default. At the very latest, the Individual Defendants were aware of the schedule when Plaintiffs filed their proposed schedule on March 10 (Dkt. 183), and when the Court entered the deadline on April 12 (Minute Order of Apr. 12, 2023).

Throughout this entire period (and for the years of litigation that proceeded it), the Individual Defendants have been represented by competent counsel from well-reputed law firms. Were the Individual Defendants genuinely concerned about the effect of a judgment against Turkey on the claims pending against them, they had every opportunity and incentive to do so during the intervening months while Plaintiffs were also discussing a discovery schedule with the Individual Defendants. The Individual Defendants' apparent tactical decision to wait months, until the middle of discovery, to attempt to tie the expeditious resolution of Plaintiffs' claims against Turkey to the resolution of Plaintiffs' claims against the Individual Defendants should not excuse their failure to oppose Plaintiffs' motion for default judgment.

Moreover, Plaintiffs are potentially prejudiced by the Individual Defendants' failure to earlier raise their objections to the Court granting default judgment against Turkey while claims

against the Individual Defendants remain pending. Plaintiffs' counsel spent dozens, if not hundreds, of attorney and paralegal hours preparing their motion for default judgment, which in total spanned more than 500 pages in their public submission alone and hours of video exhibits. If the Individual Defendants were correct that default judgment is not ripe (as explained below, they are not), then this effort would have been premature and Plaintiffs would likely have to repeat much of it, especially if, as the Individual Defendants (incorrectly) argue, their success at trial could narrow the scope of any potential judgment against Turkey. Had the Individual Defendants raised this issue before the middle of discovery, the parties could have agreed upon a schedule that would have harmonized briefing on the default judgment against Turkey with litigation of the claims against the Individual Defendants, and they could have come to terms on a schedule that would have allowed for quicker resolution of the Individual Defendants' liability.[2]

The Court should thus find that the Individual Defendants conceded the ripeness of Plaintiffs' motion for default judgment and the appropriateness of Plaintiffs' proposed amendment, and it should accordingly deny the Individual Defendants' motion.[3]

---

[2] For example, the parties could have bifurcated discovery and trial between liability and damages, which would have allowed them to reach trial on liability much more quickly.

[3] For the same reason, Defendants cannot show excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B). In considering excusable neglect, courts weigh "(1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith." *Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 479 (D.C. Cir. 2016). Here, there is a risk of prejudice to Plaintiffs; the relief the Individual Defendants seek after their months-long delay would potentially throw a wrench in the schedule the parties and the Court have contemplated; the Individual Defendants have offered no reason for the delay (or even acknowledged it), and whatever the reason for delay, it is entirely within counsel's control; and the Individual Defendants' choice to wait until now to raise their objections to the timing of judgment against Turkey appears to be a tactical decision.

2. <u>If Defendants' "motion" is really a "motion," then the Individual Defendants violated Rule 7(m).</u>

If, as the Individual Defendants maintain, their filing is best construed as a motion, then it violates the Local Rules. Local Rule 7(m) states that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." It further states that "[a] party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed." LCvR 7(m).[4]

Here, the Individual Defendants did neither. The first time that counsel for the Plaintiffs learned that the Individual Defendants wished to defer decision on Plaintiffs' motion for default judgment, or had any other objection to that motion or the schedule or procedures for deciding it, was when the Individual Defendants served their "motion" via CM/ECF. This alone is basis to deny the "motion." *See, e.g.*, *Haynes v. Navy Fed. Credit Union*, 282 F.R.D. 17, 19 (D.D.C. 2012) (Kollar-Kotelly, J.) ("Haynes has failed to certify his compliance with Local Civil Rule 7(m) and his Motion to Amend shall be DENIED on that basis alone.").

A Rule 7(m) conference would not have been an empty gesture in this instance. Although, as explained below, the Individual Defendants are wrong on the law and Plaintiffs would not have consented to the relief the Individual Defendants seek, it is still possible the parties could have explored alternative solutions to allay whatever legitimate concerns the

---

[4] The Individual Defendants' "motion" is plainly nondispositive, and thus subject to Rule 7(m). *See Steele*, 2023 WL 6215790, at *3 (motion is dispositive for Rule 7(m) purposes, and thus exempt from the rule, if the motion, "if granted, would result either in the determination of a particular claim on the merits or elimination of such a claim from the case." (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997))).

Individual Defendants might have, and it is possible they could have avoided the need for this motion practice. At the very least, if the Individual Defendants had bothered to meet and confer the with the Plaintiffs, they would have learned that the Plaintiffs did not intend the request they made, in the alternative, in their motion for default to amend the pleadings to have any effect as against the Individual Defendants. This would have cut Defendants' memorandum in half.

## B.  The Individual Defendants' "Motion" is Wrong on the Merits

If the Court chooses to reach the Individual Defendants' "Motion" on the merits, then the Court should deny it. Binding D.C. Circuit authority holds that default judgment may be granted while claims remain pending against non-defaulting Defendants where, as here, a potential verdict in favor of the non-defaulting Defendants would not irreconcilably conflict with the judgment against the defaulting Defendant. Here, there is no such barrier to entry of default judgment.[5] Moreover, the amendment Plaintiffs proposed in the alternative in their motion for default judgment was proposed only against Turkey, would not prejudice the Individual Defendants in any discernable way, and is otherwise appropriate.

1.  Plaintiffs' motion for default judgment against Turkey is ripe for the Court's determination.

a.  Under binding authority, the Court may grant default judgment at any time because there is no risk of a logically inconsistent verdict.

The Individual Defendants argue that the doctrine announced in *Frow v. De La Vega*, 82 U.S. 552 (1872), prevents the Court from granting default judgment against Turkey while claims

---

[5] Plaintiffs have moved for summary judgment on several of their claims against three of the Individual Defendants because the *evidence* would not allow a jury to find in their favor. *See* Dkts. 246, 254. But a *default judgment* against Turkey would not prevent the jury from finding in the Individual Defendants' favor. These are separate inquiries.

remain pending against the Individual Defendants. They are mistaken. *See, e.g.*, *Whelan v. Abell*, 953 F.2d 663, 674-75 (D.C. Cir. 1992). In the D.C. Circuit:

> "*Frow* stands for the narrow rule that a default judgment may not be entered against one of several defendants (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant."

*Carter v. District of Columbia*, 795 F.2d 116, 137 (D.C. Cir. 1983) (quoting 6 J. Moore, *Moore's Federal Practice* ¶ 55.06, at 55–38 to 55–39 (2d ed. 1985)).

"[T]ruely joint" liability exists "when the theory of recovery requires that all defendants be found liable if any one of them is liable." *Whelan*, 953 F.2d at 674-75. "Absent such true joint liability, a default judgment may go forward as to the defaulting defendants while the case proceeds on the merits as to the answering defendants." *Top Sure Invs., Inc. v. Clearview Settlement Sols., LLC*, 2015 WL 4396786, at *4 (D.D.C. 2015). Thus, "*Frow* does not protect against the mere possibility of logical inconsistencies; it forbids only 'irreconcilable conflict[s]' between judgments that preclude effective relief." *United States v. All Assets Held in Acct. No. XXXXXXX, in Name of Doraville Props. Corp., at Deutsche Bank Int'l in Jersey, Channel Islands*, 330 F. Supp. 3d 150, 158 (D.D.C. 2018) (alteration in original) (quoting *Carter*, 795 F.2d at 137). The D.C. Circuit has repeatedly admonished that "the venerable *Frow* case should not be extended 'to a context for which it was never intended.'" *Carter*, 795 F.2d at 137 (quoting *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257 (7th Cir. 1980)); *see also Whelan*, 953 F.2d at 674.

Under the D.C. Circuit's narrow approach, *Frow* does not apply here because Plaintiffs' theories do not allege "true joint liability" such that for one defendant to be liable, they all must be liable. On the contrary, had Turkey not defaulted and were all Plaintiffs' claims to be tried

13

together, a factfinder could theoretically find that Turkey is liable, but the Individual Defendants are not. For example, the factfinder could find that the actions of Turkey's agents amounted to assault, battery, and intentional infliction of emotion distress, while the actions of the Individual Defendants did not, and it could likewise find that the Individual Defendants did not aid and abet the Turkish agents' torts. At worst, such a result might arguably be a "logical inconsistenc[y]," but it would not present an "irreconcilable conflict." *All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d at 158. Moreover, while Plaintiffs have alleged that the Individual Defendants aided and abetted the Turkish agents, they have not sought default judgment on claims that the Turkish agents aided and abetted the Individual Defendants. Thus, entry of judgment against Turkey does not necessitate any finding that the Individual Defendants are liable.

Defendants do not acknowledge *Carter* or *Whelan* – both binding precedent – or any of the other cases within the D.C. Circuit applying its "narrow" approach to the *Frow* doctrine. *Carter*, 795 F.2d at 137. Instead, Defendants argue that *Frow* applies simply because the Plaintiffs allege the Defendants acted jointly. But allegations of joint conduct do not amount to "true joint liability" unless "the theory of recovery requires that all defendants be found liable if any one of them is liable," which, as explained, is not the case here. *Whelan*, 953 F.2d at 674-75.

As the Seventh Circuit has explained in one of the leading modern *Frow* cases, allegations of joint action do not on their own raise a *Frow* problem. *See Uranium Antitrust Litig.*, 617 F.2d at 1257-58; *see also Carter*, 795 F.2d at 137 (following *Uranium Antitrust Litig.*). Rather, *Uranium Antitrust Litig.* distinguishes between "joint liability" and joint *and several* liability. 617 F.2d at 1257-58. While true joint liability poses a *Frow* problem, in cases of joint and several liability, because a jury *could* find the defendants acted jointly but also *could* find that the defaulting defendant is liable while the non-defaulting defendant is not, "different results as to different parties are not logically inconsistent or contradictory," and "the rationale for the Frow rule is lacking."

14

*Uranium Antitrust Litig.*, 617 F.2d at 1257-58. Liability against joint intentional tortfeasors is joint and several liability, not true joint liability. *See* Restatement (Third) of Torts: Apportionment of Liability § 12 (Am. L. Inst. 2000).

The facts of *Carter* are illustrative. There, the Plaintiffs alleged they were subject to an unlawful arrest, and sued the arresting officers, a police chief, and the District of Columbia. *Carter*, 795 F.2d at 120. One of the arresting officers failed to respond, so the district court entered default judgment against him. *Id.* at 120. At trial against the non-defaulting defendants, the court instructed the jury that liability was to be presumed against the defaulting defendant and assessed damages against him. *Id.* at 137. On appeal, the D.C. Circuit held that the district court did not violate *Frow* because, despite the joint nature of their conduct, the claims against the defaulting defendant were "severable from" the claims against the non-defaulting defendant. *Id.* at 138. The district court instructed the jury that each defendant's liability was to be judged individually, and despite the default, "[t]he city endeavored, constantly, at length, and without court constraint, both in the course of trial and in its summation, to persuade the jury that the conduct of all three officers, individually and jointly, was appropriate under the circumstances." *Id. Carter* is on all fours with the situation here.

The cases the Individual Defendants cite do not support departure from *Carter*. *Frow* itself dealt an action under the old Rules of Equity against eight defendants for the return of real estate out of which they allegedly defrauded the plaintiff. 82 U.S. at 552-53. Thus, the default judgment against the defaulting defendant adjudging the title to the plaintiff could not be effectuated without interfering with the non-defaulting defendants' right to title, on which they prevailed at trial. *Id.* at 553-54. Here, if the Court enters default judgment against Turkey but the Individual Defendants prevail at trial, Plaintiffs may still collect their judgment against Turkey without impairing the Individual Defendants' rights, and no "absurdity" would result. *Id.* at 554.

15

*Zapata v. B. Coleman Flooring Installation, LLC*, 2019 WL 13399854 (D.D.C. 2019), is the rare case involving an instance of "true joint liability." In *Zapata* the plaintiffs sued a general contractor, a subcontractor, and a sub-subcontractor for wages owed to them by the sub-subcontractor, who defaulted. *Id.* at *1. Under D.C. law, the contractor and subcontractor bore "automatic liability" for the sub-subcontractor's failure to pay wages. *Id.* Thus, the only question in the case was the sub-subcontractor's liability, and a default judgment against the sub-subcontractor would have "indirectly establish[ed] liability as to the two non-defaulting defendants." *Id.* Here, by contrast, a default judgment against Turkey would not automatically establish liability as to the Individual Defendants.

In *Hits Before Fame, LLC v. Hernandez*, 2023 WL 2681765 (D.D.C. 2023), the only non-defaulting defendant was "incarcerated and proceeding *pro se*," and the court was "concerned about his ability to consider the effect (*if any*) of a judgment against his defaulting co-defendant." *Id.* at *1. In so ruling, the court did not address *Carter or Whelan*. Accordingly, *Hits Before Fame* is best read as deferring the decision on whether to defer default judgment until the non-defaulting defendant and the court could be better appraised on the effects of a default on the non-defaulting defendant. Here, in contrast to the *pro se* defendant in *Hits Before Fame*, the Individual Defendants have long been represented by competent counsel who are fully able to assess the effect "if any" of a judgment against Turkey, and, as discussed below, said counsel are unable to identify any legitimate prejudice a judgment against Turkey would cause to the Individual Defendants.

In *Yin*, the court held that "the continued application of *Frow* is doubtful," and that, even applying *Frow* and giving it an expansive reading, it did not apply to the securities-fraud case before it. 2023 WL 2753094 at *5. The Individual Defendants nevertheless cite dicta from *Yin* to argue that joint liability arises whenever tortfeasors are alleged to act in concert. As discussed above, the rule is not so straightforward. *Yin*'s dicta cited to *Uranium Antitrust Litigation*, in which the Seventh Circuit

held that *Frow* <u>does not</u> apply when, as here, "liability is potentially 'several,' as well as 'joint." *Uranium Antitrust Litig.*, 617 F.2d at 1257.

The Court should disregard the remainder of the Individual Defendants' cases because they do not follow the D.C. Circuit's "narrow" approach to *Frow*. Proper application of *Frow* is the subject of a deep circuit split, in which "the D.C. Circuit, [and] the Second, Third, Seventh, and Eighth Circuits have adopted a narrow approach to *Frow*" while "the Fourth, Fifth, Ninth, Tenth, and Eleventh Circuits view *Frow* relatively broadly." *See Top Sure Invs.*, 2015 WL 4396786, at *4 n.14. Under the "broad" approach that the D.C. Circuit has rejected, courts will apply *Frow* "where the answering and defaulting defendants are closely interrelated or otherwise similarly situated." *Id.* The Individual Defendants' out-of-circuit cases all follow the "broad" approach, so they have no persuasive value within the D.C. Circuit. *See Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 162 (N.D.N.Y. 2020) (following rule that *Frow* applies in "some cases where non-defaulting and defaulting defendants share a closely related, if not identical, defense" (cleaned up));[6] *Garnier-Theibaut, Inc. v. Castello 1935 Inc.*, 2019 WL 3767509, at *2 (D. Md. 2019) ("The Fourth Circuit has extended the *Frow* rule to cases where the plaintiff alleges defendants are liable not jointly, but jointly and severally."); *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434-45 (E.D. Va. 2006) ("Although many jurisdictions have narrowly construed *Frow* to bar entry of a default judgment against one of several defendants only if the theory for recovery is one of true joint liability, the Fourth Circuit

---

[6] Although *Top Sure Investments* identifies the Second Circuit as following the "narrow" approach, the *Yin* court recently acknowledged that "district courts within the [Second] Circuit have continued to apply *Frow* in an inconsistent manner." *Yin*, 2023 WL 2753094, at *5. Accordingly, *Hunter*'s pronouncement that *Frow* can apply where defenses are merely "closely related" is not representative of the "narrow" approach followed in the D.C. Circuit and elsewhere.

has interpreted *Frow* more broadly."); *see also Joe Hand Promotions, Inc. v. Sheedy*, 2010 WL 3724754, at *2 (D.S.C. 2010) (following *Jefferson*).[7]

In sum, under the binding law of the D.C. Circuit, *Frow* does not apply here because a jury could find for the Individual Defendants without contradicting a judgment against Turkey.

> b.   Plaintiffs need not satisfy Rule 54(b), but they do regardless.

The Individual Defendants next argue that even if *Frow* does not block entry of default judgment against Turkey, Federal Rule of Civil Procedure 54(b) does. As a preliminary matter, Plaintiffs note that they have not actually moved for a partial final judgment under Rule 54(b) because the assessment of damages remains outstanding. Rather, Plaintiffs moved under Rule 55(a) and 28 U.S.C. § 1608(e) for an entry of judgment on liability only. Plaintiffs will move for partial final judgment under Rule 54(b) if and when the Court finds Turkey liable and, after further proceedings, assesses damages against it. Plaintiffs' motion for default judgment is thus more akin to a motion for summary judgment on liability preceding trial than it is a motion for partial final judgment. *See, e.g., All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d at 159 ("Even when entry of default judgment is warranted, however, it does not necessarily follow that the order is final and appealable."). But even if Plaintiffs must satisfy Rule 54(b)'s "no just reason for delay" standard for entry of default judgment on liability only, they easily do.

---

[7] *Joe Hand* appears to misquote *Jefferson* as saying the narrow approach applies *Frow* "only of [sic] the theory of recovery is one for true joint <u>and several</u> liability." 2010 WL 3724754, at *2 (emphasis added) (misquoting *Jefferson*, 461 F. Supp. 2d at 434-45). The quote in *Jefferson* does not include the words "and several," and *Jefferson* otherwise correctly frames the circuit split as the narrow approach applying *Frow* "only to defendants who are alleged to be jointly liable" and the broad approach additionally extending *Frow* "to those defendants thought to be jointly and/or severally liable, or who are otherwise closely interrelated." 461 F. Supp. 2d at 434-45.

The Individual Defendants' sole argument for why there is just reason for delay is a repackaging of their *Frow* argument: echoing the broad approach to *Frow* that the D.C. Circuit has rejected, they assert that "[t]he intertwined nature of Plaintiffs' allegations raises the risk of inconsistent judgments as to Turkiye's and the Individual Defendants' respective liability." Dkt. 249 at 14. As explained above, "the mere possibility of logical inconsistencies" is not enough to forestall default judgment in the D.C. Circuit, there must be a risk of "'irreconcilable conflict[].'" *All Assets Held in Acct. No. XXXXXXXX*, 330 F. Supp. 3d at 158 (quoting *Carter*, 795 F.2d at 137). And there is no risk of irreconcilable conflict here. *See supra* Part III.B.1.a.

Moreover, even if the risk of logical inconsistencies was reason to forestall default judgment, the Individual Defendants cannot identify any prejudice they would suffer if such a risk came to fruition. In the scenario that the Individual Defendants claim to fear, judgment would have been entered *in their favor*, and they would bear no share of Turkey's liability. The Individual Defendants would be no worse off than if the Court deferred judgment against Turkey until after judgment against Defendants. The Individual Defendants simply assert no reason – and none is apparent – for why a judgment against Turkey could harm their interests.

On the other hand, forcing Plaintiffs to wait longer for judgment against Turkey would cause prejudice to Plaintiffs. Each Plaintiff suffered harm from the attack – some of them serious physical injuries that require ongoing medical care – and their injuries have already gone uncompensated for more than six years. The Court more than a year ago recognized that "deferring [Plaintiffs'] opportunity to pursue relief for the injuries" would prejudice Plaintiffs. Mem. Op. & Order, Dkt. 157 at 7. Likewise, the Court has held "that there is a 'significant public interest in resolving expeditiously' a case involving an 'assault against U.S. citizens and

residents on American soil by armed foreign agents.'" *Id.* at 7-8 (quoting Dkt. 141). These considerations are even more acute now than they were in September 2022.

The Individual Defendants do not acknowledge the Court's prior holdings on the prejudice further delay will cause to Plaintiffs and the public. Rather, they posit that "delay between today and the end of any trial-related process will be relatively short." Dkt. 249 at 15. Plaintiffs do not share the Individual Defendants' optimism or, at the least, disagree with their definition of "relatively short." No trial date is presently set. *See* Dkt. 190 at 4. Even if trial commenced reasonably soon after the end of discovery with no period for additional summary judgment briefing, between the time needed for pretrial motions and disclosures, trial itself, and post-trial briefing, it is unlikely that "trial-related process" would conclude until the end of 2024. And that is assuming a rather quick schedule. Plaintiffs are fully aware of the strain the January 6 criminal trials have put on all dockets in this District, so being realistic, they are not optimistic that "trial-related process" will end until well into 2025 or beyond. Thus, if Defendants' "motion" were granted, Plaintiffs may have to wait upwards of eight years from the time of the attack just for a declaration of liability against Turkey, never mind receipt – or even an assessment of – damages. This is extreme prejudice.

The Individual Defendants rather ironically argue that Plaintiffs are not prejudiced because, Individual Defendants say, they "delay[ed]" in filing the motion for default judgment. Plaintiffs filed their motion according to the schedule set by the court. Plaintiffs' motion was lengthy, thorough, and complex. With their statement of material facts, proposed opinion, and exhibits accounted for, Plaintiffs in their public filing alone submitted more than 500 pages on top of hours' worth of video exhibits. Dkt. 241. That Plaintiffs took a reasonable amount of time on such a complex filing, on top of Counsel's other litigation conflicts, does not negate the

prejudice they would face if judgment against Turkey were needlessly delayed for another year and a half or more.

Accordingly, there is "no just reason to delay" in ruling upon Plaintiffs' motion for summary judgment.

2. <u>Plaintiffs' alternative request for a technical amendment to their claims against Turkey is appropriate</u>

a. Plaintiffs do not seek to amend their claims against the Individual Defendants.

In their motion for default judgment, Plaintiffs argue that their bias-related crimes claims encompass claims for crimes motivated by sex and gender identity and adduce evidence to that effect. *See* Dkt. 241-1 at 36-37. Recognizing that "[t]he First Amended Complaint does not specifically allege that the attack on Plaintiffs was motived in part by sex-based animus" and that the Court may "believe[] it necessary" to amend to explicitly add that theory, Plaintiffs requested in the alternative that their claims against Turkey be amended by interlineation "to insert the words 'sex, gender identity,' after 'national origin' in both paragraphs 253 and 254 of the Amended Complaint." *Id.* at 37.

To the extent it was not already clear from the context of the default judgment brief, Plaintiffs clarify that they did <u>not</u> intend their alternative request to amend to have any effect against the Individual Defendants.[8] The Individual Defendants would have learned as much if they had met and conferred with Plaintiffs before filing their "motion."

Because Plaintiffs do not seek to amend their claims against the Individual Defendants, they do not have standing to challenge Plaintiffs' request to amend as to Turkey, so the Court

---

[8] That is not to say that Plaintiffs' primary argument – that the complaint already encompasses their sex-bias theory – does not apply to the Individual Defendants. It does. But to the extent amendment is necessary, Plaintiffs do not seek to amend against the Individual Defendants.

should not consider the arguments the Individual Defendants make in their "motion." *See, e.g.*, *Dixon v. County of Alameda*, 1997 WL 220311, at *6 n.8 (N.D. Cal. 1997) (court would "not consider the arguments proffered" in opposition to motion party did "not have standing to oppose"); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60-61 (D. Mass. 1996) (party "may not oppose" motion on grounds for which it has no standing to assert).

  b. Amendment against Turkey, if necessary, is appropriate

  As Plaintiffs set forth in their motion for default judgment, amendment against Turkey would be appropriate if the Court deems it necessary.

  Amendment is appropriate under Rule 15(a)(2). The proposed amendment would not be futile because the evidence submitted with Plaintiffs' default judgment motion shows Turkey is liable for bias-related crimes based in part on its agents' sex-based animus. *See* Dkt. 241-1 at 36-37. There is no evidence of bad faith, which "generally requires an affirmative showing by the nonmoving party" and "often requires extrinsic evidence." *Sherrod v. McHugh*, 249 F. Supp. 3d 85, 87 (D.D.C. 2017). There is not undue delay because Turkey has not even filed an answer. *See, e.g.*, *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 162 (D.D.C. 2018) (surveying caselaw and concluding courts "only deny[] [Rule 15 motions] on the basis of undue delay when the plaintiffs waited many years before seeking amendments, after discovery had already concluded or summary judgment had already been granted" (emphasis in original)). There is no undue prejudice to Turkey because there is no reason to believe Turkey would have chosen to defend the case or have done anything differently had Plaintiffs more specifically listed their gender-based bias theory in the complaint, and the requested amendment would "not substantially change [plaintiffs'] theory." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006).

The Individual Defendants main argument in opposition to amendment under Rule 15(a)(2) is that *they* – not Turkey – would be prejudiced if the amendments were effective against *them*. Because Plaintiffs do not seek to amend their claims against the Individual Defendants, this argument is moot. As to Turkey, the Individual Defendants *concede* that there is "no prejudice to *Turkiye*." Dkt. 249 at 18 (emphasis in original). Otherwise, the Individual Defendants argue that Plaintiffs' motion should be denied for past failure to cure deficiencies. But Plaintiffs have only filed a single prior amendment, and it was not in response to any purported deficiency in their bias-related crimes claims. This is not a "repeated failure to cure deficiencies." *See, e.g.*, *Ghawanmeh v. Islamic Saudi Acad.*, 268 F.R.D. 108, 110 (D.D.C. 2010) (second motion to amend should not be denied for repeated failure to cure deficiencies). Accordingly, amendment is appropriate under Rule 15(a)(2).

Amendment is also appropriate under Rule 15(b)(1). The Individual Defendants argue that amendment under Rule 15(b) is appropriate only at trial, but Plaintiffs cited authority in their motion for default judgment holding that amendment under Rule 15(b) is also available by analogy during briefing on a dispositive motion. *See NAACP Legal Def. & Educ. Fund, Inc.*, 2021 WL 723993, at *12 & n.8 (permitting amendment under Rule 15(b) during summary-judgment briefing); *see also Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("[W]hen issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, the district court should have construed the matter raised as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time." (cleaned up)). The Individual Defendants do not address this authority. The Individual Defendants otherwise argue it would be inappropriate only because they say that *they* would be prejudiced. As discussed above, their prejudice argument is moot.

Finally, the Individual Defendants argue Plaintiffs should not be permitted to amend because they did not attach a copy of the proposed amended complaint adding the six words Plaintiffs sought to add to their complaint. This argument elevates form over substance to the worst degree. Plaintiffs were specific in their motion for default judgment about the precise interlineation they sought. They did not seek leave to make some unspecified amendment or otherwise try to conceal the nature of the amendments they sought. None of the cases that the Individual Defendants cite demonstrate that this is reason to deny amendment. *See IMAPizza, LLC v. At Pizza Ltd.*, 965 F.3d 871, 876 (D.C. Cir. 2020) (holding district court did not abuse its discretion in denying leave to amend where plaintiff simply stated in opposition to motion to dismiss that any dismissal "should be with leave to amend"); *GVA Grp., Inc. v. United Parcel Serv. Gen. Servs. Co.*, 2023 WL 3172007, at *1 (S.D. Fla. 2023) (denying motion to amend where plaintiff did not attach amended complaint *or* "set forth the substance of the proposed amendment"); *Carmichael v. Blinken*, 2023 WL 2571721, at *3 n.2 (D.D.C. 2023) (denying leave to amend because motion to amend came "after the original claims had become moot and the case was at its end" while also citing failure to attach proposed amended complaint); *Sai v. TSA*, 236 F.R.D. 31, 32 (D.D.C. 2018) (pro se plaintiff moved orally "to amend the operative complaint to add a host of new claims"). Neither the Court nor any party is prejudiced by Plaintiffs' failure to attach a copy of their proposed six-word amendment, but Plaintiffs would submit a copy of the proposed amended complaint if the Court deems amendment is necessary or if the Court otherwise requests Plaintiffs do so.

## IV.    CONCLUSION

For the reasons stated above, the Court should deny the Individual Defendants' "Motion to Defer Default Judgment."

Dated: December 15, 2023                    Respectfully submitted,

                                            /s/ Agnieszka M. Fryszman
                                            Agnieszka M. Fryszman, DC Bar No. 459208
                                            Nicholas J. Jacques, DC Bar No. 1673121
                                            **COHEN MILSTEIN SELLERS & TOLL
                                            PLLC**
                                            1100 New York Ave., N.W.
                                            East Tower, Suite 500
                                            Washington, DC  20005
                                            Tel: (202) 408-4600
                                            Fax: (202) 408-4699
                                            afryszman@cohenmilstein.com
                                            njacques@cohenmilstein.com

                                            Michael E. Tigar, DC Bar No. 103762
                                            870 United Nations Plaza, Apt. 9C
                                            New York, NY 10017
                                            Tel: (202) 549- 422

                                            ***Attorneys for Plaintiffs***