IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Kurd, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 1:18-cv-1117-CKK |
| v. | ) |
| The Republic of Turkey, *et al.*, | ) |
| Defendants. | ) |

**OPPOSITION TO MOTION TO QUASH FILED BY MUTLU CIVIROGLU**

Mutlu Civiroglu ("Civiroglu") is wrong on both the facts and the law. The Motion to Quash should be denied. *See* Mot. to Quash, ECF No. 308, filed Oct. 21, 2024 ("Motion").

**INTRODUCTION**

With respect to the facts, Civiroglu conveniently omits how counsel for Civiroglu and Yildirim exchanged correspondence and then met and conferred to reach—what Yildirim's counsel thought—was a mutually agreed upon conclusion to Civiroglu's objections to the August 25, 2024 subpoenas that Defendant Eyup Yildirim ("Yildirim") served on him.[1] Importantly, counsel discussed limiting the scope of the Subpoenas from May 16, 2017 to June 1, 2017. And, Yildirim's counsel was clear that they were only seeking information related to Civiroglu's non-professional communications with Plaintiffs[2] or others present at Sheridan Circle on May 16, 2017.

---

[1] Civiroglu was served with both a subpoena to testify in a deposition and a subpoena to provide certain documents (collectively, "Subpoenas"). *See* Ex. 1, Subpoena Duces Tecum & Subpoena Duces Testificandum, both dated August 15, 2024.

[2] The term "Plaintiffs" refers to all of the named Plaintiffs in this litigation: Kasim Kurd, Stephen Arthur, Heewa Arya, C.A., Abbas Azizi, Ceren Borazan, Jane Doe I, Jane Doe II, Jane Doe III, Elif Genc, Ruken Isik, Jalal Kheirabadi, Mehmet Ozgen, Mehmet Tankan, and Murat Yasa.

Also, to the extent that it even matters for this analysis, Civiroglu never wrote an article on the events at Sheridan Circle according to his blog and reporter biography.

With respect to the law, Civiroglu also misses the mark. Yildirim is not looking for any information from Civiroglu while he was acting in the scope of his employment that would be protected under the reporter's privilege. *See* D.C. CODE § 16-4702. However, even if the Court was inclined to find that he was acting in the scope of his employment, this information would fit into the exception. *See id.* at § 16-4703.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 45(d)(3)(A), a court may quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). Civiroglu bears the burden of demonstrating that the subpoena should be modified or quashed. *See U.S. Dep't of Treasury v. Pension Benefit Guaranty Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014).

## FACTUAL BACKGROUND

On August 23, 2024, Civiroglu was served with the Subpoenas.[3] After Plaintiffs' counsel requested an extension for Civiroglu to respond and Yildirim's counsel agreed, Civiroglu retained counsel and sent a letter to Yildirim's counsel on September 30, 2024, noting his objections to the Subpoenas. *See* Ex. 2, Letter from J. Bournazian to X. Strohbehn. The objections focused on the Subpoenas being overly broad, unduly burdensome, and subject to the reporters' privilege under D.C. Code § 16-4702. In response, on October 7, 2024, Yildirim's counsel noted that "Defendants seek only those materials that pertain to non-professional communications with Plaintiffs or others present at either Lafayette Square or Sheridan Circle on May 16, 2017." *See* Ex. 3, Letter from X.

---

[3] The Motion does not argue that service was improper or ineffective.

Strohbehn to J. Bournazian. After an exchange of emails, Yildirim's counsel and Civiroglu's counsel met and conferred on October 12, 2024.

During the meet and confer, Civiroglu's counsel agreed to go back to his client to discuss only the time period of May 16, 2017 to June 1, 2017 to determine whether he had any communications with Plaintiffs that weren't related to his employment as a reporter. On October 15, 2024, Civiroglu's counsel sent an email explaining that he had gone back to his client and that his client did not have any messages with Plaintiffs, that he didn't remember what he discussed with the Plaintiffs in 2017, but the communications were covered by the reporters' privilege anyway. *See* Ex. 4, Email from J. Bournazian to X. Strohbehn. Before undersigned counsel could respond, Civiroglu's counsel filed the Motion.

## ARGUMENT

Yildirim does not seek any information from Civiroglu that is covered by the reporter's privilege. Civiroglu is incorrect about both the facts and the law, and the Motion should be denied.

Factually, in the correspondence and meet and confer, Mr. Yildirim's counsel was clear: they were not interested in any information or documents related to his work as a reporter, rather, they were interested in materials that pertained only to non-professional communications with Plaintiffs and others about the events at Sheridan Circle on May 16, 2017. *See* Ex. 3.

During the meet and confer specifically, Yildirim's counsel discussed how they were interested in a WhatsApp communication that Civiroglu started[4] that had nothing to do with his

---

[4] This document is labeled Highly Confidential by the Plaintiffs. To avoid putting anything under seal and to keep the records public, Yildirim does not attach these communications to this email. However, Yildirim is happy to share the document with the Court under seal or in camera should the Court request. Yildirim also offered to share the document with Civiroglu's counsel so long as counsel and his client executed the protective order. Neither Civiroglu's counsel nor Civiroglu agreed to execute the protective order, so they never saw the communications.

journalistic duties but instead instructed Plaintiffs to do certain things or act in a certain way. The communications include: (1) advice he gave to Plaintiffs related to individuals to contact about the litigation because of the influence those individuals could have on the case, (2) advice on who the Plaintiffs should sue, including specifically Yildirim and Defendant Alpkenan Dereci, and why; (3) advice he gave to Plaintiffs about watching certain videos to help them with their congressional testimony and to make sure their recollection of the events made sense in light of countervailing narratives; and (4) assistance he gave to Plaintiffs with the police.

Yildirim's counsel stated that they were interested in why Civiroglu communicated with the Plaintiffs in that manner and his relationship to the Plaintiffs. Yildirim's counsel also noted that they could limit the scope of the Subpoenas to relate only to communications with Plaintiffs or others about the events at Sheridan Circle from May 16, 2017 to June 1, 2017 because that was the timeline of the WhatsApp communications with Plaintiffs. Counsel for Civiroglu agreed to do so. But, in his October 15, 2024 email, counsel states that his client doesn't have the communications and doesn't remember but, at the same time, asserts that the communications would be subject to the reporter's privilege. *See* Ex. 4. Yildirim's counsel should be able to test Civiroglu's knowledge and recollection about his communications with Plaintiffs that don't relate to his employment as a reporter. In any event, Civiroglu also never wrote an article about May 16, 2017. *See* Mutlu Çiviroğlu, *ABD'deki futbol maçında YPG bayrağı açıldı*, CIVIROGLU.NET, https://civiroglu.net/2017/05/; Mutlu Çiviroğlu, *Mahmud Berxwedan: Türkiye Afrin'e Operasyon Düzenlerse Büyük Bataklığa Saplanır*, CIVIROGLU.NET, June 30, 2017, https://civiroglu.net/2017/06/; https://www.voanews.com/author/mutlu-civiroglu/-_q_q.[5]

---

[5] In a standard Google search for "mutlu civiroglu articles about May 16, 2017," there are also no hits. The majority of Civiroglu's reporting from that day seems to be posts he makes on his X

4

Legally, Civiroglu is also wrong. He has not demonstrated that the reporters' privilege even applies. *See U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos.*, 507 F. Supp. 2d 45, 50 (D.D.C. 2007) (explaining that reporter bears the burden of showing that the reporter's privilege applies in each particular case); *see also Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 119 n.4 (D.D.C. 2002) (explaining that the courts need to engage in a balancing test "only after the reporter . . . has demonstrated that the privilege applies."). Rather he just asserts, without any support, that his conversations with Plaintiffs were "part of his regular course of investigative reporting work as a journalist." Mot. at 5. It's unclear how advising Plaintiffs on who to contact to help their case, or who to sue or what videos to watch to make sure their stories match up, or helping the police relates to Civiroglu's investigative reporting.

And, Civiroglu offers no explanation to clear up this confusion. *See* Mot. at 4-5. Instead, Civiroglu explains that "[p]articipation in Chat Groups through the Internet is a routine business practice by journalists to gather information on subject matters that journalists need to investigate, analyze and write to inform the public." Mot. at 5. Yildirim does not dispute that. The issue is here, in this particular case, Civiroglu does not appear to be acting as a reporter in his communications with Plaintiffs and instead is helping them build their civil case against Yildirim and the other individual Defendants. To prevent Yildirim from asking Civiroglu about his relationship to the Plaintiffs or about his communications with Plaintiffs that do not relate to his work as a journalist expands the reporters' privilege in an overly broad and unfair application.

D.C. Code § 16-4702 only applies in certain situations: when the subpoenaing party is looking for: (1) "the source of any news;" or (2) for information "procured by the person while

---

account with photographs and videos. *See* Mutlu Çiviroğlu, TWITTER, May 16, 2017, https://x.com/mutludc/status/864648119648210945.

5

employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media[.]" D.C. Code § 16-4702(1) & (2). Neither situation applies here. Yildirim is not looking for Civiroglu's source. He also is not looking for any information Civiroglu procured while employed as a reporter in the course of pursuing his professional activities. Rather, Yildirim is interested in Civiroglu's relationship with the Plaintiffs and his communications with the Plaintiffs outside of the scope of his journalist activities. Yildirim should be able to test Civiroglu's recollection of the events after May 16, 2017 and his relationship with the Plaintiffs in a deposition, and counsel for Civiroglu should ensure that his client does not, in fact, have the communications. The privilege does not apply here.

Even if Civiroglu could claim that the privilege prevents him from sitting for a deposition or providing documents, the exception applies. Under D.C. Code § 16-4703, a court may compel disclosure if the party seeking the information can establish by clear and convincing evidence that the information is relevant to a significant legal issue; the information could not be obtained by any alternative source; and there is an overriding public interest in disclosure. D.C. CODE § 16-4703 (a)(1)-(3). Here, the information is relevant to a significant legal issue, such as how Plaintiffs came to sue the Defendants, how Plaintiffs presented their case and their recollection of the events on May 16, 2017, and how badly injured Plaintiffs were. There is no other way for Yildirim to get this information because, even if he asked the Plaintiffs, he has no way to verify what Plaintiffs tell him other than through the other person on the communications, i.e., Civiroglu.[6] And, there is

---

[6] Some but not all Plaintiffs have been deposed. Some have testified about Civiroglu's relationship to them or the Plaintiffs' group at large, but there is no way to confirm their testimony or to understand the extent of the relationship without asking the other person on the communications and in the relationship – Civiroglu. *See Chen v. Fed. Bureau of Investigation*, 687 F. Supp. 3d 115, 126-28 (D.D.C. 2023) (explaining that plaintiff tried to get information through depositions, document requests, and interrogatories and reporters' proposal for alternative sources were all supposition or speculation, so court found that the alternative sources factor weighed in plaintiff's

a public interest in understanding what assistance, if any, Plaintiffs had in bringing this litigation and recalling the events of May 16, 2017. *See id.* at § 16-4703.

Civiroglu relies on one federal case in support of his position. The case does not apply. In *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 335 (D.D.C. 1994), the plaintiff was trying to use discovery to obtain the sources relied on by reporters to employ that information in a separate lawsuit against the reporters. But, the plaintiff offered no explanation for how the information he sought was relevant to the instant case; he didn't pursue alternative sources to get the information; and he offered no compelling public interest as to why he needed the source names. *See id.* Here, Yildirim is not seeking information about Civiroglu's sources. He is asking for information that is directly related to this lawsuit and his potential liability; he has sought that information from alternative sources, namely Plaintiffs themselves; and there is a public interest in understanding what help, if any, Plaintiffs had in bringing this litigation. So, even if the privilege does apply, the exception warrants disclosure.

## **CONCLUSION**

For these reasons, Defendant Eyup Yildirim respectfully requests the Court deny the Motion.

---

favor to overcome privilege); *see also Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 133-135 (D.D.C. 2005) (finding that where party seeking information did not depose every individual associated with the information but information was central to case and party had tried to get the information from other sources, reporters' privilege did not apply).

7

| | |
|---|---|
| Dated: Washington, D.C.<br>November 4, 2024 | **VENABLE LLP**<br><br>*/s/ Mark E. Schamel*<br>Mark E. Schamel<br>Maxwell H. Weiss<br>Ana Jara<br>600 Massachusetts Ave, NW<br>Washington, DC 20001<br>Tel: (202) 344-4631<br>Fax: (202)344-8300<br>Email: MESchamel@Venable.com<br>Email: MHWeiss@Venable.com<br><br>*/s/ Xochitl S. Strohbehn*<br>Xochitl S. Strohbehn (admitted *pro hac vice*)<br>Anna G. Dimon (admitted *pro hac vice*)<br>Email: XSStrohbehn@Venable.com<br>Email: AGDimon@Venable.com<br>151 West 42nd Street, 49th Floor<br>New York, NY 10036<br>Tel: (212) 307-5500<br>Fax: (212) 307-5598<br><br>*Counsel for Defendants Eyup Yildirim, Ahmet Cengizhan Dereci, and Alpkenan Dereci* |

## CERTIFICATE OF SERVICE

On November 4, 2024, I caused a copy of the Opposition to Mutlu Civiroglu's Motion to Quash, accompanying exhibits, and proposed order to be served on all counsel of record via the Court's electronic system.

*/s/ Xochitl S. Strohbehn*
Xochitl S. Strohbehn