UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KASIM KURD et. al. | ) | |
| | ) | |
| plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-1117-CKK |
| | ) | |
| REPUBLIC OF TURKEY et. al. | ) | |
| | ) | |
| defendants. | ) | |

## SUPPLEMENTAL REPSONSE IN SUPPORT OF MOTION TO QUASH

COMES NOW, Mutlu Civiroglu, through his attorney, and files this supplemental response in support of his Motion to Quash in response to this court's order dated November 12, 2024.

The federal courts have consistently held that neither the First Amendment nor federal common law provides an absolute privilege for journalists to refuse to disclose confidential sources, particularly in the context of grand jury investigations and criminal proceedings. In Branzburg v. Hayes, 408 U.S. 665 (1972) the Supreme Court explicitly rejected the creation of a First Amendment-based reporter's privilege in the context of grand jury proceedings. The DC Circuit also has held that the First Amendment privilege protecting journalists from disclosing their sources in grand jury investigations, and any federal common law privilege that may exist is not absolute and can be overridden by a compelling interest. In re Grand Jury Subpoena (Miller), 397 F.3d 964, 989 D.D.C 2005).

Fed. Civil Rule 501 [of the Federal Rules of Evidence] does not instruct a federal court on which law of privilege to use when the case involves a federal question and a state law claim pursuant to supplemental jurisdiction. Every circuit that has dealt with this issue has held that the federal law of privilege applies. *See, e.g.,* Hancock v. Hobbs, 967 F.2d 462, 467 (11th

1

Cir.1992); <u>Hancock v. Dodson,</u> 958 F.2d 1367, 1373 (6th Cir.1992); <u>von Bulow v. von Bulow</u>, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S. Ct. 1891, 95 L. Ed. 2d 498 (1987); <u>Thompson Co. v. General Nutrition Corp., Inc.,</u> 671 F.2d 100, 104 (3rd Cir.1982); <u>Memorial Hospital for McHenry County v. Shadur,</u> 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). Furthermore, the legislative history of Rule 501 supports the use of the federal law of privilege when a federal question and a state claim are combined in the same action. The Senate Report accompanying Rule 501 states that "[i]t is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." S.Rep. No. 1277, 93rd Cong., 2d Sess. (1974), *reprinted in*, 1974 U.S.C.C.A.N. 7051, 7059 n. 16.

However, in this case there is no federal question that relates to the essence or heart of the plaintiff's tort claims.  This case does not include any federal claims against Yildrim or the other defendants, either civil or criminal. It only involves claims under DC laws. The 21 grand jury indictments against defendant Yildirim and all the other defendants in this civil case only included charges of violations of various sections of Title 22 of D.C. Code.  There are no violations of federal laws in the grand jury indictments against the defendants. The plaintiffs rely on the Alien Tort Statute, more commonly known as Torture Victim Protection Act of 1991 28 U.S.C. § 1350 and the Foreign Sovereign Immunities Act 28 U.S.C. 1330, 1605(a) for personal and subject matter jurisdiction in the District of Columbia. However, both statutes are jurisdictional and venue statutes.

The Alien Tort statute provides that if an individual acting within the scope of their employment subjects another individual to torture, then that person shall, in a civil action, be subject to liability for damages to that victim. Acts of Torture are broadly defined under 28 USC § 1350(3)b

2

to include the actions by the defendants in this case. The statute is silent regarding the issues on how federal law or state law applies to the elements of a specific tort, or whether the privilege protecting a journalist from being compelled to disclose under federal statutory and common law should apply when the privilege under state law differs.

Outside of federal grand jury proceedings, the District of Columbia's statutory reporter's privilege, as codified in the § 16-4701 et. seq. does not conflict with any similar privilege created by federal common law or the First Amendment. This court follows the federal case law and has consistently held that the D.C. statute provides a specific protection for journalists against compulsory disclosure of their sources in the context of gathering news information by applying specific guidelines Wen Ho Lee v. United States Department of Justice, 413 F.3d 53, 401 F. Supp. 2d 123, (D.D.C. 2005).

Under federal common law and the First Amendment of the U.S Constitution, the D.C. Circuit has held that the First Amendment confers on the news media a qualified privilege against compelled disclosure. This court recognizes a qualified privilege under the First Amendment to protect journalists and reporters from compelled disclosure of information, which they have obtained as part of their news gathering role. Zerilli v. Smith, 656 F.2d 705, 711 n.39, 211 U.S. App. D.C. 116 (D.C. Cir. 1981) ("The Supreme Court explicitly acknowledged the existence of First Amendment protection for news gathering," citing Branzburg v. Hayes, 408 U.S. 665, 681, 707, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972) (emphasizing that "news gathering is not without its First Amendment protections.")).

In Carey v. Hume, 492 F.2d 631, U.S. App. D.C. 365 (D.C. Cir. 1974) the plaintiff filed a civil suit for libel. The court found that disclosure may be compelled "In cases where [monetary]

3

recovery is justified, the amount of damage, which depends upon the degree of malice, would be much more difficult, if not impossible to assess…".  Carey v. Hume, 492 F.2d 631, 640 (D.C. Cir. 1974).  The constitutional privilege "does not convey an absolute immunity to the press to publish libelous information that it receives and then protect itself and the source by exercising a privilege that prevents the victim from proving the malicious intent of the source or publisher. The constitutional privilege contemplates a responsible press. Carey v. Hume, 492 F.2d 631, 640-41 (D.C. Cir. 1974). The court also stated "The decisional process with respect to the constitutional issue before it, involves a determination of "whether the interest to be served by compelling the testimony of the witness in the present case justifies some impairment of this First Amendment freedom." Id at 634. Although the court noted impinging on press freedom should be limited and a journalist should only be compelled to disclose their news gathering information as a last resort after pursuit of other opportunities have failed and the request to disclose relates to the essence of the case.  Id.

In Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d 115 (D.D.C. 2002), plaintiff filed a lawsuit and alleged that the defendants "order[ed]" and "arrang[ed] for" the assassination of her father, Ali Tabatabai, who at the time of his death was a dissident of the Iranian government living in the United States. Tabatabai was reportedly murdered at his Bethesda, Maryland home in 1981 by Daoud Salahuddin, who allegedly acted at the direction of and received material support from the Iranian government. Similar to the facts in this case, the defendants, despite being properly served with process, failed to enter an appearance in this matter and a default judgment was entered against the defendants. On August 25, 1996, The Washington Post published an article written by Ottaway entitled "The Lone Assassin." The article chronicled the gruesome details of Tabatabai's

4

assassination, including the involvement of the Iranian government. Hutira served subpoenas on David Ottaway, a non-party and reporter for the Washington Post. Mr. Ottoway filed a Motion to Quash Deposition and Document Subpoenas. The court noted that Hutira had requested the subpoenas in order to obtain evidence that was central to her claim or right to relief. Id., 211 F. Supp. 2d 115, 117 (D.D.C. 2002). The court denied the motion to quash the subpoenas and held that the requested information related to evidence the requester needed to prove her case and it went to the essence of the litigation. Disclosure may be compelled "In order to obtain evidence establishing her claim or right to relief that is satisfactory to the Court" Hutira v. Islamic Republic of Iran, 211 F. Supp. 2d 115, 117 (D.D.C. 2002).

The reporter's privilege stems from recognition of the "preferred position of the First Amendment" in our society and "the importance of a vigorous press." Zerilli, 656 F.2d. at 712. Courts have minimized impositions upon the press, particularly when burdens may have a chilling effect on a reporter's ability to investigate and gather news. Carey, 492 F.2d at 639 (courts are instructed to "always be alert to the possibilities of limiting impingements upon press freedom to the minimum."). Nevertheless, a reporter's "privilege is not absolute and may be abrogated upon a sufficient showing by the party seeking the information." Hutira, 211 F. Supp. 2d at 118; Peck v. City of Bos. (In re Slack), 768 F. Supp. 2d 189, 193 (D.D.C. 2011).

Although, the D.C. Circuit has recognized a qualified reporter's privilege under federal common law and the First Amendment in civil cases, it has also held that the qualified privilege can be overcome by the party requesting disclosure showing a compelling interest in the disclosure. Zerilli v. Smith, 656 F.2d 705, (D.C. Cir. 1981). The case law in the D.C. Circuit show that the historically, the main inquiry the courts apply is whether the requested information is central, the

essence, or goes to the heart of the litigation. The courts recognize that the qualified privilege is not absolute and requires a balancing of interests, on a case-by-case basis, between the compelling need for disclosure and the public interest in protecting journalistic sources.

"The First Amendment guarantees a free press primarily because of the important role it can play as a 'vital source of public information.' . . . But the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired. Compelling a reporter to disclose the identity of a source may significantly interfere with [the press'] news gathering ability." Zerilli v. Smith, 656 F.2d 705, 710-11. Compelling Civiroglu to produce information and testify about his participation in social media chats after the May 16, 2017 attacks will have a chilling effect on journalists participation in social media chat groups as a modern information and news gathering business practice by journalists. In Zerilli, appellants Zerilli and Polizzi filed suit against employees of the Department of Justice claiming his privacy rights were violated. He argued that the government violated their constitutional, statutory, and privacy rights by leaking to the Detroit News newspaper transcripts of conversations in which appellants discussed various illegal activities. Zirilli and Polizzi subpoenaed the testimony of the reporter to identify the source who leaked the information to the reporter.

When a party in a civil action seeks to subpoena a non-party journalist, the holding in the Zerilli case requires this court to apply the two guidelines test for balancing First Amendment privilege against the litigant's need for information. First, the requested information must go to "the heart of the matter" and not merely be marginally relevant. Id, 656 F.2d at 713. Second, the plaintiff must have exhausted "every reasonable alternative source of information" so that journalists are not simply a default source of information for plaintiffs. Id. The court concluded in Zerilli that a

6

qualified privilege does apply. The court denied the motion to compel discovery and granted summary judgment to the government and the Court of Appeals affirmed. The court also recognized the First Amendment's protection of a journalist's sources is consistent with the protection of the Free Flow of Information Act D.C. Code §§ 16-4701 et seq. and weighed the interest in compelling disclosure.

In Lee v. Dep't of Justice, 413 F.3d 53, 59-60 (D.C. Cir. 2005) the court also applied the two guideline test developed in the Zirelli case. In Lee, the plaintiff was under investigation for allegedly leaking sensitive nuclear technology to the People's Republic of China. The Court found that plaintiff Lee had met both guidelines from the Zirelli case to overcome the journalists' qualified privilege. The court held that the information was clearly central to the case since the information published by the journalist was the same information that was being used to investigate and prosecute Lee. Id. 413 F.3d 53, 59-60.

In Peck v. City of Boston, (In re Slack), 768 F. Supp. 2d 189 (D.D.C. 2011) underscores the importance of the 2nd guideline in test developed in the Zirelli case. In Peck, the reporter established that she was entitled to assert the reporter's privilege in response to the street performer's subpoena for the reporter's deposition testimony to confirm information originally reported in the reporter's newspaper story. The court held in Peck, that the street performer, who requested the disclosure, had not made a sufficient showing to overcome application of that privilege to protect the reporters source information. The court held that while the reporter's testimony regarding the size of the restricted performance area was central to his case, the street performer's general descriptions of his discovery efforts were insufficient to sustain his burden to show that alternative sources for the information were unavailable. Id. at 190.

In a recent case, <u>Yanping Chen vs Federal Bureau of Investigation</u>, Case No. 18-cv-3074, (D.D.C. Aug. 17, 2023) the plaintiff sued under a privacy law for information leaked to Fox News regarding a criminal investigation by the Federal Bureau of Investigation (FBI) concerning plaintiff. This court applied the same two-element test from the <u>Zirelli</u> case and held that Chen's need for the requested evidence overcame the journalist's qualified First Amendment privilege and that it would be improper for the Court to circumvent that precedent by fashioning a wider common law privilege. In Chen, the plaintiff was under investigation by the FBI for reporting false information on her immigration application and other alleged espionage conduct.  An FBI agent gave the FBI's PowerPoint presentation to a reporter who later published that same information. Although the reporter at Fox News was not a party to the litigation, the reporter was required to disclose their source who leaked the information to the reporter because the information sought by the subpoena was central to the criminal investigation of Chen and the article published the same information that was the basis for the investigation against her.

Like the journalists in the <u>Zirelli</u> and <u>Lee</u> cases, Civiroglu is a non-party in this case. However, unlike the <u>Lee</u> and <u>Chen cases</u>, Defendant Eyup Yildririm, as the party requesting disclosure, has not satisfied either of the two guidelines established by this court in <u>Zirelli</u>. Under Zirelli, Yildirim must satisfy both elements before requesting this court to compel disclosure from Civiroglu regarding his activities and communications in social media chat groups after the May 16, 2017 attacks at Sheridan Circle. Yildirim seeks to depose Civiroglu along with the other plaintiffs as part of an exploratory effort. Yildirim is interested in what Civiroglu was saying, reading, or responding to in social media chat groups and will assess afterwards if the information they collect is relevant or useful to their case in some manner.  The reasons defendant Eyup Yildirim asserts for

seeking to depose Civiroglu and subpoena documents stated in their Opposition to the Motion to Quash do not go to the essence of this tort case. The information Yildirim seeks is only marginally relevant and does not go to the heart of this personal injury case regarding causation, liability, and damages. Defendant Yildirim also fails to satisfy the second requirement that the requesting party must exhaust "every reasonable alternative source of information" so that Civiroglu is not simply a default source of information for open ended and unrelated intelligence gathering by the Republic of Turkey. If plaintiffs participated in the same chat groups as Civiroglu, then Yildirim may obtain the same information he seeks by first taking depositions from all the plaintiffs. Civiroglu was not present at Sheridan Circle on May 16, 2017, he did not witness any of the allegations in the complaint and has no relationship to the elements of causation, intent, liability, or damages relating to the assault and battery torts. In this case, the plaintiffs seek money damages from a foreign state for personal injuries suffered by a brutal physical attack that occurred in the District of Columbia and caused by the tortious act or omission of the Republic of Turkey and its officials or employees acting within the scope of their office or employment.

Although Fed. Civ Rule 45(c) allows Yildirim to go on a fishing expedition by subpoenaing Civiroglu, the lake needs to contain fish, the requester must first try to catch fish from other existing known lakes where he has the authority to fish, and the subpoena needs to be fashioned at the right angle to catch any fish in the lake where the requester wants to fish. Yildirim has failed to meet his burden to justify his pursuit of disclosure in accordance with the two guidelines outlined in Zirelli.

Because of the importance of First Amendment interests, courts have required the party requesting disclosure to make an effort to obtain the desired information from "other sources" before permitting the requesting party to overcome the journalist's privilege. See In re

9

Roche, 448 U.S. 1312, 101 S. Ct. 4, 65 L. Ed. 2d 1103 (1980) (where plaintiff was required to first depose individuals from among 65 witnesses was held sufficient to stay compelling disclosure form journalist); Zerilli, 656 F.2d at 714; Carey v. Hume, 160 U.S. App. D.C. 365, 492 F.2d 631 (D.C. Cir.), cert. denied, 417 U.S. 938, 94 S. Ct. 2654, 41 L. Ed. 2d 661 (1974) (suggesting that the taking of 60 depositions is a reasonable prerequisite prior to compelling disclosure).

The District of Columbia's statutory reporter's privilege, as codified in the § 16-4701 et. seq. does not conflict with any analogous privilege created by federal common law or the First Amendment. There are no federal claims in this case. The D.C. statute provides a specific protection for journalists against compulsory disclosure of their sources in the context of news gathering Lee v. DOJ . To overcome a qualified reporter's privilege under the First Amendment and federal case law in a civil case, the party requesting disclosure must show a compelling interest in the disclosure from a journalist and the party requesting disclosure must exhaust every reasonable alternative source of information, as in cases like Zerilli v. Smith; Peck v. City of Boston (In re Slack); Lee v. DOJ.

Therefore, the District of Columbia's statutory reporter's privilege, as codified in the § 16-4701 - § 4703 offers specific protections within its jurisdiction. It does not conflict with the more limited and qualified privileges recognized under federal common law and the First Amendment. Civiroglu is entitled to the protection of his First Amendment rights and the protections of the District of Columbia's statutory reporter's privilege, as codified in the § 16-4701 et. seq because Yildirim has failed to show a compelling interest in the requested information, the information sought is not central nor does it go to the heart of this personal injury tort litigation, and the

Yildirim may obtain the requested information from other sources that the defendant is currently

pursuing through discovery with the parties to this litigation.

> Respectfully submitted,
> MUTLU CIVIROGLU
> By Counsel


_____/s/_____
JACOB D. BOURNAZIAN Bar No. 403552
Counsel for MUTLU CIVIROGLU
1425 4th Street SW #A808
Washington, DC  20024
(202) 554 – 4978


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 26, 2024, I caused a copy of this Supplemental
Repsonse In Support of Motion to Quash on all counsel of record via the Court's electronic
system.

_____/s/_____
Jacob D. Bournazian, Esq.