UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KASIM KURD, *et al.*,
    Plaintiffs,

v.

REPUBLIC OF TURKEY, *et al.*,
    Defendants.

Civil Action No. 18-1117 (CKK)

**MEMORANDUM OPINION & ORDER**
(February 14, 2025)

Defendants Ahmet Cengizhan Dereci, Alpkenan Dereci, Mahmut Sami Ellialti, Sinan Narin, and Eyup Yildirim (together, the "Individual Defendants") filed a [249] Joint Motion to Defer Default Judgment (the "Joint Motion" or "Joint Mot."). Plaintiffs opposed that Joint Motion. *See* Pls.' Resp., ECF No. 257. And the Individual Defendants replied. *See* Reply, ECF No. 259. For the reasons that follow, the Court will **DENY** the Joint Motion.

**I. BACKGROUND**

This action arises from the confrontation outside the Turkish Ambassador's Residence in Washington, D.C. on May 16, 2017. Am. Compl., ECF No. 63 ¶ 51. The Court has described the events of that day at length elsewhere. *See* Mem. Op., ECF No. 116 at 2–7. It suffices to say, for present purposes, that a group of protestors opposed to Turkish President Recep Tayyip Erdogan and another group—composed of civilian counter-protestors supporting President Erdogan as well as official Turkish security personnel—came to blows.

Plaintiffs in this action were among the protestors. The Individual Defendants were allegedly among the civilian counter-protestors. Defendant the Republic of Turkey ("Turkey") is a foreign sovereign that controlled its official security personnel.

1

Plaintiffs assert six claims in their Amended Complaint.[1]  Am. Compl. ¶¶ 228–271.  Four claims (Counts I, II, IV, and V) are against both Turkey and the Individual Defendants. *Id.* ¶¶ 228–240, 245–257.  Two of those claims (Counts I and II) allege that Turkey and the Individual Defendants "acted in concert by aiding and abetting each other" and "substantially assisted one another" during the commission of the torts. *Id.* ¶¶ 234, 240.  And Plaintiffs allege more generally that "[e]ach Defendant is liable as a joint venturer" for all claims. *Id.* ¶ 226.

In 2019, Turkey moved to dismiss all claims against it for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA).  *See* Mot. to Dismiss, ECF No. 90.  After reviewing extensive briefing and factual submissions, the Court denied Turkey's motion in 2020.  *See* Order, ECF No. 115.  Turkey then noticed an appeal to the U.S. Court of Appeals for the D.C. Circuit.  Notice of Appeal, ECF No. 117.  More than a year later, the D.C. Circuit affirmed and held that this Court had jurisdiction over Turkey under the FSIA's tortious-acts exception.  *See Usoyan v. Republic of Turkey*, 6 F.4th 31 (D.C. Cir. 2021).  Turkey petitioned for rehearing *en banc*, but the D.C. Circuit denied that petition in an unpublished order later in 2021.  Still dissatisfied, Turkey petitioned for a writ of certiorari, but the Supreme Court denied that petition another year later.  *See Republic of Turkey v. Usoyan*, 143 S. Ct. 395 (2022).

When the matter finally returned to this Court, counsel for Turkey notified the Court that Turkey would no longer participate in this litigation.  *See* Mot. to Withdraw, ECF No. 167.  Plaintiffs then filed an Affidavit for Default.  ECF No. 170.  And the Clerk of Court entered default against Turkey in November 2022.  ECF No. 173.  This matter was then stayed until 2023 to accommodate parallel criminal actions.  Mem. Op. & Order, ECF No. 177; Order, ECF No. 191.

---

[1] Count I (Assault); Count II (Battery); Count III (False Imprisonment); Count IV (Intentional Infliction of Emotional Distress); Count V (Hate Crime, in violation of D.C. Code § 22-3704); and Count VI (Violation of the Alien Tort Statute, 28 U.S.C. § 1350).

When that stay lifted, the parties proceeded to discovery as to the Individual Defendants. *See* Scheduling & Procedures Order, ECF No. 190. And the Court set a briefing schedule for Plaintiffs to seek default judgment as to Turkey's liability. Min. Order (Apr. 12, 2023). Following that schedule, Plaintiffs filed their [241] Motion for Default Judgment on September 29, 2023.

Sixty-three days later, on December 1, 2023, the Individual Defendants filed their Joint Motion requesting that the Court defer entry of default judgment as to Turkey's liability on Counts I, II, IV, and V "until the Individual Defendants' liability is decided on the merits." Joint Mot. at 7. Plaintiffs opposed that Joint Motion, the Individual Defendants replied, and the issue of whether to defer ruling on the Motion for Default Judgment is ripe for this Court's review.

## II. ANALYSIS

The determination whether a default judgment is appropriate is committed to the discretion of the trial court. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). But the Individual Defendants argue that two constraints on that discretion require the Court to defer ruling on Plaintiffs' Motion for Default Judgment against Turkey. Joint Mot. at 16–17. First, the Individual Defendants contend that the Supreme Court's holding in *Frow v. De La Vega*, 82 U.S. 552 (1872), requires that the Court refrain from determining Turkey's liability until their own liability has been resolved. Joint Mot. at 17–19. Second, the Individual Defendants argue that Federal Rule of Civil Procedure 54(b) also compels the Court to defer ruling. Joint Mot. at 19–21.[2]

Plaintiffs mount a tripartite response. First, they contend that the Joint Motion is an untimely opposition to the Motion for Default Judgment and ask the Court to deny the Joint Motion

---

[2] The Individual Defendants also argue, at length, that the Court should deny Plaintiffs leave to amend their Amended Complaint. Joint Mot. at 21–27. As Plaintiffs observe, this issue has little bearing on whether the Court should defer ruling on the Motion for Default Judgment. *See* Pls.' Resp. at 12–13. For that reason, the Court does not address here whether Plaintiffs may amend their Amended Complaint. That is a matter for a different day.

3

on that basis. Pls.' Resp. at 12–15. Second, they argue that, if the Joint Motion is truly a motion, the Court must deny it because the Individual Defendants failed to meet and confer with Plaintiffs as required by Local Rule of Civil Procedure 7(m). Pls.' Resp. at 16–17. Finally, Plaintiffs argue that the Individual Defendants are wrong on the merits of both *Frow* and Rule 54(b). Pls.' Resp. at 17–26. Because the Court agrees with Plaintiffs that the Individual Defendants have misread *Frow* and Rule 54(b), the Court does not address Plaintiffs' other arguments.

### A. *Frow* Is Inapposite

The plaintiff in *Frow* alleged that eight defendants had conspired to defraud him of his title to a single tract of land and brought suit to quiet title in himself. 82 U.S. at 552–53. Seven of the defendants answered the complaint. *Id.* at 553. But the eighth—Frow—missed his filing deadline. *Id.* And the district court entered a default judgment against Frow that vested title to the land in the plaintiff. *Id.* Later, the non-defaulting defendants proceeded to trial and won a judgment vesting title to the land in them. *Id.* These logically inconsistent judgments were, in Justice Joseph P. Bradley's surmise, "unseemly and absurd." *Id.* at 554. The Court vacated the default judgment against Frow and announced that "a final decree on the merits against [a] defaulting defendant alone, pending the continuance of the cause, [is] incongruous and illegal." *Id.*

The Individual Defendants argue that *Frow* controls here. Counts I, II, IV, and V of the Amended Complaint assert claims against both Turkey and the Individual Defendants. And Plaintiffs allege at numerous points that the Individual Defendants acted jointly with agents of Turkey. But naturally, the Individual Defendants contend that they are not liable to Plaintiffs. A default judgment finding Turkey liable on "identical (or, at least, closely similar) allegations" would thus be "inconsistent" with the judgment the Individual Defendants expect on the counts

4

Case 1:18-cv-01117-CKK-ZMF   Document 327   Filed 02/14/25   Page 5 of 8

against themselves.  Joint Mot. at 19.  And this, the Individual Defendants assert, "is precisely the result that the Supreme Court sought to prevent in *Frow*."  *Id.*

But *Frow* does not sweep so broadly.  Instead, the D.C. Circuit has "construed *Frow* narrowly" to apply "only when liability is truly joint . . . and when the relief sought can only be effective if judgment is granted against all."  *Whelan v. Abell*, 953 F.2d 663, 674–75 (D.C. Cir. 1992).  Put differently, "*Frow* was about 'inconsistent adjudications as to joint liability or as to a single res in controversy'" and "should not be extended" beyond that context.  *Carter v. Dist. of Columbia*, 795 F.2d 116, 137 (D.C. Cir. 1986) (quoting *In re Uranium Antitr. Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980)).  As a result, courts in this District apply *Frow* only:

> (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant.

*Id.* (quoting 6 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 55.06 (2d ed. 1985)).

Neither precondition is met here.  First, although Plaintiffs allege that all Defendants acted jointly, Turkey's liability is not conclusive of the Individual Defendants' liability.  Official agents of Turkey may have assaulted, battered, intentionally inflicted emotional distress on, and committed hate crimes against Plaintiffs without the Individual Defendants doing so.  Assuredly, the Individual Defendants have myriad explanations for why they—as individuals—did not commit those tortious acts.  Second, Plaintiffs are seeking damages in this action, and that relief is effective regardless of whether all Defendants are liable.

None of the cases the Individual Defendants cite are to the contrary.  One of those cases was a stream-of-commerce product-liability suit in which the liability of the defaulting manufacturer would have effectively decided the case against the non-defaulting distributors.  *Hunter v. Shanghai Hangzhou Elec. Mfg. Co.*, 505 F. Supp. 3d 137, 162–63 (N.D.N.Y. 2020).

5

Two others rely on Fourth Circuit precedent in direct and acknowledged conflict with the D.C. Circuit's interpretation of *Frow*.³ And in the final case—the only case the Individual Defendants cite from this District—the "sole basis for the[] purported liability" of the non-defaulting defendants was a D.C. law "that makes a contractor jointly and severally liable when their sub-contractor fails to pay wages." *Zapata v. B. Coleman Flooring Installation, LLC*, No. 18-cv-1134, 2019 WL 13399854, at *1 (D.D.C. Dec. 5, 2019) (TJK). Because the sub-contractor defaulted, entering a default judgment would have "indirectly establish[ed] liability as to the two non-defaulting" contractors. *Id.* No similar liability regime is at play here.

Accordingly, the Court concludes that *Frow* is no barrier to proceeding to default judgment against Turkey.

### B. Rule 54(b) Does Not Require Deferring Default Judgment

Federal Rule of Civil Procedure 54(b) provides that "entry of a final judgment as to one or more, but fewer than all, claims or parties" is appropriate "only if the court expressly determines that there is no just reason for delay" in entering that judgment. The Individual Defendants argue that Rule 54(b) requires the Court to defer ruling on Plaintiffs' Motion for Default Judgment because there is a just reason for delay: "a risk of inconsistent judgments." Joint Mot. at 20.

But Rule 54(b) applies on its face to the "entry of a *final* judgment" as to fewer than all parties—not the entry of a *default* judgment. Fed. R. Civ. P. 54(b) (emphasis added). And an order of default judgment against one defendant "in a case involving multiple claims or defendants . . . is generally not final until the district court has 'disposed of all claims against all

---

³ *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 435–36 & n.6 (E.D. Va. 2006) (observing that "the Fourth Circuit has interpreted *Frow* more broadly" than "many jurisdictions," including the D.C. Circuit); *Garnier-Theibaut, Inc. v. Castello 1935 Inc.*, No. 17-cv-3632, 2019 WL 3767509, at *2 (D. Md. Aug. 7, 2019) (noting that the "Fourth Circuit has extended the *Frow* rule" more broadly).

parties.'" *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, --- F. Supp. 3d ----, 2024 WL 3612982, at *6 (D.D.C. 2024) (PLF) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.2d 217, 221 (D.C. Cir. 2011)).  Rule 54(b) supplies the exception to that general rule: It allows a court to convert a partial judgment into a partial final judgment if it "expressly determines that there is no just reason for delay."

And Rule 54(b) acknowledges that courts may enter non-final, partial judgments:  Unless a court invokes the Rule 54(b) exception, "any order or other decision"—such as a default judgment—"does not end the action as to any of the claims or parties and be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

In other words, the Court need only find "no just reason for delay" to enter a default judgment against Turkey as a *final* judgment.  The Court need not do so to enter default judgment against Turkey as a *non-final* judgment.  *Cf. United States v. All Assets Held in Account No. XXXXXXX*, 330 F. Supp. 3d 150, 159 (D.D.C. 2018) (JDB) ("Even where entry of default judgment is warranted, however, it does not necessarily follow that the order is final and appealable.").

Plaintiffs are not now seeking entry of a final default judgment against Turkey.  Indeed, they expressly disclaim any interest in a final judgment at this stage.  Pls.' Resp. at 23.  For good reason.  Plaintiffs have moved for a default judgment against Turkey as to liability only.  Such a judgment could never be final because it would not represent the "ultimate disposition" of any claim.  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).  To secure an enforceable final judgment against Turkey, Plaintiffs would need a judgment of liability and, following further proceedings, a damages assessment.

7

For that reason, the Individual Defendants' argument that Plaintiffs' Motion for Default Judgment "is still premature" under Rule 54(b) is itself premature. Joint Mot. at 7. Rule 54(b)'s requirement that the Court find no just reason for delay is irrelevant unless and until the Court determines that Turkey is liable for a sum of damages. Only then, "having found finality," must the Court "go on to determine whether there is any just reason for delay" in entering a final, appealable, and enforceable judgment against Turkey. *Curtiss-Wright*, 446 U.S. at 8; *accord All Assets*, 330 F. Supp. 3d at 160 (describing this "two-step analysis"). Perhaps recognizing this issue, the Individual Defendants do not mention Rule 54(b) in their Reply.

Accordingly, the Court concludes that Rule 54(b) is no barrier to proceeding to default judgment against Turkey.

### III. CONCLUSION & ORDER

For the reasons explained, the Court hereby **ORDERS** that the Individual Defendants' [249] Joint Motion to Defer Default Judgment is **DENIED**.

**SO ORDERED.**

**Dated:** February 14, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge